IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02862-REB-KLM

VICTORIA CARBAJAL, and
DEAN CARBAJAL,

Plaintiffs,

v.

SEVENTH JUDICIAL DISTRICT, a political subdivision of the State of Colorado,
DELTA COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of
the State of Colorado,
MYRL SERRA, former District Attorney of the Seventh Judicial District, in his individual
capacity,
SHERRI PRICE, Deputy District Attorney of the Seventh Judicial District, in her
individual and official capacities,
PATRICIA KRAMER, former Deputy District Attorney of the Seventh Judicial District, in
her individual capacity,
JEFF BOYD HERRON, private counsel, in his individual capacity,
J. STEVEN PATRICK, District Court Judge of the Seventh Judicial District, in his
individual and official capacities,
CHARLES R. GREENACRE, District Court Judge of the Seventh Judicial District, in his
individual and official capacities,
SANDRA K. MILLER, Magistrate/County Court Judge of the Seventh Judicial District, in
her individual capacity,
JAMES W. SCHUM, District Court Judge of the Seventh Judicial District, in his
individual and official capacities,
MANDY ALLEN, Court Clerk of the Seventh Judicial District, in her individual and official
capacities,
CAROL WARNER, Chief Probation Officer of the Seventh Judicial District, in her
individual and official capacities,
RICHARD MAHAR, Probation Officer of the Seventh Judicial District, in his individual
and official capacities,
DAVID ROMERO, Probation Officer of the Seventh Judicial District, in his individual and
official capacities,
JOSEPH QUINTANA, Probation Officer of the Seventh Judicial District, in his individual
and official capacities,
UNKNOWN DELTA SHERIFF, in his individual and official capacities,
BILL RAILEY, Captain in the Delta Sheriff's Department, in his individual and official
capacities,
CHRIS WELDON, Sergeant in the Delta Sheriff's Department, in his individual and
official capacities,

-1-

TIMOTHY HATCH, Deputy Sheriff in the Delta Sheriff's Department, in his individual and official capacities,
BEA WOLFE, Deputy Sheriff in the Delta Sheriff's Department, in his individual and official capacities,
BENJAMIN SCHROEDER, Deputy Sheriff in the Delta Sheriff's Department, in his individual and official capacities,
CITY OF DENVER, a municipality of the State of Colorado,
DENVER CHIEF OF POLICE, in his individual and official capacities,
GILBERTO LUCIO, Detective in the Denver Police Department, in his individual and official capacities,
LAURIE FREUND, Detective in the Denver Police Department, in her individual and official capacities,
JAMES DIXON, Police Officer in the Denver Police Department, in his individual and official capacities,
ADAM BARRETT, Police Officer in the Denver Police Department, in his individual and official capacities,
PERRY SPEERMAN, Sergeant in the Denver Police Department, in his individual and official capacities,
JOEL SMITH, Police Officer in the Denver Police Department, in his individual and official capacities,
ABBEGAYLE DORN, Police Officer in the Denver Police Department, in her individual and official capacities,
JESSE REMBERT, Police Officer in the Denver Police Department, in his individual and official capacities,
JAY LOPEZ, Police Officer in the Denver Police Department, in his individual and official capacities,
MICHAEL O'NEILL, Police Officer in the Denver Police Department, in his individual and official capacities,
BRYAN O'NEILL, Police Officer in the Denver Police Department, in his individual and official capacities,
JEFFREY WATTS, Senior Detective Investigator for the Second Judicial District, in his individual and official capacities,
ED GRUNINGER, Detective Investigator for the Second Judicial District, in his individual and official capacities,
COLORADO DEPARTMENT OF CORRECTIONS, a political subdivision of the State of Colorado,
UNKNOWN CORRECTIONAL OFFICER 1, Correctional/Parole Officer in the Colorado Department of Corrections, in his individual and official capacities,
UNKNOWN CORRECTIONAL OFFICER 2, Correctional/Parole Officer in the Colorado Department of Corrections, in his individual and official capacities,
CITY OF WESTMINSTER, a municipality of the State of Colorado,
UNKNOWN WESTMINSTER POLICE OFFICER 1, in his individual and official capacities,
UNKNOWN WESTMINSTER POLICE OFFICER 2, in his individual and official capacities,

CITY OF ARVADA, a municipality of the State of Colorado,
DON WICK, Arvada Chief of Police, in his individual and official capacities,
PATRICK MEESTER, Police Officer in the Arvada Police Department, in his individual and official capacities,
A.J. DEANDREA, Sergeant in the Arvada Police Department, in his individual and official capacities,
JOURDAN LOPEZ-BASGALL, Police Officer in the Arvada Police Department, in his individual and official capacities, and
GREGORY SULLIVAN, in his individual capacity, jointly and severally,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motions to Dismiss** [Docket Nos. 128, 135, 137, 141 & 142] (collectively, the "Motions"). Plaintiffs, who are proceeding *pro se*, have filed Responses [Docket Nos. 155, 172, 173, 174, 182 & 188] in opposition to the Motions.[1]  Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motions have been referred to this Court for a recommendation regarding disposition. The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. As set forth below, the Court **RECOMMENDS** that the Motions be **GRANTED in part** and **DENIED in part**.

## I. Summary of the Case

In 1999 Mr. Carbajal was charged with sexual assault in the Delta County District Court. *People v. Carbajal*, 198 P.3d 102, 104 (Colo. 2008). "In a plea deal resolving six

---

[1] In accordance with the Court's Order [Docket No. 171], Defendants filed Replies [Docket Nos. 189, 190 & 191] on July 22, 2011. On July 25, 2011, District Judge Robert E. Blackburn struck the Replies for noncompliance with his practice standards. *Minute Order* [Docket No. 192].

cases from Delta, Montrose, and San Miguel counties, [Mr. Carbajal] entered *Alford* pleas to sexual assault II, possession of a schedule II controlled substance and bail violation." *Id.*; *see also Declaration of Truth* (the "*Declaration*") [Docket No. 119-2] at 4.  On August 30, 2001, the Delta County District Court sentenced Mr. Carbajal to four years confinement and three years of mandatory parole for possession of a schedule II controlled substance. *Carbajal*, 198 P.3d at 104.  Regarding the charge of sexual assault II, the court imposed a deferred judgment with the statutory maximum of four years of supervision.[2]  *Id.*  The court erroneously ordered that the deferred judgment supervision would begin upon Mr. Carbajal's release from confinement.  *Id.*; *see id.* at 106 (explaining that when a court imposes a deferred judgment, the deferred judgment supervision must start the day the defendant entered his guilty plea); *supra* note 2.

Mr. Carbajal was released from confinement on July 26, 2004.  *Carbajal*, 198 P.3d at 104.  According to the Delta County District Court's order, his deferred judgment supervision began on this date and was to continue until July 26, 2008.  *Id.*  Mr. Carbajal's

---

[2] The Colorado Supreme Court has explained a deferred judgment as follows:

A deferred judgment is created and authorized by statute.  Colorado's deferred judgment statute, [Colo. Rev. Stat. §] 18-1.3-102, strictly controls a trial court's authority to impose a deferred judgment, and a trial court lacks authority to impose a deferred judgment outside the statute's limits.  Once a defendant pleads guilty to a felony, the deferred judgment statute allows the trial court to continue the defendant's case without entering judgment for up to four years **from the date of the plea**, and implement probation-like supervision conditions in return for the continuance. . . . Because a deferred judgment provides probation-like supervision, the deferral can be revoked – and judgment entered and sentence imposed – if the defendant violates any supervision conditions. . . . [I]f a defendant serves four years of deferred judgment supervision for a felony without revocation or permissible extension, his guilty plea must be withdrawn and his case must be dismissed with prejudice.

*Carbajal*, 198 P.3d at 105-06 (emphasis added).

-4-

mandatory three years of parole also began on July 26, 2004.  *Id.*

"Sometime prior to late April 2006, [Mr. Carbajal's] parole was revoked, and he returned to confinement."  *Id.*  Mr. Carbajal's violation of his parole was also a violation of the conditions of his deferred judgment supervision, and "on April 25, 2006, the People filed a petition to revoke [his] deferred judgment and impose a judgment and sentence."  *Id.* After a hearing on July 14, 2006, the Delta County District Court ordered that Mr. Carbajal's deferred judgment would not be revoked, but his four years of deferred judgment supervision would be "restarted," i.e., his deferred judgment supervision would run from July 14, 2006 through July 14, 2010.  *Id.*

On April 26, 2007, the People filed a second petition to revoke Mr. Carbajal's deferred judgment.[3]  *Id.* at 105.  The Delta County District Court set a hearing on the petition, and Mr. Carbajal failed to appear.  *Id.*  Accordingly, the court issued a warrant for his arrest.  *Id.*

On August 22, 2007, the Delta County Sheriff arrested Mr. Carbajal pursuant to the failure to appear warrant.  *Id.*  On the same day, Mr. Carbajal filed a petition for a writ of habeas corpus seeking vacation of his deferred judgment.  *Id.*  "Although the petition was assigned a civil case number, the [Delta County District Court] addressed it during an advisement hearing in the criminal case" that was initiated by the failure to appear warrant. *Id.*  The court denied the habeas petition.  *Id.*  On September 12, 2007, Mr. Carbajal appealed the denial of his habeas petition, and the Colorado Court of Appeals referred the case to the Colorado Supreme Court.  *Id.*

---

[3] The justification for this second petition is not mentioned in the Supreme Court's decision.

The Colorado Supreme Court construed Mr. Carbajal's petition for a writ of habeas corpus "as a challenge to the [Delta County District Court's] jurisdiction." *Id.* On December 15, 2008, the Colorado Supreme Court concluded that the Delta County District Court erred and exceeded its statutorily conferred jurisdiction by (1) starting Mr. Carbajal's period of deferred judgment supervision nearly three years after his plea, (2) continuing it for nearly seven years after his plea, (3) hearing a revocation petition filed eight months after the statutory filing limit, and (4) enforcing a two-year extension of the deferred judgment framed as a stipulation to new supervision conditions. *Id.* at 107. The court held that Mr. Carbajal's deferred judgment "began on August 30, 2001 and ended by operation of law on August 30, 2005." *Id.* at 106. Accordingly, the court directed the Delta County District Court to dismiss Mr. Carbajal's deferred judgment. *Id.* at 107.

On November 23, 2010, Mr. Carbajal and his mother Victoria ("Plaintiffs") initiated this action by filing a Complaint [Docket No. 1]. On April 4, 2011, they filed a Second Amended Complaint [Docket Nos. 119 & 119-1][4], which is their operative pleading at this juncture. *See Order* [Docket No. 118]. In the Second Amended Complaint, Plaintiffs assert claims against nearly every individual and entity with whom or which Mr. Carbajal came into contact during his arrests, detentions, and judicial proceedings related – even peripherally

---

[4] The one hundred and eleven page Second Amended Complaint has been filed on the record in two pieces. The first fifty-two pages are located at Docket No. 119. The remaining fifty-nine pages are located at Docket No. 119-1. Throughout this Recommendation, the Court cites to both locations as necessary. The Second Amended Complaint is accompanied by a separate sixty-five page "Declaration of Truth." It appears to the Court that Plaintiffs intend the allegations contained in the Declaration of Truth to be considered as part of their operative pleading in this case. *See Response* [#173] at 5. Accordingly, the Court considers the Declaration of Truth as an integral part of the Second Amended Complaint. The Declaration of Truth has also been filed on the docket in two separate pieces, at Docket Nos. 119-2 and 119-3, and the Court will cite to both as necessary. For simplicity, the Court refers to the Second Amended Complaint and the Declaration of Truth collectively as the "Complaint."

so – to his 1999 sexual assault charge and his deferred judgment.  Plaintiffs claim that these individuals and entities ("Defendants") violated their constitutional rights over a ten-year period stretching from 1999 to August 28, 2010.  Although Mr. Carbajal's deferred judgment was dismissed on December 15, 2008, Plaintiffs claim that some Defendants continued to harass them and violate their constitutional rights in various ways, including the commission of home invasions, warrantless searches and seizures, and assaults.  Plaintiffs further claim that Defendants acted in concert during the entire period from 1999 through August 28, 2010 as part of a "grand scheme" and "conspiracy" to destroy Mr. Carbajal's life.  *Declaration* [#119-2] at 4 ("In 1999, a grand scheme gave birth[,] 'Destroy Life.'  Destroy [L]ife was a conspiracy to deprive Mr. Carbajal of his constitutional rights and virtually destroy his life through the execution [of] Personal Justice and Cover Up, a custom and/or policy of [Defendants]."); *Second Amended Complaint* [#119] at 4 ("This action arises as a direct result of a joint venture of [Defendants'] mutual decision to utilize a custom, practice, and unwritten policy – Personal Justice and Cover Up – against Mr. Carbajal and his family.  This contrivance and its effectuation led to the wilful denial of Plaintiffs' constitutional rights from nearly every side of the spectrum of the Constitution's protections[.]").

Plaintiffs explain as follows: "Plaintiffs['] claims arise out of Defendants['] decade long conspiracy to arrest, prosecute, convict, incarcerate, and arrest Mr. Carbajal for crimes the Defendants know he did not commit, violating Mr. Carbajal's and his family's First, Fourth, Eighth and Fourteenth Amendment [rights]."  *Response* [#155] at 1; *see also Declaration* [#119-2] at 4 ("This conspiracy was designed to bring about various constitutional violations including but not limited to deprivation of peace, life, [and] pursuit

-7-

of happiness, deprivation of security, denial of privacy, illegal search and seizures, false arrests, malicious prosecutions, wrongful convictions, wrongful imprisonments, denial of equal protection rights due to discrimination, infliction of cruel and unusual punishment, and the intentional infliction of emotional distress."). Because they allege constitutional violations, Plaintiffs bring their claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. *Second Amended Complaint* [#119] at 4. Plaintiffs also assert a claim for fraud under Colorado state law based on the same alleged conduct by Defendants. *Second Amended Complaint* [#119-1] at 43 (stating that the fraud claim is asserted against "all Defendants").

Plaintiffs allege various conduct by each named Defendant throughout their 176-page Complaint. These allegations are too numerous, too extensive, and too varied to recapitulate. Moreover, because the majority of Plaintiffs' allegations relate to claims that are time-barred or asserted against immune or improper Defendants, *see infra* Part III., providing more than a general summary of Plaintiffs' Complaint would be a wasteful exercise.

Plaintiffs' request the following relief: (1) "prospective injunctive relief," namely the expungement of Mr. Carbajal's criminal record; (2) compensatory damages; (3) punitive damages; and (4) attorney's fees and costs. *Second Amended Complaint* [#119-1] at 58.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly

construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted."). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its

face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

When considering Plaintiffs' Complaint and Responses [#155, 172, 173, 174 & 182], the Court is mindful that it must construe the filings of *pro se* litigants liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern all other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th

-10-

Cir. 1994).

## III. Analysis

As an initial matter, the Court notes that the prolixity of Plaintiffs' Complaint violates Fed. R. Civ. P. 8(a). *See, e.g.*, *Ausherman v. Stump*, 643 F.2d 715, 716-17 (10th Cir. 1981); *McConnell v. Cirbo*, No. 10-cv-02622-ZLW, 2011 WL 1060667, at *2 (D. Colo. Mar. 23, 2011) (unreported decision). The Complaint is subject to dismissal for this reason alone. *Gibson v. City of Cripple Creek*, 48 F.3d 1231 (10th Cir. 1995) (unpublished table decision) ("When a complaint does not comply with [Rule 8(a)(2)], the Court has the power to dismiss it."); *Jefferson v. Killian*, No. 07-cv-0051-WYD-MEH, 2007 WL 1701711, at *1 (D. Colo. Jun. 11, 2007) (unreported decision) ("A decision to dismiss a pleading pursuant to Rule 8 is within the trial court's discretion." (citations omitted)); *see also McCracken-Phillips v. Phillips*, No. 08-cv-02408-MSK-MJW, 2009 WL 1966293, at *3 (D. Colo. July 7, 2009) (unreported decision) ("Fed. R. Civ. P. 8 is not self-enforcing, such that a complaint can be simply dismissed for failure to comply with its terms. Rather, a party's failure to comply with any of the Federal Rules of Civil Procedure – including Rule 8 – can support a dismissal under Fed. R. Civ. P. 41(b)." (citations omitted)). However, because the Complaint represents Plaintiffs' third attempt to plead their claims, the Court finds that it is appropriate at this juncture to consider the sufficiency of Plaintiffs' allegations under Fed. R. Civ. P. 12(b)(1) and (b)(6). To the extent that any of Plaintiffs' claims survive this review, these claims must be re-pled in a succinct fashion in compliance with Rule 8(a).

As noted above, Plaintiffs' Complaint comprises one hundred and seventy-six pages, and it contains a "rambling, massive collection of facts" arranged under several different

organizational schemes. *Mitchell v. City of Colo. Springs, Colo.*, 194 F. App'x 497, 498 (10th Cir. 2006) (quotation omitted). Further, the Complaint "mixes allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way," *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996), such "that its true substance, if any, is well disguised," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). "The general rule that *pro se* pleadings must be construed liberally has limits, and the Court cannot take on the responsibility of serving as [a] litigant's attorney in constructing arguments and searching the record." *McConnell*, 2011 WL 1060667, at *3 (internal quotation omitted). Nevertheless, although under no duty to do so, the Court has done its level best to carefully review every page of the Complaint to ascertain Plaintiffs' claims and whether each is viable. *See Windsor v. Colo. Dep't of Corr.*, 9 F. App'x 967, 968 (10th Cir. 2001) (quoting a Magistrate Judge's statement that "neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief"); *Klen v. Colo. State Bd. Of Agric.*, No. 05-cv-02452-EWN-CBS, 2007 WL 2022061, at *23 (D. Colo. July 9, 2007) (unreported decision) ("This court has neither the duty nor the inclination to scan the entire record in search of support for Plaintiff's . . . claim[.]"); *see also United States ex rel. Cafassa v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) ("Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations.").

Despite the expenditure of significant time and resources, the Court "cannot be sure that [it has] correctly understood all of the averments" contained in the Complaint. *McHenry*, 84 F.3d at 1174. "If [it] has not, Plaintiffs have only themselves to blame." *Id.*;

*see also Order* [Docket No. 61] at 3-4 (admonishing Plaintiffs before the filing of their Complaint that a "lack of discretion in naming" too many Defendants might present challenges to the successful prosecution of their case). "It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format." *Windsor*, 9 F. App'x at 968; *see also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (stating that a complaint "must explain what each defendant did to [each plaintiff]; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right [plaintiffs] believe the defendant violated"). Plaintiffs have failed to bear this responsibility, and they have "place[d] an unjustified burden on the Court . . . because [it] is forced to select the relevant material from a mass of verbiage." *Salahuddin*, 861 F.2d at 42 (quotation omitted). "Judges are not like pigs, hunting for truffles buried in" a complaint. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Accordingly, Plaintiffs should not be heard to complain if they believe the Court has misapprehended their claims or overlooked a buried factual allegation that might call into question one of the justifications set forth below for dismissing claims and Defendants.

### A.     Arguments Concerning the Propriety of Service of Process

Several Defendants contend that they were not properly served with a summons and Plaintiffs' Complaint. Accordingly, they seek dismissal of Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(5). *See, e.g.*, *Motion to Dismiss* [#135] at 9-10. The Court declines to address Defendants' arguments concerning the propriety of service at this juncture. Although it appears likely that Plaintiffs did not serve many Defendants in strict compliance with applicable service rules and statutes, it also appears that all Defendants have received actual notice of this case to the extent that they have been able

to enter an appearance, either *pro se* or through counsel, before the Court.[5]  Because all

Defendants have timely entered appearances and joined in one or more of the pending

Motions, the Court finds that none of them can demonstrate at this juncture that they have

suffered "'any material prejudice to any substantial rights'" due to insufficient service of

process.  *Bayview Loan Servicing, LLC v. Boland*, No. 08-cv-00566-WDM-KLM, 2009 WL

2514154, at *3 (D. Colo. Aug. 14, 2009) (unreported decision) (quoting *Hawkins v. Dep't

of Mental Health*, 89 F.R.D. 127, 128 (W.D. Mich. 1981)).  Further, Plaintiffs have exhibited

a determined interest in prosecuting this case, and they would likely be able to cure any

service deficiencies if required to do so.  Accordingly, it would be "'a waste of resources to

quash service and delay the progress of this action for a period of time, just to be back at

this point some time in the future.'"  *Id.* (quoting *Rosenthal v. Jezioro*, No. 2:08-cv-81, 2008

WL 4900563, at *3 (D.N.J. Nov. 13, 2008) (unreported decision)); *see generally Kitchens

v. Bryan County Nat'l Bank*, 825 F.2d 248, 255-56 (10th Cir. 1987) (declining to dismiss on

the basis of insufficient service); *Williams v. Swanson*, 57 F. App'x 784, 787 (10th Cir.

2003) (affirming a district court's decision not to dismiss a case in which a summons was

defective but the defendant had received actual notice and was not prejudiced).  Thus, in

---

[5] The Court acknowledges that the entry of an appearance by counsel on behalf of a large group of Defendants does not necessarily imply that each individual Defendant in the group has received actual notice of this case.  For example, Attorney Jeffrey Driscoll has entered an appearance in the case on behalf of several Defendants.  Among these are Patricia Kramer, who died before this case was filed, and Myrl Serra, who was not employed by the Montrose District Attorney's office at the time this case was filed.  *Motion to Dismiss* [#135] at 10 (citing *Affidavit of Dan Hotsenpiller* [Docket No. 135-1] at 1).  Accordingly, the Court cannot impute actual notice to Defendants Kramer and Serra simply on the basis of Attorney Driscoll's appearance on their behalf. Nevertheless, Attorney Driscoll's appearance assures the Court that Defendants Kramer and Serra are receiving at least minimally adequate representation of their interests *at this juncture*. The same is true for all other Defendants.  To the extent that any of Plaintiffs' claims survive, the remaining Defendants should be permitted to file an additional motion to dismiss challenging the sufficiency of service of process.

the interest of efficient case management, the Court will address Defendants' other arguments in favor of dismissal in this Recommendation.  To the extent that the Court does not dismiss claims against any Defendants who believe that they have been improperly served, these Defendants should be afforded an opportunity to challenge the sufficiency of service in a new motion to dismiss.

### B.   Lack of Subject-Matter Jurisdiction Over Defendants Seventh Judicial District and Colorado Department of Corrections

The Court lacks subject-matter jurisdiction to adjudicate Plaintiffs' claims against Defendant Seventh Judicial District because it is not a political subdivision of the State of Colorado that has been granted "the power to sue or be sued."  *Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, at *12 (D. Colo. Feb. 11, 2011) (unreported decision) (citing Colo. Const. Art. VI, § 10; Colo. Rev. Stat. §§ 13-5-101, 109); *see generally Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) ("Under Colorado law, municipalities and counties, not their various subsidiary departments, exist as bodies corporate and politic empowered to sue and be sued." (internal quotations omitted)); *see also Motion to Dismiss* [#135] at 3-4.

The Court also lacks subject-matter over Plaintiffs' claims against Defendant Colorado Department of Corrections.  The doctrine of sovereign immunity "prohibits federal courts from entertaining suits against states brought by their own citizens . . . without their consent."  *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780-81 (10th Cir. 2008) (citation omitted); *Alden v. Maine*, 527 U.S. 706, 727 (1999) ("[S]overeign immunity bar[s] a citizen from suing his own state under the federal-question head of jurisdiction." (citing *Hans v. Louisiana*, 134 U.S. 1, 14-15 (1980))); *see generally id.* at 728 (explaining that "sovereign

immunity derives not from the Eleventh Amendment but from the structure of the original constitution itself," and that "the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design"). Whether a plaintiff seeks damages or injunctive relief makes no difference; all suits whether in law or equity are barred by the doctrine. *See Hunt*, 271 F. App'x at 780 (finding that the doctrine of sovereign immunity barred a plaintiff's claim against the Colorado Department of Corrections even though the plaintiff sought only injunctive relief). "This rule extends to state agencies functioning as an arm of the state." *Id.* (citation omitted). The doctrine of sovereign immunity has two recognized exceptions. *Id.* First, "Congress may enact a statute abrogating a state's [sovereign] immunity if the text of the statute explicitly manifests a desire to do so." *Id.* (citation omitted). Second, "[a] state may also waive its [sovereign] immunity through a clear expression of its intent to waive." *Id.* (citation omitted). Neither exception is applicable in this case as "Congress did not abrogate [sovereign] immunity through [42 U.S.C. § 1983], and the [Colorado Department of Corrections] is an agency of the State of Colorado that has not expressly waived its sovereign immunity." *Id.* (citations omitted). Accordingly, Plaintiffs' claims against the Colorado Department of Corrections are "barred as a matter of law." *Id.*

The Court recommends that Plaintiffs' claims against Defendants Seventh Judicial District and Colorado Department of Corrections be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### C.     Judicial Immunity

"Defendants Patrick, Greenacre, Miller, Schum, and Herron are state court judges" and "Defendant Allen is a court clerk." *Motion to Dismiss* [#137] at 3. Accordingly, these

Defendants are entitled to absolute judicial and quasi-judicial immunity.  The Court therefore lacks subject-matter jurisdiction to adjudicate Plaintiffs' claims that are based on these Defendants' conduct in the exercise of their official judicial and quasi-judicial functions.  *Van Sickle v. Holloway*, 791 F.2d 1431, 1435 (10th Cir. 1986) ("[A]bsolute immunity is necessary so that judges can perform their functions without harassment or intimidation."); *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) ("Immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.  Consequently, immunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved.  Thus, absolute judicial immunity has been extended to non-judicial officers where their duties had an integral relationship with the judicial process." (quotations and citations omitted)).

"The appropriate inquiry in determining whether a particular judge is immune is whether the challenged action was 'judicial,' and whether at the time the challenged action was taken, the judge had subject matter jurisdiction."  *Van Sickle*, 791 F.2d at 1435 (citations omitted).  "Stated differently, judges are only liable when they act in clear absence of all jurisdiction; they are absolutely immune even when their action is erroneous, malicious, or in excess of their judicial authority."  *Id.* (internal quotation omitted).  After carefully reviewing the Complaint, the Court finds that Plaintiffs' claims against Defendants Patrick, Greenacre, Miller, Schum, and Allen are based entirely on their conduct in exercising their official judicial and quasi-judicial functions.  *See, e.g.*, *Second Amended Complaint* [#119] at 29, ¶ 68 (alleging that when Defendant Greenacre presided over Mr. Carbajal's criminal case on charges of assault in 1999, he conspired with Defendant

Sullivan to allow "a one-sided prosecution"); *id.* at 11, ¶ 18 (claiming that Defendant Schum violated Mr. Carbajal's constitutional rights by issuing orders for his arrest, denying his petitions for a writ of habeas corpus, and denying his motions challenging the state court's jurisdiction over him);   *Declaration* [#119-2] at 15 (claiming that Defendants Miller and Patrick violated Mr. Carbajal's constitutional rights by continuing to "review[ ] motions and orders" in Mr. Carbajal's criminal case, No. 99CR96, after "having been recused"); *id.* (alleging that Defendant Allen "would alter and doctor the record" in Mr. Carbajal's criminal case); *Motion to Dismiss* [#137] at 6 (summarizing Plaintiffs' allegations against the state court judges).   Accordingly, the Court recommends that Plaintiffs' claims against these Defendants be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiffs' claims against Defendant Herron appear to be based both on his conduct as a judicial officer and his conduct as a defense attorney who represented Mr. Carbajal. *See Second Amended Complaint* [#119] at 9, ¶ 14 (stating that at all times relevant to the Complaint Defendant Herron "was acting under the color of state law in his capacity as a District Court Judge for the [Seventh Judicial District] of the State of Colorado, as well as in his personal capacity as private counsel").   To the extent that Plaintiffs' claims are based on Defendant Herron's conduct while he was acting as a judicial officer, the Court recommends that they be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### D.   Prosecutorial Immunity

After carefully reviewing the Complaint, the Court finds that Plaintiffs' claims against Defendants Serra, Price, and Kramer are entirely based on their conduct during the performance of their official duties as prosecutors.   *See id.* at 6-7; *see also Motion to Dismiss* [#135] at 8, ¶ 28 ("The conduct challenged in this case occurred subsequent to the

filing of criminal charges [against Mr. Carbajal], during the course of prosecuting [him] for sexual assault, and the subsequent efforts to extend the period of [his deferred judgment]."). Accordingly, the Court lacks subject-matter jurisdiction to adjudicate these claims under the doctrine of absolute prosecutorial immunity.

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* Absolute prosecutorial immunity extends to bar claims that a prosecutor "knowingly used false testimony and suppressed material evidence." *Imbler v. Pachtman*, 4242 U.S. 409, 413 (1976); *see Second Amended Complaint* [#119] at 6 (alleging conduct by Defendant Serra, i.e., that he "directly participated in the preparation and review of false affidavits utilized to arrest, prosecute, and convict and imprison," that is squarely protected by absolute prosecutorial immunity). Further, absolute prosecutorial immunity applies to protect prosecutors from the outset of a criminal case: "The decision of a prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity." *Williams v. Hartje*, 827 F.2d 1203, 1209 (1987). "This is so even if the prosecutor makes that decision in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction." *Id.*; *see Second Amended Complaint* [#119] at 7, ¶ 10 (alleging conduct by Defendant Kramer, i.e., criminally charging Mr. Carbajal "with full knowledge [that] no jurisdiction existed over him [and that there was] no probable

-19-

cause" to support the charges, that is squarely protected by absolute prosecutorial immunity).  Accordingly, the Court recommends that Plaintiffs' claims against Defendants Serra, Price, and Kramer be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  *See Imbler*, 424 U.S. at 419 n.13 (stating that "[a]n absolute immunity defeats a suit at the outset").

### E.      Quasi-Judicial and Testifying Witness Immunity for Probation Officers

Defendants Warner, Romero, Quintana, and Mahar contend that they are entitled to absolute immunity from Plaintiffs' claims against them because the claims are based on their provision of affidavit testimony stating that Mr. Carbajal violated the terms of his parole and deferred judgment supervision.  *See Motion to Dismiss* [#137] at 8.  After carefully reviewing the Complaint, the Court finds that Plaintiffs' claims against Defendants Warner, Romero, Quintana, and Mahar are, at bottom, based wholly on their alleged perjury in affidavits presented to state judicial officers in support of applications for deferred judgment and parole revocation and arrest warrants.[6]  *See, e.g.*, *Second Amended Complaint* [#119] at 12-13, ¶ 21 (alleging that Mahar altered Mr. Carbajal's probation file and prepared false affidavits in support of applications for warrants to arrest Mr. Carbajal); *id.* at 42, ¶ 99 (alleging that on April 27, 2007, Romero and Quintana "made their decision to revoke Mr. Carbajal's fictitious probation and drafted affidavit[s] containing falsities and material omissions"); *id.* at 48, ¶ 116 (alleging that Quintana, Warner, and Romero "procured groundless charges against Mr. Carbajal" by presenting "perjurious affidavits" to "official

---

[6] The Court notes that the Complaint contains various extraneous allegations concerning Defendant Quintana.  *See, e.g., Second Amended Complaint* [#119] at 43, ¶ 102 (alleging that in August 2007 Defendant Quintana "decided to go to Mr. Carbajal's work and slander [him]").  The Court disregards these allegations because they do not pertain to Plaintiffs' constitutional claims or their fraud claim.

bodies in order to maliciously bring about [his] arrest, prosecution, conviction, and continued confinement"); *Declaration* [#119-2] at 11 (alleging that Warner and Romero prepared affidavits "attesting to false information that Mr. Carbajal had violated the terms and conditions of his probation" that were "to be filed in the Delta District Court before [Defendant Greenacre]").  Accordingly, the Court finds that the claims are barred by the doctrines of absolute witness immunity and quasi-judicial immunity.

"Like the absolute immunity afforded prosecutors who perform actions intimately associated with the judicial process, '[t]he immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings is well established in the common law.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010) (quoting *Spielman v. Hildebrand*, 873 F.2d 1377, 1382 (10th Cir. 1976)).  "Testifying witness immunity is 'supported by the public policy of preserving the truthfinding process from distortions caused by fear of suit.'" *Id.* (quoting *Speilman*, 873 F.2d at 1382).  Thus, a "witness is absolutely immune from civil liability based on any testimony the witness provides during a judicial proceeding 'even if the witness knew the statements were false and made them with malice.'" *Id.* (quoting *Briscoe v. LaHue*, 460 U.S. 325. 332 (1983)).  The Court of Appeals for the Tenth Circuit has "extended [witness] immunity to alleged conspiracies to commit perjury."  *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (citing *Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir. 1991)); *id.* at 1267 (stating that in this Circuit "the immunity of a witness who allegedly conspired to commit perjury" is preserved).

In this case, Plaintiffs do not clearly allege that Defendants Warner, Romero, Quintana, and Mahar testified at Mr. Carbajal's trial or in other judicial proceedings. However, they do allege that Warner, Romero, Quintana, and Mahar conspired to provide

false testimony in affidavits filed in support of applications for deferred judgment and parole revocation and arrest warrants.  "Although the opportunity for cross-examination is absent" with respect to such testimony, "all [of] the other protections of the adversary process and judicial supervision" are afforded to a defendant who is arrested or subjected to a revocation of his deferred judgment in reliance on it.  *Burns v. County of King*, 883 F.2d 819, 823 (9th Cir. 1989).  Accordingly, probation officers are entitled to the same testifying witness immunity for their statements to courts made in affidavits.  *Id.*; *see also Fields v. Maceo*, 51 F.3d 280, at *2 (9th Cir. 1995) (unpublished table decision) (stating that a probation officer's "submission of a written report at [a] probation revocation hearing" is an "action protected by absolute witness immunity"); *see generally Hammett v. Sears*, No. 4:06-2485-HFF-TER, 2006 WL 3337429, at *2 (D.S.C. Nov. 16, 2006) (unreported decision) ("Plaintiff's claim arises completely from his allegation of false testimony given by Defendant in connection with Florida probation/parole revocation proceedings.  Under these circumstances, even though Defendant can be considered a state actor, he is entitled to the same protections as a result of giving his testimony in a judicial proceeding as is any other so-called 'lay' witness.").

Moreover, Warner, Romero, Quintana, and Mahar are protected by the doctrine of quasi-judicial immunity.  *See generally supra* Part III.C.  The Court of Appeals for the Tenth Circuit has held that when the challenged activities of a probation officer "are intimately associated with the judicial phase of the criminal process, he or she is absolutely immune from a civil suit for damages."  *Tripati v. INS*, 784 F.2d 345, 348 (10th Cir. 1986).  The Court of Appeals further held that "[t]here can be no doubt that . . . the selection of an appropriate sentence after [a criminal defendant's] conviction [is an] important part[ ] of the

judicial process." *Id.* Accordingly, probation officers who assist judges by providing information about a convicted defendant's compliance with the terms of his sentence are performing a quasi-judicial function and are therefore entitled to immunity from civil liability. *Id.; accord Fields*, 51 F.3d 280, at *2 (stating that "in gathering facts relevant to [a] probation modification motion for submission to [a] state court judge, the government defendants acted as 'an arm of the sentencing judge'" and were therefore protected by quasi-judicial immunity (quoting *Demoran v. Witt*, 781 F.2d 155, 157 (9th Cir. 1986))). The Court concludes that Plaintiffs' claims against Defendants Warner, Romero, Quintana and Mahar should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### F.    Statute of Limitations

Defendants contend that many of Plaintiffs' claims are barred by the statute of limitations because they are based on alleged conduct that occurred more than two years before this case was filed, i.e., before November 23, 2008. *Motion to Dismiss* [#135] at 4-6; *Motion to Dismiss* [#137] at 8-9; *Motion to Dismiss* [#128] at 1, ¶ 5.

"While the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint." *Chase v. Cox, et al.*, No. 09-cv-02363, 2010 WL 2692107, at *3 (D. Colo. May 26, 2010) (unreported decision) (citing *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008)). "Limitations periods in [42 U.S.C.] § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules[.]" *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632-33 (10th Cir. 1993) ("The length of the statute of limitations period and

related questions of tolling and application are governed by state law, unless the tolling rules are inconsistent with federal law or with the policy which the federal law seeks to implement." (citations omitted)).  In Colorado, actions brought under 42 U.S.C. § 1983 are governed by the two-year statute of limitations codified at Colo. Rev. Stat. § 13-80-102(g). *Riel v. Reed*, 760 F. Supp. 852, 854-55 (D. Colo. 1991) (citations omitted); Colo. Rev. Stat. § 13-80-102(g) ("The following civil actions . . . shall be commenced within two years after the cause of action accrues, and not thereafter: all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute.").

Although state law provides the limitations period for Section 1983 actions, federal law specifies when a Section 1983 action accrues.  *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987) (citations omitted); *see generally Baker*, 991 F.2d at 632 ("Federal law controls questions relating to accrual of federal causes of action." (citations omitted)).  "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (citation omitted).  The plaintiff "need not know the full extent of his injuries before the statute of limitations begins to run." *Id.* (citations omitted).  Further, "it is not necessary that [the plaintiff] know all of the evidence ultimately relied on for the cause of action to accrue." *Baker*, 991 F.2d at 632 (citation omitted).

Plaintiffs filed this case on November 23, 2010.  Accordingly, any claims that accrued before November 23, 2008 are barred by the statute of limitations.  Plaintiffs

-24-

acknowledge that many of their allegations concern events and purportedly unconstitutional conduct that occurred before November 23, 2008.   But they contend that Defendants' alleged conduct before this date was part of an ongoing conspiracy and continuing pattern of unconstitutional conduct that did not end until August 28, 2010.   *See Response* [#155] at 6 ("Mr. Carbajal has properly alleged a conspiracy lasting from the investigation of the alleged assault in [Case No.] 99CR96 [in] Delta County to the present day – the most recent action occurred [on] August 28, 2010."); *see also id.* (stating that "their [sic] are numerous abuses that support a continuing violation theory").   Plaintiffs assert that "the continuing violation doctrine permits a plaintiff to challenge conduct that occurred outside of the statute of limitations if there is at least one act within the limitations period that is 'sufficiently related' to acts [outside of] the period that would 'constitute a continuing pattern' of wrongful conduct."   *Id.* (quoting *Hunt*, 17 F.3d at 1266).   Accordingly, Plaintiffs argue that their claims based on Defendants' conduct before November 23, 2008 did not accrue at the time of the conduct and are therefore not  barred by the statute of limitations.

As an initial matter, it is not clear that the continuing violation doctrine can properly be applied to constitutional claims brought under 42 U.S.C. § 1983 in this Circuit.   *Pinson v. Pacheco*, 10-cv-01377-REB-MJW, 2011 WL 2579753, at *1 n.2 (D. Colo. May 9, 2011) (unreported decision); *see also Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir.), *cert. denied*, 522 U.S. 1028 (1997) (recognizing that "the continuing violation theory is a creature of the need to file administrative charges" before bringing employment discrimination lawsuits and holding that it is "simply not applicable" to constitutional claims brought under 42 U.S.C. § 1981).   Accordingly, the Court finds that Plaintiffs cannot rely on the continuing violation theory to establish that their claims based on Defendants'

conduct that occurred before November 23, 2008 did not accrue until November 23, 2008 or after.

Even if the Court assumes, *arguendo*, that the continuing violation doctrine is applicable to claims brought under Section 1983, the doctrine does not save Plaintiffs' claims based on Defendants' conduct that occurred before November 23, 2008.  Outside of this Circuit, "[c]ourts have recognized that in some circumstances, ongoing constitutional deprivations can constitute continuing violations that toll the statute of limitations or otherwise defeat a defense of untimeliness."  *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2008 WL 4216265, at *12 (D. Colo. Sept. 12, 2008) (unreported decision) (citation omitted).  "Whether the continuing violation doctrine should be applied requires consideration of several factors, including whether the [alleged] repeated violations are somehow connected, whether they are constantly or only sporadically recurring, and whether the initial act had a degree of permanence that should have triggered [Plaintiffs'] awareness of the need to act."  *Id.* (citation omitted).

In this case, Plaintiffs have alleged numerous discrete constitutional violations that occurred sporadically and are connected only in the sense that Plaintiffs believe them to be.[7]  Even if the Court accepts as true Plaintiffs' allegation that Defendants conspired to

---

[7] Plaintiffs demonstrate their vivid imagination by explaining the purported connection between all of the events discussed in the Complaint with a cinematic reference: "Personal Justice is a policy and/or custom of the departments and municipalities stated in the Complaint . . . of administrating the law personally [and] punishing a person without due course of law, or when a person or entity feels they need to punish a person because of a personal bias or because of a predisposition of a classification or suspect class.  Personal Justice is a custom and/or policy that has emerged in many areas of society as well as Hollywood.  In the [movie] *A Few Good Men*, Tom Cruz [sic] coined the phrase, "Did you order a code red," an order for the execution of Personal Justice[.] . . . In the actions giving rise to this Complaint, Mr. Carbajal and his family were subject to Personal Justice and as a result of the execution of Personal Justice and Cover Up, by officials stated . . . in the Complaint, customs and/or policies of the departments and municipalities for which

repeatedly violate their rights, each specific instance of allegedly unconstitutional conduct that occurred before November 23, 2008 "had a degree of permanence that should have triggered [Plaintiffs'] awareness of the need to act." *Id.* For example, Plaintiffs should have been aware of the need to act to remedy allegedly unconstitutional conduct that occurred during Mr. Carbajal's prosecution for sexual assault at the time that he was sentenced. Moreover, Plaintiffs allege unconstitutional conduct by many Defendants that resulted in immediately obvious harm. *See, e.g.,Second Amended Complaint* at 42, ¶ 100 (alleging that on August 22, 2007, Defendants Weldon and Schroeder "assaulted Mr. Carbajal" and "struck him with an object that appeared to be metal" causing "great pain and fear"); *Declaration* [#119-2] at 5 (alleging that on July 7, 2006, Delta County Sheriff's deputies "assaulted Mr. Carbajal," kicked and beat him all over his body, and "left [him] stripped in a cell, freezing, without food"). Accordingly, any claims based on this conduct accrued at the time of the conduct. The Court concludes that the continuing violation doctrine is inapplicable.

Notwithstanding the inapplicability of the continuing violation doctrine, Plaintiffs' claims based on alleged conduct that was directly related to the improper extension or revocation of Mr. Carbajal's deferred judgment did not accrue until December 15, 2008, the date when the Colorado Supreme Court invalidated the extensions and revocations and ordered the deferred judgment dismissed. "[W]here success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas,

these Officials worked, Mr. Carbajal and his family have suffered a great many injury [sic] as stated . . . in the Complaint." *Declaration* [#119-2] at 1.

-27-

opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).  Accordingly, Plaintiffs' claims based on allegedly unconstitutional conduct that was directly related to the improper extension or revocation of Mr. Carbajal's deferred judgment did not accrue until the deferred judgment was dismissed by the Colorado Supreme Court.

With regard to Plaintiffs' claims based on alleged conduct that occurred before November 23, 2008 that was *not* directly related to the improper extension or revocation of Mr. Carbajal's deferred judgment, these claims accrued at the time of the alleged conduct.  *See supra* p. 26.  Accordingly, these claims are time-barred.

In a final effort to save their time-barred claims, Plaintiffs contend that the statute of limitations should be equitably tolled.  They argue that equitable tolling is appropriate because Defendants prevented them from asserting any claims that accrued before November 23, 2008 in a timely manner.  *See Response* [#155] at 9 ("Plaintiffs' failure to bring [claims based on alleged] abuses that occurred in 2006 to 2008 [was caused] solely by virtue of Defendants' conduct that prevented Mr. Carbajal from asserting his political freedom."); *id.* at 8 (asserting that "where a party's acts or omissions contributed to the running of a statute of limitations, the doctrine of equitable estoppel may bar that part[y] [from] raising the limitations statute as a defense").  Specifically, Plaintiffs argue that Defendants prevented them from asserting claims by (1) "attacking" and "tormenting" Mr. Carbajal from 2006 to 2010 such that he was rendered "inept" and mentally incapacitated, and (2) stealing and destroying "legal files and evidence related to the preparation of [this] civil action."  *Id.* at 8; *see also Declaration* [#119-3] at 22-23 ("The abuses taken by [Defendants] not only prevented [Mr. Carbajal] from properly and promptly asserting his

constitutional right to peacefully assemble and redress grievance [sic], but, also, discouraged and instilled a sense of helplessness, thus, instilling a psychological stronghold that prevented Mr. Carbajal from properly and timely addressing matters.  Mr. Carbajal was so damaged psychologically and emotionally by the consistent and continuous abuse that he was virtually left inept to assert his rights [for quite] some time."); *id.* at 13 (stating that "the residual effects of [Defendants'] abuses have affected [Mr. Carbajal's] cognitive abilities; thus, preventing him [from] functioning normally – Mr. Carbajal suffers from PTSD, excessive anxiety, fear, and anger to a level where he was [un]able to properly address the abuses committed against him" by filing a lawsuit).

The issue of tolling is governed by Colorado state law.  *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995).  Once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to the plaintiff to show that there is a basis to toll the accrual date.  *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *Garrett v. Arrowhead Imp. Ass'n*, 826 P.2d 850, 855 (Colo. 1992) (stating that the plaintiff "must bear the burden of establishing the factual foundation for equitably tolling the statute of limitations").   In Colorado, "an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts."  *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996).  A defendant has wrongfully impeded the plaintiff's ability to bring a claim when (1) he "contribute[d] to the running of the statute of limitations" by his "acts or omissions," *Strader v. Beneficial Fin. Co. of Aurora*, 551 P.2d 720, 724 (Colo. 1976), or (2) he "fail[ed] to disclose information that he is legally required to reveal and the [plaintiff was]

-29-

prejudiced thereby," *Garrett*, 826 P.2d at 855.

In this case, the Court finds that Plaintiffs have not carried their burden of demonstrating that tolling the statute of limitations is appropriate. Plaintiffs' allegation that Defendants stole and destroyed Mr. Carbajal's "legal files and evidence related to the preparation of [this] civil action" is not sufficiently detailed to provide a basis for tolling the statute of limitations. *Response* [#155] at 8. Plaintiffs do not specify which Defendants stole and destroyed Mr. Carbajal's files and evidence, what type of files and evidence were lost, or when this occurred. Plaintiffs' argument that they were unable to timely assert their claims because Defendants rendered Mr. Carbajal mentally incompetent also fails. Plaintiffs do not allege that any court ever found Mr. Carbajal to be incompetent or that he ever raised the issue. Nor do Plaintiffs explain how Mr. Carbajal became competent enough to file the present lawsuit. Moreover, the fact that Mr. Carbajal filed a petition for a writ of habeas corpus on August 22, 2007, *Second Amended Complaint* [#119] at 38, ¶ 90, undermines his claim that he was too "inept" to file lawsuits during the period from 2006 through 2010.

The Court concludes that Plaintiffs' claims based on allegedly unconstitutional conduct that (1) occurred before November 23, 2008, and (2) was directly related to the improper extension or revocation of Mr. Carbajal's deferred judgment are not barred by the statute of limitations. The Court further concludes that all other claims based on allegedly unconstitutional conduct that occurred before November 23, 2008 are barred by the statute of limitations and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

G.    **Failure to State Claims**

1.    **Failure to Allege Any Violation of Victoria Carbajal's**

**Constitutional Rights**

Defendants contend that Plaintiffs' Complaint does not allege any violations of Victoria Carbajal's constitutional rights. *Motion to Dismiss* [#141] at 9. They argue as follows: "Victoria Carbajal appears to base her claims solely on the alleged abuses committed against her son, Dean Carbajal. The only reference[s] to Mrs. Carbajal are conclusory statements that Defendants' alleged actions against Mr. Carbajal also harmed [her] rights." *Id.* (citing *Second Amended Complaint* [#119-1] at ¶¶ 174, 221 & 223). After carefully reviewing the Complaint, the Court agrees with Defendants and finds that Plaintiffs have failed to state any claims for violations of Victoria Carbajal's constitutional rights.

The Court must "keep firmly in mind the well-settled principle that a [42 U.S.C. §] 1983 claim must be based upon the violation of [a] plaintiff's *personal* rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citation omitted) (emphasis added). Thus, a "§ 1983 civil rights action . . . does not accrue to a relative." *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir.), *cert. denied*, 459 U.S. 826 (1982). Accordingly, Ms. Carbajal cannot join her son's lawsuit simply because the alleged violations of his rights affected her "security and peace" in some general way. *Second Amended Complaint* [#119-1] at 19, ¶ 174. The Court recommends that all claims asserted on behalf of Victoria Carbajal be dismissed. The Court further recommends that Victoria Carbajal be dismissed as a Plaintiff and that her name be removed from the caption.

## 2. Failure to Allege Facts Supporting a Claim of Fraud Against Each Specific Defendant

Plaintiffs assert a state law claim for fraud against all Defendants. *Second Amended Complaint* [#119-1] at 43-45. In support of this claim, Plaintiffs make the following

allegation: "All Defendants recklessly, knowingly, intentional [sic], willingly, and wantonly misrepresented facts and informations [sic], as well as falsified documents that they knew to be false, with the intention of defrauding Mr. Carbajal of his constitutional right to life, liberty, peace, and the pursuit of happiness[.]" *Id.* at 43, ¶ 244.  This allegation is wholly conclusory, and it lacks even the most minimal level of required detail.  *See Iqbal*, 129 S. Ct. at 1949 (stating that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement").  Moreover, the Complaint is devoid of particularized factual allegations that are required to state a fraud claim against each specific Defendant. Plaintiffs' attempts to particularize their allegation of fraud are hopelessly inadequate.  For example, Plaintiffs allege that "[t]he Seventh Judicial District has intentional [sic] falsified documents, as well as destroyed and/or hid documents to develop a fraudulent means of justifying they [sic] malicious prosecution against Mr. Carbajal."  *Id.* at 44, ¶ 245. Notwithstanding the facts that (1) the Seventh Judicial District is an entity that cannot be sued, *see supra* Part III.B., and (2) only persons – not entities – can physically act to destroy or hide documents, this allegation is otherwise inadequate because it fails to state what documents were destroyed or hidden and when this occurred.

The Court concludes that Plaintiffs have not pled sufficient facts to state a claim of fraud against any Defendant.  Accordingly, the Court recommends that Plaintiffs' fraud claim be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 3.   Failure to Allege that Defendants Herron and Sullivan Acted on Behalf of or as Agents of the State

The Court finds that Plaintiffs have failed to state a constitutional claim against Defendants Herron and Sullivan because these Defendants are not state actors.  42 U.S.C.

§ 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted). Thus, the only proper defendants in a § 1983 action are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 172 (1961).

Plaintiffs' claims against Defendant Herron appear to be based both on his conduct as a judicial officer and his conduct as a defense attorney who represented Mr. Carbajal. *See supra* Part III.C. The Court has recommended dismissal of any claims based on Defendant Herron's conduct while he was acting as a judicial officer. *Id.* The Court now finds that Plaintiffs' claims against Herron based on his conduct while he served as Mr. Carbajal's "private counsel," *Second Amended Complaint* [#119] at 9, ¶ 14, should also be dismissed because Plaintiffs have failed to plead substantive factual content sufficient to plausibly suggest that Herron conspired with state officials or judges to convict Mr. Carbajal. *See Iqbal*, 129 S. Ct. at 1949.

"Defense attorneys, whether court-appointed or privately retained, performing in the traditional role of attorney for the defendant in a criminal proceeding are not deemed to act under color of state law; such attorneys represent their client only, not the state, and cannot be sued in a § 1983 action." *McCary v. Peters*, No. 10-cv-00284-ZLW, Docket No. 12 at

5 (D. Colo. Apr. 26, 2010) (unpublished decision) (citations omitted), *aff'd* 400 F. App'x 323 (10th Cir. Oct. 27, 2010) (unreported decision).  "Of course, a defense attorney engaged in a conspiracy with state officials to deprive his client of his constitutional rights does act under color of state law."  *Id.* (citations omitted).  However, "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).  Further, when a plaintiff "is attempting to demonstrate state action [by his defense counsel] on the basis of a conspiracy with a deputy district attorney [or judicial officer] who herself is entitled to absolute immunity, the pleading standard is even stricter."  *McCary*, No. 10-cv-00284, Docket No. 12 at 6 (citing *Sooner Prods.*, 708 F.2d at 512).

In this case, Plaintiffs have not pled "factual content that allows the court to draw the reasonable inference that [Defendant Herron] is liable" as part of a conspiracy to deprive Mr. Carbajal of his constitutional rights.  *Iqbal*, 129 S. Ct. at 1949.  Plaintiffs have failed to support their "allegations of conspiracy with any specific facts to demonstrate the existence of an agreement and concerted action."  *McCary*, No. 10-cv-00284, Docket No. 12 at 6.  For example, Plaintiffs allege that "Greenacre, Sullivan, Wyatt Angelo, Kramer, Toney, Sullivan and Herron sought to punish and torment Mr. Carbajal utilizing any means necessary to prevent [him] from proceeding to trial in assertion of his innocence."  *Second Amended Complaint* [#119] at 29, ¶ 70.  This allegation is devoid of required detail, and it is insufficient to support a reasonable inference that Defendant Herron conspired with state actors.  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir.1989) ("Conclusory allegations of

-34-

conspiracy are insufficient to state a valid § 1983 claim."); *Iqbal*, 129 S. Ct. at 1949 (stating that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement").   Accordingly, the Court recommends that Plaintiffs' claims against Defendant Herron be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs have also failed to plead "factual content that allows the court to draw the reasonable inference that [Defendant Sullivan] is liable" as part of a conspiracy.  *Iqbal*, 129 S. Ct. at 1949.  Defendant Sullivan is the father of the victim of the sexual assault to which Mr. Carbajal pled guilty in 2001.  *Motion to Dismiss* [#128] at 1, ¶ 3; *Second Amended Complaint* [#119] at 29, ¶ 68.  Plaintiffs claim that Sullivan conspired with other Defendants to deprive Mr. Carbajal of his constitutional rights.  They state that Sullivan "is believed to have utilized his . . . resources to attack Mr. Carbajal." *Second Amended Complaint* [#119] at 27, ¶ 62.  They also state that Sullivan was "close friends with [Defendant Greenacre], through a well-established social and church relationship." *Id.* at 29, ¶ 68.  Plaintiffs allege that this friendship "spawned a one-sided prosecution." *Id.*  Plaintiffs do not develop these conclusory allegations, and they provide no specific facts to demonstrate the existence of an agreement between or concerted action by Sullivan and other Defendants.  *See McCary*, No. 10-cv-00284-ZLW, Docket No. 12 at 6.  Accordingly, the Court recommends that Defendant Sullivan's Motion to Dismiss [#128] be granted and Plaintiffs' claims against Defendant Sullivan be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See Durre*, 869 F.2d at 545.

> **4.     Failure to Allege Personal Participation in the Alleged Constitutional Violations by Defendants Denver Chief of Police and Don Wick**

Defendants contend that Plaintiffs have failed to allege that Defendants Denver Chief of Police and Don Wick, the Arvada Chief of Police, personally participated in any of the purported violations of Mr. Carbajal's rights. *Motion to Dismiss* [#141] at 13-14.

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional violations committed by his subordinates. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) ("A defendant cannot be liable under a *respondeat superior* theory in a section 1983 case." (citing *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979))).

Courts have explained that a defendant in a supervisory position was personally

involved in an alleged constitutional violation committed by his subordinates in two situations. First, the supervisor was personally involved when he personally directed his subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, the supervisor was personally involved when he had actual knowledge that his subordinates were committing the alleged constitutional violation and he acquiesced in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")); *see also id.* at 1399 n.11 (To show an affirmative link between the defendant supervisor's conduct and unconstitutional behavior by his subordinates, a plaintiff must establish "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior."). The Court of Appeals for the Tenth Circuit has explained personal involvement by knowing acquiescence as follows: "In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior." *Serna*, 455 F.3d at 1151.

The Supreme Court has recently called into question the notion of personal involvement by knowing acquiescence. In *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, the Court suggested that the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by his subordinates does not establish that he was personally involved in the violation. In *Iqbal*, the Court considered a federal detainee's claim that his designation as "a person of high interest" was the result of unconstitutional discrimination on the basis of his race, religion, or national origin. *Id.* at 1944. The detainee asserted his discrimination claim against, *inter alios*, the Attorney General of the United States and the

Director of the Federal Bureau of Investigation (FBI).  *Id.*  He argued that these senior officials established the policy and procedures implemented by the prison officials who actually made the allegedly discriminatory designation.  *Id.* ("The pleading names [former Attorney General] Ashcroft as the 'principal architect' of the policy, and identifies [Director of the FBI] Mueller as 'instrumental in its adoption, promulgation, and implementation.'" (citations omitted)).  The Supreme Court held as follows:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.  We reject this argument.  Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.  In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.  In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.* at 1949.

*Iqbal* has been interpreted by at least two Courts of Appeals as narrowing the scope of what constitutes "personal involvement" by a supervisor in an alleged constitutional violation committed by his subordinates:

> [G]iven a recent Supreme Court pronouncement, the basic concept of § 1983 . . . supervisory liability itself may no longer be tenable.  *See Iqbal*, 129 S. Ct. at 1949 ("In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer."). After *Iqbal*, circuits that had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of even that limited form of liability.

*See Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir. 2009).

*Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010).  Accordingly, to establish that a defendant in a supervisory position was personally involved in an alleged constitutional violation committed by his subordinates, a plaintiff must show that the defendant did more than simply acquiesce in the violation.[8]

In this case, Plaintiffs have failed to allege any specific conduct by the Denver Chief of Police or Don Wick.  *See, e.g., Second Amended Complaint* [#119] at 16, ¶ 32 (suggesting that the Denver Chief of Police is liable because he was "responsible for the training and supervision of the Denver PD personnel" and for "providing management and accountability for the Denver PD"); *id.* [#119-1] at 49, ¶ 266 (alleging that the "Policies, procedures, customs and/or practices" employed by police officers who purportedly violated Mr. Carbajal's constitutional rights were "established by the Superior Officers and impart[ed] by the Supervisors [to] their subordinates").  At best, Plaintiffs have alleged only that these Defendants knew of and acquiesced in constitutional violations committed by their subordinates.  As explained above, such allegations are insufficient to state a claim.  Accordingly, the Court recommends that Plaintiffs' claims against Defendants Denver Chief

---

[8] The Courts of Appeals have not provided clear guidance regarding precisely what a plaintiff must show to demonstrate more than mere acquiescence by the defendant. But *Iqbal* and *Serna* indicate that the defendant's state of mind is the linchpin of the analysis. In *Iqbal*, the Supreme Court suggested that a defendant who acquiesced in a constitutional violation committed by his subordinates was personally involved in the violation only if his acquiescence was motivated by a "purpose" to allow or further the violation. *See* 129 S. Ct. at 1949. In *Serna*, the Court of Appeals for the Tenth Circuit suggested that a defendant supervisor who acquiesced in a constitutional violation was personally involved in that violation only if he shared the same "state of mind" with his subordinates who actually committed the violation. *See* 455 F.3d at 1151.

of Police and Don Wick should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

> **5.** **Failure to Plausibly Plead Commission of a Constitutional Violation or Involvement in a Conspiracy by Defendants Meester, DeAndrea, and Lopez-Basgall**

Defendants Meester, DeAndrea, and Lopez-Basgall are police officers with the Arvada Police Department. Plaintiffs' claims against them are based on their conduct while responding to a call from Mr. Carbajal's residence on January 12, 2008. *Declaration* [#119-3] at 19. While this conduct occurred outside of the limitations period, *see supra* Part III.F., it allegedly led to the improper revocation of Mr. Carbajal's deferred judgment. *Id.* at 21 (alleging that Defendants Meester, DeAndrea, and Lopez-Basgall manufactured and hid evidence related to the January 12, 2008 incident, and explaining that "this abuse was the basis for Delta County Official's revocation of Mr. Carbajal's deferred sentence . . . that was ultimately vacated by mandate of the Supreme Court of Colorado"). Accordingly, claims based on this conduct may be timely because they may not have accrued until the deferred judgment was vacated on December 15, 2008. *See supra* Part III.F. The Court declines to specifically address the timeliness of Plaintiffs' claims against Meester, DeAndrea, and Lopez-Basgall because it finds that the claims have not been sufficiently pled. Plaintiffs' allegations do not plausibly suggest that these Defendants are liable for constitutional violations or for conspiracy.

Plaintiffs allege as follows:

> On January 12, 2008, the Arvada Police Department was dispatched to the residence of Amy and Dean Carbajal . . . to address a civil issue – a request for a restraining order. However, during the course of the investigation, the Arvada Police Department discovered that Mr. Carbajal was a sex offender. The Parties involved made a decision to do anything and everything that they could to procure a means to arrest, prosecute, convict, and confine Mr. Carbajal, regardless of the evidence that proved and made clear that Mr.

> Carbajal had violated no state laws. . . . Amy Carbajal had called the police
> with the intent of obtaining a restraining order . . . to dissolve her
> communication with Mr. Carbajal, her husband at the time. . . . Amy
> specifically asked the officers for a restraining order. . . . [The officers] made
> a joint decision to manufacture probable cause, unreasonable search and
> seizure [sic] Mr. Carbajal, invade [his] privacy, and destroy or hide
> exculpatory evidence that would [have] proved that [he] was innocent[.]

*Declaration* [#119-3] at 19.  Plaintiffs further allege that Meester, DeAndrea, and Lopez-Basgall arrested Mr. Carbajal.  *Id.*  Plaintiffs state that after this arrest, Mr. Carbajal was wrongfully convicted of an unspecified crime and imprisoned "for approximately two years." *Id.* at 20.

Plaintiffs' allegations are insufficient to state a constitutional claim against Meester, DeAndrea, and Lopez-Basgall.  Plaintiffs do not provide the following critical information: (1) the crime for which Mr. Carbajal was arrested; (2) the crime for which Mr. Carbajal was convicted; (3) when and where Mr. Carbajal was convicted; (4) what evidence was allegedly manufactured; and (5) what exculpatory evidence was allegedly hidden.  *See id.* at 20 (suggesting that Mr. Carbajal was arrested for trespass by stating that "Mr. Carbajal is an innocent man, shielded from the trespassing statute, because he was invited and was privileged to the residence and, further, left immediately when asked to leave").  The Court is unable to determine whether police officers arrested a plaintiff without probable cause if the plaintiff does not identify the offense for which he was arrested.  Further, Plaintiffs' allegations are devoid of any detail specifying each police officer's individual conduct.  *See Nasious*, 492 F.3d at 1163 (stating that a complaint "must explain what each defendant did to [each plaintiff]; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right [plaintiffs] believe the defendant violated").  Accordingly, Plaintiffs have not pled sufficient "factual content that allows the court to draw the

reasonable inference that" Meester, DeAndrea, and Lopez-Basgall violated Mr. Carbajal's constitutional rights. *Iqbal*, 129 S. Ct. at 1949.

Plaintiffs' allegation that Meester, DeAndrea, and Lopez-Basgall arrested Mr. Carbajal in furtherance of a conspiracy with other Defendants is also insufficient to state a viable claim. Plaintiffs have not alleged that Meester, DeAndrea, and Lopez-Basgall did anything beyond arrest Mr. Carbajal after being called to his residence by his wife. They have not "specifically present[ed] facts tending to show agreement and concerted action" by Meester, DeAndrea, and Lopez-Basgall with other Defendants. *Sooner Prods.*, 708 F.2d at 512. Merely conclusory allegations with no supporting factual averments are insufficient to state a claim for conspiracy. *Id.*; *Durre*, 869 F.2d at 545.

The Court concludes that Plaintiffs' claims against Meester, DeAndrea, and Lopez-Basgall should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**H.    Plaintiffs' Claims Against Municipalities and Police and Correctional Officers**

After consideration of the recommendations above, Plaintiffs' only remaining claims are asserted against municipalities and police and correctional officers. Because Plaintiffs' Complaint is so lengthy, disorganized, and redundant, it is impossible for the Court to assess the viability under Fed. R. Civ. P. 12(b)(6) of all of Plaintiffs' claims against the municipal, police, and correctional Defendants. However, some of these claims are not time-barred and are sufficiently pled. *See, e.g.*, *Declaration* [#119-3] at 3-4 (alleging that on August 28, 2010, Defendant Lucio and an unknown Denver police officer violated the Fourth Amendment during an arrest of Mr. Carbajal by beating him until he was "left in a puddle of blood, unconscious" and by stealing $9,000 in cash from his pockets). The Court

is simply unable to sort Plaintiffs' sufficiently pled claims from those that are insufficiently

pled.   Accordingly, the Court recommends denying the Motions to Dismiss **without**

**prejudice** to the extent that they seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of

Plaintiffs' claims against Defendants Delta County Board of County Commissioners,

Unknown Delta Sheriff, Bill Railey, Chris Weldon, Timothy Hatch, Bea Wolfe, Benjamin

Schroeder, City of Denver, Gilberto Lucio, Laurie Freund, James Dixon, Adam Barrett,

Perry Speerman, Joel Smith, Abbegayle Dorn, Jesse Rembert, Jay Lopez, Michael O'Neill,

Bryan O'Neill, Jeffrey Watts, Ed Gruninger, Unknown Correctional Officer 1, Unknown

Correctional Officer 2, City of Westminster, Unknown Westminster Police Officer 1, and

Unknown Westminster Police Officer 2.   The Court further recommends that Mr. Carbajal

be required to file a Third Amended Complaint of no more than 25 pages in which he sets

out his claims **against these Defendants only**.   In the Third Amended Complaint, Mr.

Carbajal must explain what each defendant did to him, when the defendant did it, how the

defendant's actions harmed him, and what specific legal right he believes the defendant

violated.  *Nasious*, 492 F.3d at 1163.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** as follows:

(1)     Plaintiff Victoria Carbajal should be terminated as a Plaintiff and all of her
        claims against all Defendants should be **DISMISSED with prejudice**
        pursuant to Fed. R. Civ. P. 12(b)(6)[9];

---

[9] The dismissal of a claim "pursuant to Rule 12(b)(6) is a resolution on the merits and
is ordinarily prejudicial."  *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir.
1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision
to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum
Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient
to support its claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d

  (2)  Plaintiff Dean Carbajal's state law claim for fraud asserted against all Defendants should be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

  (3)  Defendant Gregory Sullivan's Motion to Dismiss [#128] should be **GRANTED**, and Plaintiff Dean Carbajal's claims against Defendant Gregory Sullivan should be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

  (4)  Plaintiff Dean Carbajal's claims against Defendants Seventh Judicial District, Colorado Department of Corrections, Myrl Serra, Sherri Price, Patricia Kramer, J. Steven Patrick, Charles R. Greenacre, Sandra K. Miller, James W. Schum, Mandy Allen, Carol Warner, Richard Mahar, David Romero, and Joseph Quintana should be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(1)[10];

---

1345, 1992 WL 219037, at *3-4 (10th Cir. Sept. 9, 1992) (unpublished table decision) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))). Even as courts are careful to protect the rights of *pro se* plaintiffs, they typically find that granting the opportunity to amend would be futile. *See, e.g., Arocho v. Nafziger*, 367 F. App'x at 955 (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)).

[10] Ordinarily, a dismissal for lack of jurisdiction must be without prejudice. *Brereton*, 434 F.3d at 1216. However, when the facts are such that it is impossible for a plaintiff to amend his claims so as to overcome a defendant's immunity, dismissal of his claims with prejudice is appropriate. *See generally Oxendine*, 241 F.3d 1272, 1275 (10th Cir. 2001) (stating that dismissal with prejudice is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend"). Here, no amendment to Plaintiffs' Complaint could change the facts that (1) Defendants Seventh Judicial District and Colorado Department of Corrections cannot be sued on constitutional claims, (2) Defendants Myrl Serra, Sherri Price, Patricia Kramer, J. Steven Patrick, Charles R. Greenacre, Sandra K. Miller, James W. Schum, Mandy Allen, and Carol Warner are entitled to judicial and quasi-judicial immunity, and (3) Defendants Richard Mahar, David Romero, and Joseph Quintana are entitled to witness and quasi-judicial immunity.

(5)     Plaintiff Dean Carbajal's claims against Defendant Jeff Boyd Herron based on his alleged conduct when acting as a judicial officer should be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(1), *see supra* note 10;

(6)     Plaintiff Dean Carbajal's claims against Defendant Jeff Boyd Herron based on his alleged conduct when acting as a defense attorney should be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(7)     Plaintiff Dean Carbajal's claims against Defendants Denver Chief of Police, Don Wick, Patrick Meester, A.J. DeAndrea, and Jourdan Lopez-Basgall should be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(8)     Plaintiff Dean Carbajal should be required to file a Third Amended Complaint **of no more than 25 pages** within 21 days of the issuance of District Judge Robert E. Blackburn's order regarding this Recommendation;

(9)     Plaintiff Dean Carbajal should be instructed that the 25 page limit includes any attachments, affidavits, or "declarations of truth";

(10)    Plaintiff Dean Carbajal should be instructed that the Third Amended Complaint may only assert claims that have not been dismissed against Defendants who have not been dismissed;

(11)    Plaintiff Dean Carbajal should be instructed that the Third Amended Complaint may not assert claims based on alleged conduct that occurred before November 23, 2008, unless such conduct was **directly** related to an improper extension or revocation of Mr. Carbajal's deferred judgment;

(12)    Plaintiff Dean Carbajal should be instructed that he **must write his Third Amended Complaint on a standard prisoner complaint form to be provided by the Clerk of the Court**;

(13)    Plaintiff Dean Carbajal should be advised that any tendered Third Amended Complaint that does not comply with the instructions above or Fed. R. Civ. P. 8 will be immediately stricken;

(14)    All remaining Defendants should be permitted to file motions to dismiss for insufficient service of process after Plaintiff Dean Carbajal files his Third Amended Complaint; and

(15)    All remaining Defendants should be permitted to file motions to dismiss the Third Amended Complaint pursuant Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The Court FURTHER **RECOMMENDS** that the caption should be amended to appear as follows:

DEAN CARBAJAL,

Plaintiff,

v.

DELTA COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Colorado,
UNKNOWN DELTA SHERIFF, in his individual and official capacities,
BILL RAILEY, Captain in the Delta Sheriff's Department, in his individual and official capacities,
CHRIS WELDON, Sergeant in the Delta Sheriff's Department, in his individual and official capacities,
TIMOTHY HATCH, Deputy Sheriff in the Delta Sheriff's Department, in his individual and official capacities,
BEA WOLFE, Deputy Sheriff in the Delta Sheriff's Department, in his individual and official capacities,
BENJAMIN SCHROEDER, Deputy Sheriff in the Delta Sheriff's Department, in his individual and official capacities,
CITY OF DENVER, a municipality of the State of Colorado,
DENVER CHIEF OF POLICE, in his individual and official capacities,
GILBERTO LUCIO, Detective in the Denver Police Department, in his individual and official capacities,
LAURIE FREUND, Detective in the Denver Police Department, in her individual and official capacities,
JAMES DIXON, Police Officer in the Denver Police Department, in his individual and official capacities,
ADAM BARRETT, Police Officer in the Denver Police Department, in his individual and official capacities,
PERRY SPEERMAN, Sergeant in the Denver Police Department, in his individual and official capacities,
JOEL SMITH, Police Officer in the Denver Police Department, in his individual and official capacities,
ABBEGAYLE DORN, Police Officer in the Denver Police Department, in her individual and official capacities,
JESSE REMBERT, Police Officer in the Denver Police Department, in his individual and official capacities,
JAY LOPEZ, Police Officer in the Denver Police Department, in his individual and official capacities,
MICHAEL O'NEILL, Police Officer in the Denver Police Department, in his individual and official capacities,

BRYAN O'NEILL, Police Officer in the Denver Police Department, in his individual and official capacities,
JEFFREY WATTS, Senior Detective Investigator for the Second Judicial District, in his individual and official capacities,
ED GRUNINGER, Detective Investigator for the Second Judicial District, in his individual and official capacities,
UNKNOWN CORRECTIONAL OFFICER 1, Correctional/Parole Officer in the Colorado Department of Corrections, in his individual and official capacities,
UNKNOWN CORRECTIONAL OFFICER 2, Correctional/Parole Officer in the Colorado Department of Corrections, in his individual and official capacities,
CITY OF WESTMINSTER, a municipality of the State of Colorado,
UNKNOWN WESTMINSTER POLICE OFFICER 1, in his individual and official capacities,
UNKNOWN WESTMINSTER POLICE OFFICER 2, in his individual and official capacities,
CITY OF ARVADA, a municipality of the State of Colorado,

Defendants.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 8, 2011

BY THE COURT:

-47-

s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge