IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02862-REB-KLM

DEAN CARBAJAL,

      Plaintiff,

v.

MYRL SERRA, in his individual capacity,
SHERRI PRICE, in her individual capacity,
CAROL WARNER, in her individual capacity,
DAVID ROMERO, in his individual capacity,
JOE QUINTANA, in his individual capacity,
BILL RAILEY, in his individual capacity,
CHRIS WELDON, in his individual capacity,
BENJAMIN SCHROEDER, in his individual capacity,
GILBERTO LUCIO, in his individual capacity,
JAMES DIXON, in his individual capacity,
ADAM BARRETT, in his individual capacity,
JOEL SMITH, in his individual capacity,
JESSE REMBERT, in his individual capacity,
JAY LOPEZ, in his individual capacity,
MICHAEL O'NEILL, in his individual capacity,
JEFFREY WATTS, in his individual capacity,
ED GRUNINGER, in his individual capacity,
BOARD OF COUNTY COMMISSIONER OF DELTA COUNTY, a political subdivision of the State of Colorado,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado,
DARIN DESEL, Police Officer for the Denver Police Department, in his individual capacity,
FRED MCKEE, Sheriff for the Delta Sheriff's Department, in his individual capacity,
PERRY SPEELMAN, Police Officer for the Denver Police Department, in his individual capacity, and
UNKNOWN REPRESENTATIVE, Representative of Patricia Kramer's Estate, former Deputy District Attorney for the Seventh Judicial District, in her individual capacity,

      Defendants.

_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

1

**Table of Contents**

<u>Section</u>                                                                            <u>Page No.</u>

I.     Summary of the Case                                                        5

       A.     Background fo State Court Proceedings                       5

       B.     Background of Present Proceeding                             8

II.    Standard of Review                                                          10

III.   Analysis                                                                       11

       A.     Defendant Kramer                                                  12

       B.     Claim 1: Conspiracy and Malicious Prosecution           13

              1.     Count 2: Malicious Prosecution in Case 99CR96
                     for Violation of Deferred Sentence (2006-2009)      14

                     a.     Fourth Amendment                                14

                     b.     Fourteenth Amendment: Substantive Due
                            Process                                           16

                            i.     Statute of Limitations                  17
                            ii.    Personal Participation                 18
                            iii.   Elements of a 14th Amendment
                                   Malicious Prosecution Claim            21

                                   (1)    Continued Confinement           21
                                   (2)    Favorable Termination           22
                                   (3)    Probable Cause                  24
                                   (4)    Malice                          28

                            iv.    Damages                                 29
                            v.     Qualified Immunity                     30

                     c.     Fourteenth Amendment: Procedural
                            Due Process                                    33

            2.      Count 1: Conspiracy to Maliciously Prosecute
                    Plaintiff from 2005-2010                             35

                    a.      42 U.S.C. § 1983                             35

                    b.      42 U.S.C. § 1985                             38

                    c.      42 U.S.C. § 1986                             40

    C.      Claim 4, Count 1: Monell Claim                              40

            1.      Individual Defendants                               42

            2.      BOCC                                                43

    D.      Injunctive Relief                                          45

    E.      Attorneys' Fees                                            46

    F.      Leave to Amend                                             47

IV.     Conclusion                                                     49

This matter is before the Court on the **Delta Defendants' Joint Motion to Dismiss Plaintiff's Third Amended Complaint** [Docket No. 271; Filed February 6, 2012] (the "Joint Motion"), filed by Defendants Myrl Serra ("Serra"), Sherri Price ("Price"), Unknown Representative (Patricia Kramer estate) ("Kramer"), Fred McKee ("McKee"), Bill Railey ("Railey"), Chris Weldon ("Weldon"), Bea Wolfe ("Wolfe"),[1] Benjamin Schroeder ("Schroeder"), and the Board of County Commissioners of Delta County ("BOCC") (collectively, the "Delta Defendants"); on the **Delta Sheriff-Deputies' Motion to Dismiss Plaintiff's Third Amended Complaint** [Docket No. 272; Filed February 6, 2012] (the "Sheriff-Deputies' Motion"), filed by Defendants McKee, Railey, Weldon, Wolfe, and Schroeder (collectively, the "Sheriff-Deputy Defendants"); on the **Delta Prosecutors' Motion to Dismiss Plaintiff's Third Amended Complaint** [Docket No. 273; Filed February 6, 2012] (the "Prosecutors' Motion"), filed by Defendants Serra, Price, and Kramer (collectively, the "Prosecutor Defendants"); and on the **Board of County Commissioners of Delta County's Motion to Dismiss Plaintiff's Third Amended Complaint** [Docket No. 274; Filed February 6, 2012] ("BOCC's Motion"), filed by Defendant BOCC (collectively, the "Motions").[2]  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.Colo.LCivR 72.1C.3., the Motions

---

[1]  Wolfe was erroneously included in the Court's caption accepting Plaintiff's Third Amended Complaint for filing, although the Third Amended Complaint does not name her as a defendant in this action.  All claims asserted against Wolfe were dismissed by the District Judge on October 19, 2011.  *See* [#229] at 6.  Because Wolfe is not a named Defendant in this action, the Court need not address the substantive arguments that were asserted by the Delta Defendants on her behalf.  The Court hereby amends the case caption to remove Wolfe as a party to this action.

[2]  On January 31, 2012, the Court issued a Minute Order permitting the nine Delta Defendants to file a joint motion to dismiss, not to exceed fifteen pages, asserting legal arguments common to all nine of them, along with three additional motions to dismiss, not to exceed ten pages each, filed separately by the Sheriff-Deputy Defendants, the Prosecutor Defendants, and Defendant BOCC, each asserting legal arguments not common to all nine of the Delta Defendants.  *Minute Order* [#263] at 2.

have been referred to this Court for recommendation [#275]. Plaintiff filed Responses to the Motions on March 22, 2012 [#303-05]. The Delta Defendants filed Replies to Plaintiff's Responses on April 19, 2012 [#327-30]. The Court has reviewed the Motions, Responses, Replies, and applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Prosecutors' Motion [#273] and BOCC's Motion [#274] be **GRANTED** and that the Joint Motion [#271] and Sheriff-Deputies' Motion [#273] be **GRANTED in part and DENIED in part**, as outlined below.

## I. Summary of the Case[3]

### A.    Background of State Court Proceedings

Plaintiff is currently a state prisoner incarcerated at the Centennial Correctional Facility in Canon City, Colorado. In 1999, Plaintiff was charged with sexual assault in the Delta County District Court. *See People v. Carbajal*, 198 P.3d 102, 104 (Colo. 2008). "In a plea deal resolving six cases from Delta, Montrose, and San Miguel counties, [Plaintiff] entered *Alford* pleas to sexual assault II, possession of a schedule II controlled substance and bail violation." *Id.* On August 30, 2001, the Delta County District Court sentenced Plaintiff to four years confinement and three years of mandatory parole for possession of a schedule II controlled substance. *Id.* Regarding the charge of sexual assault II, the court

---

[3] The summary of the case which follows is limited to the facts and legal issues bearing on Plaintiff's claims against the Delta Defendants. As the Delta Defendants note, Plaintiff's Third Amended Complaint [#254] and corresponding Responses [#303-05] include allegations against Tom Raynes ("Raynes") and Edward Clayton ("Clayton"), but neither is a named Defendant in this action. *See Prosecutors' Reply* [#329] at 2; *BOCC's Reply* [#330] at 2. Any purported attempt to assert claims against Mr. Raynes or Mr. Clayton is therefore without merit.

imposed a deferred judgment with the statutory maximum of four years of supervision.[4]  *Id.*

Plaintiff was released from confinement on July 26, 2004 and began his mandatory three years of parole.  *Id.*  According to the Delta County District Court's order, his deferred judgment supervision began on that date and was to continue until July 26, 2008.  *Id.* However, Plaintiff's parole was revoked on an unspecified date prior to late April 2006, and he was returned to confinement.  *Id.*  Plaintiff's violation of his parole was also a violation of the conditions of his deferred judgment supervision, and "on April 25, 2006, the People filed a petition to revoke [his] deferred judgment and impose a judgment and sentence." *Id.*  After a hearing on July 14, 2006, the Delta County District Court ordered that Plaintiff's deferred judgment would not be revoked, but his four years of deferred judgment supervision would be "restarted," *i.e.*, his deferred judgment supervision would run from July 14, 2006 through July 14, 2010.[5]  *Id.*

On April 26, 2007, the People filed a second petition to revoke Plaintiff's deferred

---

[4]  The Colorado Supreme Court explained a deferred judgment as follows:

A deferred judgment is created and authorized by statute.  Colorado's deferred judgment statute, [Colo. Rev. Stat. §] 18-1.3-102, strictly controls a trial court's authority to impose a deferred judgment, and a trial court lacks authority to impose a deferred judgment outside the statute's limits.  Once a defendant pleads guilty to a felony, the deferred judgment statute allows the trial court to continue the defendant's case without entering judgment for up to four years from the date of the plea, and implement probation-like supervision conditions in return for the continuance . . . .  Because a deferred judgment provides probation-like supervision, the deferral can be revoked – and judgment entered and sentence imposed – if the defendant violates any supervision conditions . . . .  [I]f a defendant serves four years of deferred judgment supervision for a felony without revocation or permissible extension, his guilty plea must be withdrawn and his case must be dismissed with prejudice.

*Carbajal*, 198 P.3d at 105-06 (emphasis added).

[5]  The circumstances surrounding the "restart" of Plaintiff's deferred judgment, as explained more fully below, form the primary basis for his claims against the Delta Defendants.

judgment.[6]  *Id.* at 105.  The Delta County District Court set a hearing on the petition; Plaintiff failed to appear, so the court issued a warrant for his arrest.  *Id.*  On August 22, 2007, the Delta County Sheriff arrested Plaintiff pursuant to the failure-to-appear warrant. *Id.*  That same day, Plaintiff filed a petition for a writ of habeas corpus seeking vacation of his deferred judgment.  *Id.*  "Although the petition was assigned a civil case number, the [Delta County District Court] addressed it during an advisement hearing in the criminal case" that was initiated by the failure-to-appear warrant.  *Id.*  The court denied the habeas petition.  *Id.*  On September 12, 2007, Plaintiff appealed the denial of his habeas petition, and the Colorado Court of Appeals referred the case to the Colorado Supreme Court.  *Id.*

The Colorado Supreme Court construed Plaintiff's petition for a writ of habeas corpus "as a challenge to the [Delta County District Court's] jurisdiction."  *Id.*  At that time, Plaintiff's deferred judgment termination date was July 14, 2010.  *Id.*  On December 15, 2008, the Colorado Supreme Court concluded that the Delta County District Court erred and exceeded its statutorily-conferred jurisdiction by: (1) starting Plaintiff's period of deferred judgment supervision nearly three years after his plea, when Plaintiff was originally released from confinement; (2) continuing it for nearly seven years after his plea; (3) hearing a revocation petition filed eight months after the statutory filing limit; and (4) enforcing a two-year extension of the deferred judgment framed as a stipulation to new supervision conditions.  *Id.* at 107.  The Colorado Supreme Court further held that Plaintiff's deferred judgment "began on August 30, 2001 and ended by operation of law on August 30, 2005."  *Id.* at 106.  Accordingly, it directed the Delta County District Court to dismiss

---

[6]  The justification for this second petition is not mentioned in the Colorado Supreme Court's decision.

Plaintiff's deferred judgment.  *Id.* at 107.

## B.   Background of the Present Proceeding

Plaintiff initiated this lawsuit *pro se* pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 on November 23, 2010 [#1].   On January 6, 2012, he filed a Third Amended Complaint [#254], which is the operative pleading at this juncture.   In the Third Amended Complaint, Plaintiff asserts claims against individuals and entities ("Defendants") with whom he came into contact during his arrests, detentions, and judicial proceedings related to his deferred judgment.   In short, Plaintiff claims that Defendants violated his constitutional rights over a five-year period from 2005 to 2010.   Plaintiff further claims that Defendants acted in concert during the entire period from 2005 through 2010 as part of a "conspiracy to arrest, prosecute, convict, and confine [him]."   *Third Am. Compl.* [#254] at 6.   Plaintiff specifically accuses the Sheriff-Deputy Defendants of coercing him to execute a contract that led to the extension of his deferred judgment in July 2006.   *Id.* at 17.   He asserts that Defendants Schroeder and Weldon physically and verbally attacked him, while Defendants Railey and McKee watched, in their effort to obtain his consent to the extension.   *Id.* at 8.

In his Third Amended Complaint, Plaintiff brings a claim for conspiracy and malicious prosecution against the individual Delta Defendants ("Claim One") and asserts that Defendant BOCC has municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), ("Claim Four: Count One").[7]   *See id.*

---

[7] Plaintiff brings two additional claims against Defendants who are not parties to the present Motions: unreasonable search and seizure pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Denver police officers (Claim Two) and unreasonable and excessive force pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Denver police officers (Claim Three).   *See Third Am. Compl.*

As remedies, Plaintiff seeks: 1) "equitable relief including but not limited to prospective injunctive relief including expungement of criminal record, and appropriate equitable restitution;" 2) economic damages; 3) "compensatory damages, including but not limited to those for past and future pecuniary, and non-pecuniary losses, emotional distress and suffering of reputation [sic], humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;" 4) punitive damages; 5) attorney's fees and costs; and 6) "further relief as justice requires." *Id.* at 25.  The Delta Defendants responded to Plaintiff's Third Amended Complaint with the Motions at issue, asserting that Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[8] *Motions* [#271-74].  The Court addresses the specifics of the Delta Defendants' arguments in favor of dismissal in the Analysis section below.

## II.  Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient

[#254] at 19-21.  Similarly, Plaintiff brings three additional "counts" against Defendants who are not parties to the present Motions: malicious prosecution in Case No. 09GS136117 against Denver police officers(Claim One, Count Three); malicious prosecution in Case No. 10CR1577 against Denver police officers (Claim One, Count Four); and municipality liability against Defendant City and County of Denver (Claim Four, Count Two).  *See id.* at 17-18, 23.  None of the Delta Defendants are named in any of these two additional claims or three additional counts.  *See id.* at 17-23.

[8]  In the Prosecutors' Motion, Defendant Kramer also asks the Court to dismiss all claims against her on the basis of Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(5).  *See Prosecutors' Motion* [#273] at 3-5.  Plaintiff responds that, after the Prosecutors' Motion was filed, he properly served Defendant Kramer's representatives, Diane Kramer and Elizabeth K. Benderman.  *See Response* [#304] at 6.  In their Reply, the Prosecutor Defendants concede that service was properly obtained on Defendant Kramer's personal representative, Diane Kramer, after the filing of their Motion to Dismiss.  *See Prosecutors' Reply* [#329] at 2.  The Prosecutor Defendants therefore do not pursue their arguments made pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(5).

facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts

10

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, a *pro se* litigant must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.  Analysis

Despite the varying labels Plaintiff has attached to his myriad claims, and his attempts to package each claim under multiple constitutional dimensions, the Court is not rigidly constrained by Plaintiff's labels. *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis"). The Third Amended Complaint "mixes allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way." *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996). "The general rule that *pro se* pleadings must be construed liberally has limits, and the Court cannot take on the responsibility of serving as [a] litigant's attorney in constructing arguments and searching the record." *McConnell v. Cirbo*, No. 10-cv-02622-ZLW, 2011 WL 1060667, at

*3 (D. Colo. Mar. 23, 2011) (internal quotation omitted).   Nevertheless, the Court has carefully reviewed every page of the Third Amended Complaint to ascertain Plaintiff's claims and whether each is viable.   *See Windsor v. Colo. Dep't of Corr.*, 9 Fed. App'x 967, 968 (10th Cir. 2001).

## A.   Defendant Kramer

Defendant Kramer died in New Mexico on August 18, 2007.   *See Prosecutors' Reply* [#329-1].   The Prosecutor Defendants contend that New Mexico's non-claim statute bars Plaintiff's claim against Defendant Kramer, despite service of the Complaint on her personal representative, Diane Kramer.   *Prosecutors' Reply* [#329] at 2-3.   The Court agrees.

"In determining whether [a] § 1983 claim against [an] estate survives, [the Court applies] the law of the forum state."   *Wilson v. Bd. of Cnty. Com'rs of El Paso*, 853 F. Supp. 369 (D. Colo. 1994) (citations omitted).   Colorado's non-claim statute states that "claims barred by the nonclaim statute at the decedent's domicile are also barred in this state." C.R.S.A. § 15-12-803(1)(b).   New Mexico's non-claim statute bars "[a]ll claims against a decedent's estate that arose before the death of the decedent" unless they are presented within "one year after the decedent's death" and "[a]ll claims against a decedent's estate that arise at or after the death of the decedent" unless they are presented within "four months after it arises."   N.M.S.A. § 1978 45-3-803(A); N.M.S.A. § 1978 45-3-803(c).

At the latest, Plaintiff's claims arose on December 15, 2008, when the Colorado Supreme Court issued its decision in *Carbajal*, 198 P.3d 102.   However, Plaintiff did not initiate this lawsuit until November 23, 2010, more than three years after Defendant Kramer's death and nearly two years after Plaintiff's claims arose.   *See Compl.* [#1].

Therefore, Plaintiff exceeded the one-year time restriction after the decedent's death and the four-month time restriction after his claim arose. Thus, New Mexico's non-claim statute bars Plaintiff's claim against Defendant Kramer's estate. Accordingly, the Court **recommends** that all claims against Defendant Kramer be dismissed.[9]

## B.  Claim 1: Conspiracy and Malicious Prosecution

Plaintiff's first claim is for conspiracy and malicious prosecution pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. *See Third Am. Compl.* [#254] at 16-18. Plaintiff asserts four separate conspiracy claims, which he labels "Count 1," "Count 2," "Count 3," and "Count 4." *Id.* Plaintiff makes allegations against Defendants Serra, Price, Railey, McKee, Weldon, Schroeder, Kramer, and BOCC in "Count 1" and "Count 2."[10] *Id.* at 16-17. The Court addresses Plaintiff's Count 2 allegations of malicious prosecution before turning to Plaintiff's Count 1 allegations of conspiracy to maliciously prosecute.

### 1.  Count 2: Malicious Prosecution in Case 99CR96 for Violation of Deferred Sentence (2006-2009)

Plaintiff alleges that Defendants Serra, Price, and Kramer engaged in "the destruction of exculpatory [evidence], specifically the original plea agreement and contracts that support[ed] a concurrent sentence." *Third Am. Compl.* [#254] at 16. Additionally, Plaintiff alleges that Defendants Railey, McKee, Weldon, and Schroeder's "coercing of Mr. Carbajal to concede and sign a contract . . . permitted the illegal extension of Mr. Carbajal's deferred sentence through the use of excessive force and threats of death." *Id.* Plaintiff

---

[9]  The Court addresses whether the claims recommended for dismissal from this action should be dismissed with or without prejudice below. *See infra* § III.F.

[10]  *See supra* note 7.

then alleges that Defendants Serra, Price, Kramer, Railey, Weldon, and Schroeder "falsif[ied] evidence to establish a fraudulent sentence, arrest warrant, prosecution, conviction, and continuing confinement of Mr. Carbajal." *Id.* at 17.

### a.   Fourth Amendment

Plaintiff brings claims for both Fourth and Fourteenth Amendment violations, for each of which he alleges the same set of underlying facts.  In short, Plaintiff alleges that he was arrested, tried, imprisoned, and released on parole pursuant to a deferred judgment.  Upon his release, the state court mandated that his deferred judgment run from July 26, 2004 through July 26, 2008.  When Plaintiff violated the terms of his parole and conditions of his deferred judgment supervision, his deferred judgment was "restarted" by the state court, with Plaintiff's allegedly coerced agreement, and mandated to run from July 14, 2006 through July 14, 2010.  The Colorado Supreme Court later ruled that Plaintiff's deferred judgment should have run from August 1, 2001 to August 30, 2005.

The Tenth Circuit has stated that a plaintiff asserting that he was wrongfully detained based on "fabrication of evidence by a government officer acting in an investigative capacity" may have claims pursuant to the Fourth and Fourteenth Amendment, depending on the circumstances. *Pierce v. Gilchrist*, 359 F.3d 1279, 1287 n.5 (10th Cir. 2004).  "[A] plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims.  'The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.'" *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citing *Pierce*, 359 F.3d at 1285–86).  "If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort

14

claim for false arrest or false imprisonment.  If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution." *Id.*

Based on the allegations in Plaintiff's Third Amended Complaint, it is clear that his claims fall under the Fourteenth and not the Fourth Amendment.  Plaintiff alleges that his injury, *i.e.*, coercion and destruction of documents by certain Defendants in connection with the restarting of his deferred judgment and subsequent wrongful imprisonment, occurred well after the onset of legal proceedings and resulted from the  allegedly wrongful process, not imprisonment without legal process.  *See Mondragon*, 519 F.3d at 1082; *see also Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, at *3-5 (D. Colo. Feb. 11, 2011) (discussing whether a claim for malicious prosecution fell under the Fourth or Fourteenth Amendment).  Accordingly, the Court **recommends** that Plaintiff's malicious prosecution claim pursuant to the Fourth Amendment be dismissed.[11]

### b.    Fourteenth Amendment: Substantive Due Process

Plaintiff asserts "the Fourteenth Amendment right not to be deprived of liberty without due process of law, or more specifically, as the result of the fabrication of evidence by a government officer acting in an investigative capacity."  *Pierce*, 359 F.3d at 1285 (citations omitted).  "The period of time between the institution of [legal] process and its

---

[11]  The Court does not address any Fourth Amendment claim against the Defendants who have not moved for its dismissal.  They are: Defendant Barrett, Defendant Desel, Defendant Dixon, Defendant Gruninger, Defendant Lucio, Defendant Quintana, Defendant Rembert, Defendant Romero, Defendant Smith, Defendant Speelman, Defendant Warner, and Defendant City of Denver.

favorable termination—through acquittal, habeas corpus, voluntary dismissal, etc.—forms a . . . claim, arising under the Due Process Clause." *Mondragon*, 519 F.3d at 1083. The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, sec. 1. "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).

"[S]ubstantive due process assumes that some deprivations of life, liberty, or property are so grievous that no amount of procedure can justify the deprivation." *Becker v. Kroll*, 494 F.3d 904, 918 n.8 (10th Cir. 2007) (citation omitted). Substantive due process protects "fundamental rights," which are rights contemplated by the Constitution as "implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556. These types of cases "must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power . . . [They] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957-58 (10th Cir. 2001); *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995). "This standard is met in only the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity." *Becker*, 494 F.3d at 923 (citations omitted).

Plaintiff's Fourteenth Amendment substantive due process claim is based on allegations of malicious prosecution against the Delta Defendants. *Third Am. Compl.* [#254] at 6, 16-17. "The Tenth Circuit has recognized the viability of malicious prosecution

16

claims under § 1983." *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1249 (D.N.M. 2010) (internal quotation marks and citation omitted). "Under our cases, a § 1983 malicious prosecution claim includes the following elements: (i) the defendant caused the plaintiff's continued confinement or prosecution; (ii) the original action terminated in favor of the plaintiff; (iii) no probable cause supported the original arrest, continued confinement, or prosecution; (iv) the defendant acted with malice; and (v) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citation omitted).

### i.     Statute of Limitations

The Delta Defendants contend that Plaintiff's Fourteenth Amendment malicious prosecution claim is time barred. *Sheriff-Deputies' Motion* [#272] at 3-4*; Prosecutors' Motion* [#273] at 5; *Joint Reply* [#327] at 5; *Sheriff-Deputies' Reply* [#328] at 2; *Prosecutors' Reply* [#329] at 3-4. Plaintiff alleges that his claims are not time barred because the accrual date of the statute of limitations was deferred to December 15, 2008 and the doctrine of equitable tolling should apply because he was "brutally assaulted, tortured, and attacked." *Response* [#304] at 7. The Court previously addressed Plaintiff's accrual date and equitable tolling arguments. *See Order* [#229]*; Recommendation* [#198] at 29-30. At that time, the Court admonished Plaintiff that "any third amended complaint may not include claims based on alleged conduct that occurred before November 23, 2008, unless such conduct was directly related to an improper extension or revocation of Mr. Carbajal's deferred judgment." *Order* [#229] at 11. Plaintiff alleges that in July 2006, the Delta Defendants coerced him, falsified documents, and omitted information in court submissions. *Third Am. Compl.* [#254] at 16. These alleged incidents occurred prior to November 23, 2008, but they are all "directly related" to Plaintiff's July 14, 2006 hearing and

17

the extension of his deferred judgment.  *See Order* [#229]*; Recommendation* [#198] at 29-30.  Therefore, Plaintiff's Fourteenth Amendment malicious prosecution claim is not barred by the statute of limitations.

### ii.   Personal Participation

The Sheriff-Deputy Defendants contend that Plaintiff fails to allege the degree of personal participation required to state a claim against them.  *Sheriff-Deputies' Motion* [#272] at 2, 6-8*; Sheriff-Deputies' Reply* [#328] at 4-6.  The Court disagrees.

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations committed by his or her subordinates.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (citation omitted)).

18

Courts have explained that a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations.  First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation.  *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission.  *Id.* (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3rd Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")).  However, the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by the subordinates may no longer establish that he or she was personally involved in the violation.  *See Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677).

Here, the Sheriff-Deputy Defendants contend that Plaintiff fails to allege the degree of personal participation required to state a claim against them because false arrest, seizure, and imprisonment are separate claims from malicious prosecution.  *Sheriff-Deputies' Reply* [#328] at 4-6.  However, contrary to the Sheriff-Deputy Defendants' contention, 42 U.S.C. § 1983 malicious prosecution claims may include "the original arrest, continued confinement, or prosecution."  *Wilkins*, 528 F.3d at 799 (citation omitted).

The Sheriff-Deputy Defendants also contend that Plaintiff fails to allege the degree of personal participation required to state a claim against Defendants McKee and Railey in their capacities as supervisors.  However, Plaintiff accuses Defendants Railey, McKee, Weldon, and Schroeder of "coercing Mr. Carbajal to concede to and sign the contract

illegally extending his deferred sentence through the use of excessive force and threats of death." *Third Am. Compl.* [#254] at 17.  More specifically, Plaintiff alleges that:

> In July of 2006 . . . Schroeder and Weldon . . . stripped and brutally beat [Plaintiff] . . . kicking him repeatedly . . . as they yelled profanities and slanderous statements, "You fuckin rapist," and threatened him, "If your [sic] smart you'll take what the District Attorney gives you.  The life expectancy is short in these parts."

*Id.* at 8.  Plaintiff asserts that "McKee and Railey were present and laughed at the abusive attacks of Weldon and Schroeder." *Id.*  Finally, Plaintiff alleges that the Delta County District Court's decision to sanction the "restart" of his deferred judgment and continue the deferred judgment to July 14, 2010 was based on the fact that the Sheriff-Deputy Defendants coerced Plaintiff into executing the agreement. *Id.* at 16-17.  Plaintiff alleges that Defendants McKee and Railey not only knew about Defendants Weldon and Schroeder's allegedly coercive behavior, but also witnessed it. *Id.*  Therefore, the Court finds that Plaintiff alleges that Defendants McKee and Railey had "actual knowledge and acquiescence" regarding Defendants Weldon and Schroeder's actions.

Construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to state a claim that implicates the Sheriff-Deputy Defendants' personal involvement.  Accordingly, Plaintiff has alleged the degree of personal participation required to state a claim against Defendants Weldon, Schroeder, McKee, and Railey.

### iii.    Elements of a Fourteenth Amendment Malicious Prosecution Claim

### (1)    Continued Confinement

The first element of a Fourteenth Amendment malicious prosecution claim is that the

defendant must have caused the plaintiff's continued confinement or prosecution. *Wilkins*, 528 F.3d at 799.[12] "Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only after the institution of legal process." *Mata*, 685 F. Supp. 2d at 1249 (citation omitted). Here, on August 30, 2001, the Delta County District Court imposed a deferred judgment on Plaintiff. *Carbajal*, 198 P.3d at 104. "[B]y operation of law," Plaintiff's deferred judgment ended on August 30, 2005. *Id.* at 106. Plaintiff was originally confined from August 30, 2001 until July 26, 2004. *Id.* at 104. "[O]n April 25, 2006, the People filed a petition to revoke [Plaintiff's] deferred judgment and impose a judgment and sentence." *Id.* After a hearing on July 14, 2006, the Delta County District Court ordered that Mr. Carbajal's deferred judgment would run through July 14, 2010. *Id.* On April 26, 2007, the People filed a second petition to revoke Mr. Carbajal's deferred judgment. *Id.* at 105. The Delta County District Court set a hearing on the petition, and Mr. Carbajal failed to appear. *Id.* The court issued a warrant for his arrest and, on August 22, 2007, the Delta County Sheriff arrested Mr. Carbajal pursuant to the failure to appear warrant. *Id.* Based on these facts, Plaintiff has alleged sufficient facts to establish the continued confinement and prosecution element of a Fourteenth Amendment malicious prosecution claim.

### (2)     Favorable Termination

The second element of a Fourteenth Amendment malicious prosecution claim is "the termination of the prior criminal proceeding in favor of the accused." *Guinn v. Unknown Lakewood Police Officers*, No 10-cv-00827-WYD-CBS, 2010 WL 4740326, *4 (D. Colo. Sept. 30, 2010) (citation omitted). The Delta Defendants contend that Plaintiff's Fourteenth

---

[12] None of the Delta Defendants explicitly argue that Plaintiff has failed to allege sufficient facts to satisfy this element. *See, e.g.*, *Prosecutors' Motion* [#273] at 6-8.

Amendment malicious prosecution claim is barred by the favorable termination rule. *Joint Motion* [#271] at 8-9; *Joint Reply* [#327] at 5-6. The Court disagrees.

The favorable termination rule was established in *Heck v. Humphrey*, 512 U.S. 477 (1994).

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87. Additionally:

> [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (footnote omitted). "The starting point for the application of *Heck* then is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007) (citation omitted). "In other words, a § 1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating." *Id.*

Here, the Delta Defendants contend that "[t]he deferred judgment, the conviction for the drug and bail violations, and the parole revocation were never invalidated." *Joint Motion* [#271] at 9; *Prosecutors' Motion* [#273] at 7. Additionally, the Prosecutor Defendants contend that "a claim for malicious prosecution, false arrest or false

imprisonment is not available to a defendant [who] successfully completes the deferred judgment." *Prosecutors' Motion* [#273] at 7 (citing *Land v. Hill*, 644 P.2d 43, 45-46 (Colo. App. 1981)). It is true that "the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole." *Kossler v. Crisanti*, 564 F.3d 181, 188 (3rd Cir. 2009). However, Plaintiff's allegations relate to the extension of his deferred judgment, not the conviction for the drug and bail violations or the parole revocation, nor the original deferred judgment. *See Third Am. Compl.* [#254].

The Colorado Supreme Court held that the trial court exceeded its jurisdiction when it extended Plaintiff's deferred judgment and dismissed the deferred judgment. *Carbajal*, 198 P.3d at 107. The Court noted that a Colorado statute requires that "[u]pon full compliance with such conditions by the defendant, the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice." C.R.S. § 18-1.3-102 (2). "[B]y operation of law" Plaintiff's deferred judgment terminated on August 30, 2005. *Carbajal*, 198 P.3d at 106. Therefore, when Plaintiff's deferred judgment was extended on July 14, 2006, his deferred judgment should have already ended, his guilty plea should have already been withdrawn, and the sentence should have already been dismissed. *Id.* at 104. Thus, a judgment in Plaintiff's favor in this case would not invalidate a conviction or sentence because the deferred judgment proceedings were terminated in Plaintiff's favor. *See Carbajal*, 198 P.3d 102. Therefore, Plaintiff has alleged sufficient facts to establish the favorable termination element of a Fourteenth Amendment malicious prosecution claim.

### (3) Probable Cause

23

"The third element in the tort of malicious prosecution is that there was no probable cause to support the original arrest, continued confinement, or prosecution." *Pierce*, 359 F.3d at 1294. "[T]he third element deals only with the probable cause determination during the institution of legal process . . ." *Wilkins*, 528 F.3d at 799. Therefore, "[t]o establish a malicious-prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him without probable cause." *Mata*, 685 F. Supp. 2d at 1249 (citation omitted).

Here, Plaintiff alleges that he was arrested, prosecuted, and convicted, and that his confinement was continued without probable cause. *Third Am. Compl.* [#254] at 16-17. The Delta Defendants contend that Plaintiff was arrested with probable cause because he was arrested "in conjunction with his parole revocation for his drug and bail violation conviction." *Joint Motion* [#271] at 9-10; *Joint Reply* [#327] at 4. Similarly, the Prosecutor Defendants contend that "the underlying drug possession and bail violation conviction, subsequent parole revocation and Plaintiff's return to confinement" provided probable cause to extend Plaintiff's deferred judgment. *Prosecutors' Motion* [#273] at 6. According to the Colorado Supreme Court, Plaintiff was arrested in April 2006 because he violated the terms of his parole and in August 2007 because he failed to appear at a court hearing pursuant to the terms of his deferred judgment. *See Carbajal*, 198 P.3d 102. Therefore, whether there was probable cause to extend Plaintiff's deferred judgment depends on Plaintiff's specific allegations regarding the Sheriff-Deputy Defendants and the Prosecutor Defendants.

Plaintiff accuses the Sheriff-Deputy Defendants of "coercing Plaintiff to concede to and sign the contract illegally extending his deferred sentence through the use of excessive

24

force and threats of death." *Third Am. Compl.* [#254] at 17.  More specifically, Plaintiff
alleges that:

> In July of 2006 . . . Schroeder and Weldon . . . stripped and brutally beat
> [Plaintiff] . . . kicking him repeatedly . . . as they yelled profanities and
> slanderous statements, "You fuckin rapist," and threatened him, "If your [sic]
> smart you'll take what the District Attorney gives you.  The life expectancy is
> short in these parts."

*Id.* at 8.  Plaintiff alleges that the Delta County District Court's decision to sanction the
"restart" of his deferred judgment and continue the deferred judgment to July 14, 2010 was
based on the fact that the Sheriff-Deputy Defendants coerced Plaintiff to execute the
agreement extending his deferred judgment.  *Id.* at 16-17.  As Plaintiff notes, "[t]he court
sanctioned the 'restart' and continued the deferred judgment to July 14, 2010" after Plaintiff
and the People stipulated to supervision conditions. *Carbajal*, 198 P.3d at 104.  Therefore,
applying the above-stated principles to this case and construing the facts in a light most
favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged that coercion by
the Sheriff-Deputy Defendants altered the existence of probable cause. *Benton*, 375 F.3d
at 1074–75 ("Any factual disputes are resolved in the plaintiff's favor").  At this stage of the
litigation, it is unknown what effect the allegedly coerced agreement by Plaintiff had on the
imposition of the deferred judgment extension, but if the extension was based in part on
Plaintiff's execution of the agreement under duress, then the lack-of-probable-cause
element of this claim is met.  Thus, Plaintiff has alleged sufficient facts to establish the lack-
of-probable-cause element of a Fourteenth Amendment malicious prosecution claim
against the Sheriff-Deputy Defendants.

Additionally, Plaintiff alleges that the Prosecutor Defendants "manufactur[ed]
inculpatory evidence that was designed to bring about Mr. Carbajal's wrongful arrest,

prosecution, conviction, and confinement," and submitted "false affidavits containing material falsities and omissions designed to mislead judicial officers." *Id.* at 16.  Plaintiff further alleges that the Prosecutor Defendants are responsible for drafting and presenting "false, distorted and perjured statements to judicial officers," as well as the "falsification of the record to establish a fraudulent deferred sentence." *Id.* at 22.  Plaintiff alleges that the Prosecutor Defendants destroyed "exculpatory evidence - contracts that support a concurrent sentence, and decision to revoke Mr. Carbajal's deferred sentence without jurisdiction or probable cause, based on their false affidavits containing material falsities and omissions designed to mislead judicial officers into issuing a warrant for the arrest of Mr. Carbajal." *Id.* at 16.  Plaintiff alleges that the Delta County District Court's decision to sanction the "restart" of his deferred judgment and continue the deferred judgment to July 14, 2010 was based on the fact that the Prosecutor Defendants submitted false affidavits. *Id.* at 16-17.  When a plaintiff alleges that defendants falsified evidence, the Court must analyze whether the allegation impacts the existence of probable cause. *Pierce*, 359 F.3d at 1286-87.

> [T]he existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit.  In a case involving the withholding of exculpatory evidence, the existence of probable cause is determined by examining the evidence 'as if the omitted information had been included' and inquiring whether probable cause existed in light of all the evidence, including the omitted information.

*Id.* at 1293 (citations omitted).

The Delta Defendants (conclusorily) contend that "any evidence destroyed was not exculpatory and the legal process was supported by probable cause." *Joint Reply* [#327] at 4.  Additionally, the Prosecutor Defendants contend that "Plaintiff had available to him

other documents so he was able to obtain comparable evidence by other reasonably available means." *Prosecutors' Motion* [#273] at 9.

Applying the above-stated principles to this case and construing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to sufficiently allege facts to establish the probable cause element of a Fourteenth Amendment malicious prosecution claim against the Prosecutor Defendants. *See Benton*, 375 F.3d at 1074–75. Plaintiff's coercion claim alleges specific facts regarding only the Sheriff-Deputy Defendants, as outlined above. Regarding the Prosecutor Defendants, Plaintiff's factual allegations are "naked assertions devoid of further factual enhancement," and therefore insufficient to support his claim. *Iqbal*, 556 U.S. at 677. Indeed, Plaintiff provides no specific facts in support of this claim. He explains nothing about the plea agreement or "contracts" that allegedly supported a concurrent sentence, he does not identify whose affidavits were false, what allegedly false statements were made in the affidavits, or even generally state the topics on which the Prosecutor Defendants allegedly submitted false information. In the absence of doing so, the Court cannot find that the allegedly destroyed or falsified documents impacted the existence of probable cause. *Pierce*, 359 F.3d at 1293. Thus, Plaintiff has failed to allege sufficient facts to establish the lack-of-probable-cause element of a Fourteenth Amendment malicious prosecution claim against the Prosecutor Defendants.

### (4)    Malice

The fourth element of a Fourteenth Amendment malicious prosecution claim is that the defendant acted with malice. *Wilkins*, 528 F.3d at 799. Falsifying or omitting evidence "knowingly and intentionally, or with reckless disregard for the truth" is sufficient to establish

27

malice in the context of Fourteenth Amendment violations. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Plaintiff repeatedly asserts that the Delta Defendants "knowingly, intentionally, wilfully, and wantonly," coerced Plaintiff, falsified documents, submitted inculpatory evidence, and destroyed exculpatory evidence. *See Third Am. Compl.* [#254] at 16-17. However, as indicated above, Plaintiff fails to include any specific allegations related to Defendants' alleged falsification of documents, purportedly wrongful submission of inculpatory evidence or destruction of exculpatory evidence. As to coercion, Plaintiff alleges that in July 2006, the Sheriff-Deputy Defendants coerced Plaintiff "to concede to and sign a contract that permitted the illegal extension of [Plaintiff's] deferred sentence through the use of excessive force and threats of death." *Third Am. Compl.* [#254] at 16-17. More specifically, Plaintiff alleges that:

> In July of 2006 . . . Schroeder and Weldon . . . stripped and brutally beat [Plaintiff] . . . kicking him repeatedly . . . as they yelled profanities and slanderous statements, "You fuckin rapist," and threatened him, "If your [sic] smart you'll take what the District Attorney gives you. The life expectancy is short in these parts."

*Id.* at 8. Plaintiff alleges that "McKee and Railey were present and laughed at the abusive attacks of Weldon and Schroeder." *Id.* These allegations are sufficient to establish the malice element of a Fourteenth Amendment malicious prosecution claim against the Sheriff Deputy Defendants only.

### iv.    Damages

The fifth element of a Fourteenth Amendment malicious prosecution claim is that the plaintiff sustained damages. *Wilkins*, 528 F.3d at 799. The Delta County District Court started Plaintiff's deferred judgment nearly three years after it was permitted to do so, continued it for almost three years more than was permissible, heard a revocation petition

28

filed eight months after the filing limitation, and enforced an unjustified two-year extension

of the deferred judgment.  *Carbajal*, 198 P.3d 102; *Wallace v. Kato*, 549 U.S. 384, 390

(2007) (stating that "unlawful detention forms part of the damages for the 'entirely distinct'

tort of malicious prosecution"); *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (stating that

"a successful malicious prosecution plaintiff may recover, in addition to general damages,

'compensation for any arrest or imprisonment, including damages for discomfort or injury

to his health, or loss of time and deprivation of the society'" (citation omitted)).   Therefore,

Plaintiff has alleged sufficient facts to establish the damages element of a Fourteenth

Amendment malicious prosecution claim.

### v.     Qualified Immunity

Finally, the Court addresses the Sheriff-Deputy Defendants contention that they are

entitled to qualified immunity.   *Sheriff-Deputies' Motion* [#272] at 8-9; *Sheriff-Deputies'*

*Reply* [#328] at 6-7.[13]   The Court disagrees.

When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the

Court employs a two-step process.   One part of the inquiry relates to whether the facts

taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001).   "If no constitutional right would have been

violated were the allegations established, there is no necessity for further inquiries

concerning qualified immunity."   *Id.*   However, "if a violation could be made out on a

favorable view of the parties' submissions, the next, sequential step is to ask whether the

---

[13]   Because Plaintiff has failed to state a claim for a Fourteenth Amendment malicious prosecution claim against the Prosecutor Defendants, the Court need not address whether they are entitled to qualified immunity or not.

right was clearly established."[14]

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although the qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate). The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm." *Id.* at 807. Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the

---

[14] The Supreme Court has held that courts may consider either step of the process first. *Pearson v. Callahan*, 555 U.S. 223 (2009).

situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right.  *Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  In other words, there must be case authority in which a constitutional violation was found based upon similar conduct.  *See Callahan v. Millard Cnty.*, 494 F.3d 891, 903 (10th Cir. 2007).

The Sheriff-Deputy Defendants contend that they are entitled to qualified immunity because "Plaintiff does not cite a Supreme Court or Tenth Circuit decision on point that established the boundaries of when a deferred judgment begins and whether such boundaries can be modified by mutual agreement and consent;" they "are not prosecutors;" and they lacked "direct involvement" in the alleged malicious prosecution of Plaintiff. *Sheriff-Deputies' Motion* [#272] at 8-9; *Sheriff-Deputies' Reply* [#328] at 6-7.  However, Plaintiff alleges that the Sheriff-Deputy Defendants coerced him to consent to extending his deferred judgment.  *Third Am. Compl.* [#254] at 6, 16-17.

The law clearly prohibited the use of any false statements that the Sheriff-Deputy Defendants intentionally coerced from Plaintiff.  "[I]t was clearly established that false evidence cannot contribute to a finding of probable cause."  *Wilkins*, 528 F.3d at 805 (rejecting qualified immunity in a 42 U.S.C. §1983 malicious prosecution claim for allegedly fabricating evidence by coercing false statements).  Thus, if the Sheriff-Deputy Defendants acted as Plaintiff alleges, they had fair warning that their actions were unconstitutional. Therefore, the Sheriff-Deputy Defendants are not entitled to qualified immunity as to the Fourteenth Amendment malicious prosecution claim made against them.

Accordingly, because Plaintiff has alleged sufficient facts to establish the probable cause element of a Fourteenth Amendment malicious prosecution claim against only the Sheriff-Deputy Defendants, the Court **recommends** that Plaintiff's Fourteenth Amendment substantive due process claim against the Prosecutor Defendants for malicious prosecution pursuant to 42 U.S.C. § 1983 be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6) and that the Sheriff-Deputy Defendants' motion to dismiss be denied, pursuant to Fed. R. Civ. P. 12(b)(6).[15]

### c.     Fourteenth Amendment: Procedural Due Process

"Procedural due process ensures that individuals are entitled to certain procedural safeguards before a state can deprive them of life, liberty or property." *Becker*, 494 F.3d at 918 n.8 (citation omitted).    Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).   In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001).   First, a plaintiff must demonstrate that he possesses a protected liberty or property interest. *Id.*   Second, a plaintiff must show that the procedures utilized which impacted his protected interest were inadequate under the circumstances. *Id.* "Where procedural due process must be afforded because a 'liberty' or 'property' interest is within the Fourteenth Amendment's protection, there must be determined 'what process is due' in the particular circumstance." *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 847 (1977).   "The fundamental

---

[15] The remaining defendants on this claim therefore will include: Sheriff-Deputy Defendants, Defendant Barrett, Defendant Desel, Defendant Dixon, Defendant Gruninger, Defendant Lucio, Defendant Quintana, Defendant Rembert, Defendant Romero, Defendant Smith, Defendant Speelman, Defendant Warner, and Defendant City of Denver.

requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Plaintiff "must make some allegation showing [Defendants] have in fact denied him an adequate state remedy.  In order to state a claim under § 1983, a complaint must allege facts sufficient to show deprivation, in this case the lack of an adequate state remedy." *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989) (emphasis in original).  Plaintiff heavily utilized the appropriate remedy for state court errors by challenging the status of his deferred judgment in the state court appeals process.  "From July 2006 to April 2007 [Plaintiff] filed numerous motions and petitions challenging his deferred judgment, including a motion to vacate an illegal sentence and motions for post-conviction relief under Crim. P. 35(a) and (c)." *Carbajal*, 198 P.3d at 104-05.  There is no indication in the record that he was deprived from pursuing this "adequate state remedy;" in fact, his deferred judgment was overturned by the Colorado Supreme Court in *Carbajal*, discussed *supra*.  Plaintiff simply fails to allege that the Delta Defendants denied Plaintiff an adequate state remedy. Thus, Plaintiff fails to allege facts sufficient to state a colorable claim for a Fourteenth Amendment procedural due process violation because Plaintiff's procedural due process interests were adequately protected by the state judicial system.

Accordingly, the Court **recommends** that Plaintiff's Fourteenth Amendment procedural due process claim against Delta Defendants be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).   Additionally, the Court **recommends** that Plaintiff's Fourteenth

Amendment procedural due process claim against non-moving defendants[16] be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).[17]

### 2.    Count 1: Conspiracy to Maliciously Prosecute Mr. Carbajal from 2005-2010

Plaintiff alleges that Defendants Serra, Price, Railey, McKee, Weldon, and Schroeder were "working together, strategizing, and in a single minded effort agreeing to violate Mr. Carbajal's 4th and 14th Amendment rights . . . resulting in the unconstitutional arrest, prosecution, and conviction of Mr. Carbajal." *Third Am. Compl.* [#254] at 16. Additionally, Plaintiff alleges that these Defendants acted "in furtherance of the continuing conspiracy to maliciously prosecute Mr. Carbajal" by:

> (1) fabricating inculpatory evidence by staging a crime scene and/or falsifying evidence; (2) destroying exculpatory evidence; (3) making misrepresentations to judicial officers in an affidavit for the arrest warrant for Mr. Carbajal; and (4) initiating and aggressively advocating for the prosecution of Mr. Carbajal.

*Id.* Finally, Plaintiff alleges that Defendants Serra, Price, and Kramer engaged in a "mutual decision and efforts in the destruction of exculpatory [evidence], specifically the original plea agreement and contracts that support a concurrent sentence . . ." *Id.*

### a.    42 U.S.C. § 1983

The Delta Defendants contend that Plaintiff fails to allege sufficient facts to state a

---

[16]   The remaining and non-moving defendants on this claim include: Defendant Barrett, Defendant Desel, Defendant Dixon, Defendant Gruninger, Defendant Lucio, Defendant Quintana, Defendant Rembert, Defendant Romero, Defendant Smith, Defendant Speelman, Defendant Warner, and Defendant City of Denver.

[17]   "[A] court may dismiss sua sponte when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

claim for conspiracy pursuant to 42 U.S.C. § 1983.  *Joint Motion* [#271] at 8-9.  Additionally, the Delta Defendants contend that Plaintiff's conspiracy claims are "so vague, devoid of factual enhancement and conclusory that they are not entitled to the assumption of truth and are insufficient to state a valid § 1983 claim."  *Joint Reply* [#327] at 4.  The Court agrees.

The Tenth Circuit has stated that "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under the color of state law" is actionable.  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).  However, to allege a viable conspiracy claim pursuant to 42 U.S.C. § 1983, a plaintiff must adequately plead facts showing that: (1) a conspiracy existed, and (2) an actual deprivation of rights occurred.  *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995).  Plaintiff must allege specific facts that show agreement and concerted action among the Defendants.  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (citing *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)).  "Conclusory allegations of conspiracy are insufficient."  *Id.*  Further, "[w]hile a deprivation of a constitutional right is essential to proceed under a § 1983 claim, proof of an agreement to deprive will often require examination of conduct occurring prior to the deprivation."  *Snell*, 920 F.2d at 701-02.  To establish the existence of a conspiracy, a plaintiff seeking redress must show that there was a "single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."  *Id.* (internal citations omitted).

The Court has reviewed Plaintiff's Third Amended Complaint, and finds that, even construing Plaintiff's allegations liberally and in a light most favorable to him, Plaintiff has presented nothing more than conclusory allegations to show agreement and concerted

action among the Prosecutor Defendants.  The Court does not find it reasonable to infer

that, because the Prosecutor Defendants worked together, they were conspiring with one

another and with other Delta Defendants to arrest, prosecute, convict, or incarcerate

Plaintiff.  Plaintiff has provided nothing more than his conclusory allegations in support of

this theory.  *Third Am. Compl.* [#254] at 16.  The Court finds that Plaintiff has not sufficiently

alleged facts supporting the elements necessary to establish an entitlement to relief, and

that his claim regarding the Prosecutor Defendants must be dismissed.  *Lane v. Simon*, 495

F.3d 1182 (10th Cir. 2007).

However, the Court finds that Plaintiff has alleged sufficient facts to show agreement

and concerted action among the Sheriff-Deputy Defendants.  The Court finds it reasonable

to infer from Plaintiff's allegations that, because Defendants Schroeder and Weldon

allegedly "stripped and brutally beat" Plaintiff while in the presence of their supervisors,

Defendants Railey and McKee, the Sheriff-Deputy Defendants were acting together to

coerce Plaintiff into "conced[ing] to and sign[ing] the contract illegally extending his deferred

sentence . . ."  *Third Am. Compl.* [#254] at 8, 17.  Additionally, Plaintiff has sufficiently

alleged that the Sheriff-Deputy Defendants deprived him of his Fourteenth Amendment

substantive due process rights.  *Supra* § III.B.1.b.  Therefore, the Court finds that Plaintiff

has sufficiently alleged facts supporting the elements necessary to establish an entitlement

to relief, and that Plaintiff's claim against the Sheriff-Deputy Defendants should not be

dismissed.

Accordingly, the Court **recommends** that Plaintiff's claim against the Prosecutor

Defendants for conspiracy pursuant to 42 U.S.C. § 1983 be dismissed, pursuant to Fed.

R. Civ. P. 12(b)(6) and that the Sheriff-Deputy Defendants' motion to dismiss be denied

regarding Plaintiff's claim for conspiracy pursuant to 42 U.S.C. § 1983.[18]

   **b.     42 U.S.C. § 1985**

The Delta Defendants contend that Plaintiff fails to allege the requisite racial or class-based animus and private right to sufficiently state a claim for conspiracy pursuant to 42 U.S.C. § 1985(3). *Joint Motion* [#271] at 7; *Joint Reply* [#327] at 3-4. The Court agrees.

The elements of a 42 U.S.C. § 1985(3) conspiracy claim are: (1) a civil conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). To meet the first element of a § 1985(3) claim and state a claim for civil conspiracy, Plaintiff "must allege specific facts showing agreement and concerted action among the defendants." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988) (emphasis added). It is not enough for Plaintiff to merely state that Defendants engaged in a conspiracy. *See id.* ("Conclusory allegations of conspiracy are insufficient . . . ."); *Sieverding v. Colo. Bar Ass'n*, No. Civ. A.02-M-1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003) (holding that the plaintiffs' "conclusory statements with regard to the existence of conspiracies surrounding every event that they allege" fails "to allege specific facts that fulfill the requirements of the elements of a state law claim for civil conspiracy" and are "insufficient to state a claim"). In addition, 42 U.S.C.

---

[18] The Court does not address any conspiracy claim against the Defendants who have not moved for its dismissal. They are: Sheriff-Deputy Defendants, Defendant Barrett, Defendant Desel, Defendant Dixon, Defendant Gruninger, Defendant Lucio, Defendant Quintana, Defendant Rembert, Defendant Romero, Defendant Smith, Defendant Speelman, Defendant Warner, and Defendant City of Denver.

§ 1985(3) only applies to "conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton*, 6 F.3d at 686 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)).  "The other 'class-based animus' language of this requirement has been narrowly construed . . ." *Id.* (citing *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1983).  Finally, 42 U.S.C. § 1985(3) only applies to "conspiracies 'aimed at interfering with rights that are protected against private, as well as official encroachment.'" *Id.* (quoting *Scott*, 463 U.S. at 833).

The Court has construed Plaintiff's allegations liberally and in a light most favorable to him.  However, Plaintiff's Third Amended Complaint is completely devoid of any allegations that the alleged conspiracy was motivated by racial or other class-based "invidiously discriminatory animus."  *Id.*  The Court therefore finds that Plaintiff has not sufficiently alleged facts supporting the elements necessary to establish an entitlement to relief, and that this claim must be dismissed.  *Lane*, 495 F.3d at 1187.

Accordingly, the Court **recommends** that Plaintiff's claim against Delta Defendants for conspiracy pursuant to 42 U.S.C. § 1985 be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  Additionally, the Court **recommends** that Plaintiff's claim against all remaining and non-moving defendants[19] for conspiracy pursuant to 42 U.S.C. § 1985 be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).[20]

---

[19]  The remaining and non-moving defendants on this claim include: Defendant Barrett, Defendant Desel, Defendant Dixon, Defendant Gruninger, Defendant Lucio, Defendant Quintana, Defendant Rembert, Defendant Romero, Defendant Smith, Defendant Speelman, Defendant Warner, and Defendant City of Denver.

[20]  *See supra* note 15.

### c.    42 U.S.C. § 1986

The Delta Defendants contend that Plaintiff fails to allege sufficient facts to state a claim for a violation of 42 U.S.C. § 1986 because he fails to allege sufficient facts to state a claim for the requisite conspiracy pursuant to 42 U.S.C. § 1985.  *Joint Motion* [#271] at 8.  The Court agrees.

42 U.S.C. § 1986 "provides an action for neglecting to prevent a violation of § 1985, [and] is premised upon the existence of a valid § 1985 claim."  *Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1230 (10th Cir. 1990).  Because the Court recommends dismissal of Plaintiff's claim pursuant to 42 U.S.C. § 1985, the Court also recommends dismissal of any dependent claim brought pursuant to 42 U.S.C. § 1986.

Accordingly, the Court **recommends** that Plaintiff's claim against Delta Defendants for conspiracy pursuant to 42 U.S.C. § 1986 be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  Additionally, the Court **recommends** that Plaintiff's claim against all remaining and non-moving defendants[21] for conspiracy pursuant to 42 U.S.C. § 1986 be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).[22]

### C.    Claim 4, Count 1: Monell Claim

Plaintiff's fourth claim is a *Monell* claim for municipal liability pursuant to 42 U.S.C. § 1983.  *Third Am. Compl.* [#254] at 22-23.  Plaintiff brings two claims, which he labels "Count 1" and "Count 2."  *Id.*  Plaintiff alleges that "Count 1" applies to Defendants Railey,

---

[21]  The remaining and non-moving defendants on this claim include: Defendant Barrett, Defendant Desel, Defendant Dixon, Defendant Gruninger, Defendant Lucio, Defendant Quintana, Defendant Rembert, Defendant Romero, Defendant Smith, Defendant Speelman, Defendant Warner, and Defendant City of Denver.

[22]  *See supra* note 15.

McKee, Serra, Price, Kramer, Weldon, and Schroeder "in their official capacities,"[23] in

addition to Defendant BOCC. *Id.* at 22.  Plaintiff alleges that Defendant BOCC is liable for

the acts and omissions of Defendants Serra, McKee, and Railey from 2005-2008.  *Id.*

Plaintiff alleges that Defendant BOCC is liable for Defendants Serra, McKee, and

Railey's conduct in:

> allowing the: (1) wrongful revocation of Mr. Carbajal's deferred sentence
> without jurisdiction; (2) destruction of exculpatory evidence and
> manufacturing of inculpatory evidence to establish a fraudulent sentence; (3)
> coercion of Mr. Carbajal to accept and sign a contract allowing the illegal
> extension of his deferred [sentence]; (4) drafting and presentation of false,
> distorted, and perjurous [sic] affidavits designed to deceive and mislead
> judicial officials into issuing arrest warrants without probable cause; and (5)
> on [sic] obvious conspiracy to wrongfully arrest, prosecute, and convict Mr.
> Carbajal without probable cause.

*Id.*  Similarly, Plaintiff alleges that Defendants Serra, Railey, and McKee had:

> a policy, custom, and practice of: (1) revoking Mr. Carbajal's deferred
> sentence outside the applicable four year period; (2) intentionally ignoring
> statutory law and precedent authority in handling deferred sentences; (3)
> harassing and assaulting Mr. Carbajal to coerce him into accepting the illegal
> extension of his deferred sentences; (4) destroying and/or fabricating
> evidence to establish a fraudulent deferred sentence; and (5) ignoring official
> misconduct and refusing to report and discipline the intentional violation of
> Mr. Carbajal's constitutional rights.

*Id.*  Plaintiff further alleges that Defendants Serra, Railey, and McKee "recklessly and

knowingly failed to adequately train and supervise [Defendants Weldon and Schroeder],"

to:

> (1) prevent the wrongful and intentional revocation of Mr. Carbajal's deferred
> [sentence] without jurisdiction; (2) prevent the intentional drafting and
> presentation of false, distorted, and perjured statements to judicial officers;
> (3) prevent the destruction of exculpatory evidence; (4) prevent the

---

[23] Despite Plaintiff's contention, the Court previously dismissed all claims asserted against
individual defendants in their official capacities.  *Order* [#229] at 9.

falsification [sic] of the record to establish a fraudulent and deferred sentence; (5) prevent the unnecessary and excessive use of force and harassment to coerce Mr. Carbajal into accepting an illegal deferred sentence; [and] (6) prevent the intentional ignoring and circumvention of legislative law and precedent authority.

*Id.* Finally, Plaintiff alleges that Defendants Serra, Railey, and McKee had "long-standing, departmental wide customs, policies, and actual practices that allowed" Plaintiff to suffer his alleged harm. *Id.* at 23. Therefore, Plaintiff alleges that they "actively participated and approved these unconstitutional policies, customs, and/or practices." *Id.*

## 1.    Individual Defendants

The Delta Defendants contend that Plaintiff's *Monell* claim against Defendants Serra, Price, Kramer, McKee, Railey, Weldon, Wolfe, and Schroeder should be dismissed because it does not apply to individuals. *Joint Motion* [#271] at 6; *Joint Reply* [#327] at 3-4. The Court agrees.

Municipalities and other local government entities, like counties, may be held liable in a 42 U.S.C. § 1983 action for their own unconstitutional or illegal policies. *Monell*, 436 U.S. at 690-91. However, as currently pled, Plaintiff's Third Amended Complaint does not state a claim for municipal liability against Defendants Serra, Price, Kramer, McKee, Railey, Weldon, Wolfe, or Schroeder. That is, Plaintiff has only sued these Defendants in their individual capacities. *See Third Am. Compl.* [#254] at 1. Because these Defendants are individuals and are not municipal bodies or local governmental entities, Plaintiff's municipal liability claim against all individual Defendants is futile. Here, no amendment of facts would permit Plaintiff to bring his *Monell* claim against any individual Defendants due to the limitations of a *Monell* claim. *See Monell*, 436 U.S. 658. Thus, no amendment to the Third Amended Complaint could alter the Court's conclusions stated herein.

Accordingly, the Court **recommends** that Plaintiff's *Monell* claim for municipal liability against Defendants Serra, Price, Kramer, McKee, Railey, Weldon, Wolfe, and Schroeder be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  Additionally, the Court **recommends** that Plaintiff's *Monell* claim for municipal liability against all remaining and non-moving individual defendants[24] be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).[25]

### 2.    Defendant BOCC

Defendant BOCC contends that Plaintiff fails to allege sufficient facts to state a claim for municipal liability because Defendant BOCC is not liable for the actions of the Sheriff's Department, Probation Department, District Attorney's Office, or Detention Center. *BOCC's Motion* [#274] at 2-7; *BOCC's Reply* [#330] at 2-6.  The Court agrees.

Although a county may be held liable for its own unconstitutional or illegal policies, it "cannot be held liable *solely* because it employs a tortfeasor – or, in other words a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (emphasis in original).  In order to be held liable for the allegedly tortious acts of its agents, Plaintiff must show that Defendant BOCC directly caused the constitutional violation by instituting an "official municipal policy of some nature," that was the "direct cause" or "moving force" behind the constitutional violations.  *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 944 (10th Cir. 2005) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985)).

---

[24]  The remaining and non-moving individual defendants on this claim include: Defendant Barrett, Defendant Desel, Defendant Dixon, Defendant Gruninger, Defendant Lopez, Defendant Lucio, Defendant O'Neill, Defendant Quintana, Defendant Rembert, Defendant Romero, Defendant Smith, Defendant Speelman, Defendant Warner, and Defendant Watts.

[25]  *See supra* note 15.

"That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 404 (1997).

Additionally, Plaintiff's *Monell* claim requires a showing or allegation that Defendant BOCC has some supervisory authority over the Sheriff-Deputy Defendants and the Prosecutor Defendants.  *See Myers*, 2011 WL 650328, at *11.  Pursuant to C.R.S. § 30–11–107, Defendant BOCC has the duty and authority to provide funds for operations by the Sheriff's Office and District Attorney's Office.  However, pursuant to the Colorado constitution, Defendant BOCC is a separate, distinct entity from the County Sheriff.  *See* Colo. Const. art. XIV, §§ 6, 8; *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002).  "[O]nly a[S]heriff has the right to supervise and control the [S]heriff's deputies" under Colorado law.  *Koopman*, 2011 WL 650328, at *11 (citing *Tungent v. Bd. of Cnty. Comm'rs of Delta Cnty.*, 992 P.2d 650, 652 (Colo. App. 1999); *Bristol*, 312 F.3d at 1219).  Therefore, "the BOCC does not have the legal authority to control or supervise the [S]heriff and the [S]heriff's deputies."  *Id.*

Similarly, pursuant to the Colorado constitution, Defendant BOCC is a separate, distinct entity from the District Attorney.  *See* Colo. Const. art. VI, § 13; Colo. Const. art. XIV, §§ 6, 8; *Myers v. District Court*, 518 P.2d 836 (1974).  "[T]he district attorney has been vested with 'constitutional power' to exercise discretion in determining which charges, if any, to pursue in any prosecution."  *People v. Herron*, 874 P.2d 435 (Colo. App. 1993) (citing *Myers*, 518 P.2d 836).  Therefore, Defendant BOCC does not have supervisory authority over the Prosecutor Defendants.

Accordingly, the Court **recommends** that Plaintiff's *Monell* claim for municipal liability against Defendant BOCC be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).[26]

## D.    Injunctive Relief

Plaintiff requests "[a]ppropriate equitable relief including but not limited to prospective injunctive relief including expungement of [his] criminal record, and appropriate equitable restitution." *Third Am. Compl.* [#254] at 25.  The Delta Defendants contend that Plaintiff is not entitled to injunctive relief because "there is no longer a live and ongoing controversy" in connection with the Delta Defendants.  *Joint Motion* [#271] at 12; *Joint Reply* [#327] at 7.  The Court agrees.

Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates it is necessary.  *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

Injunctive relief can only be obtained for current or prospective injury and cannot be conditioned on a past injury that has already been remedied.  *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n.6 (10th Cir. 2005) (quoting *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunctive relief only . . . it is insufficient for them to demonstrate only a past injury")).  An injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("The purpose of [injunctive relief] is not to remedy past harm but to protect plaintiff[ ] from irreparable

---

[26]  The remaining defendant on this claim therefore will include: Defendant City of Denver.

injury that will surely result . . .").

Here, Plaintiff alleges that injunctive and declaratory relief are proper remedies because his rights and life are in ongoing danger. *Response* [#303] at 10. However, Plaintiff's claims against Delta Defendants relate solely to the extension of his deferred judgment. On July 14, 2006, Plaintiff's deferred judgment was set to run until July 14, 2010. *Carbajal*, 198 P.3d at 104. On December 15, 2008, the Colorado Supreme Court directed the Delta County District Court to dismiss Plaintiff's deferred judgment. *Id.* at 106-07. Therefore, Plaintiff's alleged injury, the extension of the deferred judgment, is not current or ongoing. Instead, the court dismissed Plaintiff's deferred judgment, thereby ending any possibility of continuing injury to Plaintiff from it. Additionally, any injury Plaintiff allegedly suffered prior to the extension of his deferred judgment is also not current or ongoing.

Accordingly, Plaintiff is not entitled to injunctive relief, and the Court **recommends** that Plaintiff's request for injunctive relief be dismissed.

**E.    Attorney's Fees**

Plaintiff requests "[a]ttorney's fees as well as litigation costs." *Third Am. Compl.* [#254] at 10. Pursuant to 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 1988(b). However, the Tenth Circuit has found that *pro se* litigants may not recover an award of attorney's fees pursuant to this statute. *Turman v. Tuttle*, 711 F.2d 148, 149 (10th Cir. 1983). "This finding seems to comport with the policy underlying §

1983, which appears to have been implemented not to compensate pro se litigants but to enable litigants with valid claims to present their claims without having to bear the burden of the costs." *Id.*

Accordingly, Plaintiff is not entitled to attorney's fees pursuant to 42 U.S.C. § 1988, and the Court **recommends** that Plaintiff's request for attorney's fees be dismissed.

## F.    Leave to Amend

The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support [his] claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. 1992) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))).

Even as courts are careful to protect the rights of *pro se* plaintiffs, they often find that granting the opportunity to amend would be futile.  *See, e.g., Arocho*, 367 F. App'x at 955 (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues" (emphasis added)); *but see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

However, in this matter, Plaintiff has now had three opportunities to present facts in his various complaints in support of his causes of action arising from the events at issue. Plaintiff has had reasonable and adequate opportunities in which to do so, including detailed instruction from both the District Judge and the undersigned stating the deficiencies of his earlier complaints.  Because Plaintiff has failed to assert additional facts in support of the claims regarding which the Court recommends dismissal, and because he has had multiple opportunities to amend, the Court finds that granting leave to amend again would be futile.

Accordingly, the Court **recommends** that the dismissed causes of action and Defendants, as outlined below, be **dismissed with prejudice**.  *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (stating that dismissal with prejudice is

appropriate where the plaintiff's amended pleadings fail to cure the deficiencies in his claims); *Meadow at Buena Vista, Inc. v. Ark. Valley Pub. Co.*, No. 10-cv-02871-MSK-KMT, 2012 WL 502688, at *9 (D. Colo. Feb. 15, 2012) (dismissing causes of action with prejudice where Third Amended Complaint failed to assert additional facts sufficient to support the plaintiff's claims); *Stouffer v. Eulberg*, No. CIV-09-320-C, 2009 WL 4724272, at *1 (W.D. Okla. Dec. 7, 2009) (dismissing cause of action with prejudice where the plaintiff was given the opportunity to amend to correct errors but failed to do so in his amended pleading); *Bridges v. Two Unnamed FBI Agents*, No. CIV-08-0759-HE, 2009 WL 1227489, at *2 (dismissing causes of action with prejudice where the plaintiff was afforded multiple opportunities to address pleading deficiencies but failed to adequately do so).

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** as follows:

(1)    Defendant Unknown Representative (Patricia Kramer Estate) be **DISMISSED** as a Defendant;

(2)    Defendant Serra be **DISMISSED** as a Defendant;

(3)    Defendant Price be **DISMISSED** as a Defendant;

(4)    Defendant BOCC be **DISMISSED** as a Defendant;

(5)    Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1983 against the Prosecutor Defendants be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(6)    The Sheriff-Deputy Defendants' Motion to Dismiss [#272] regarding Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1983 be **DENIED** pursuant to Fed. R. Civ. P. 12(b)(6);

(7)    Plaintiff's conspiracy claim against all Defendants pursuant to 42 U.S.C. § 1985 be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(8)     Plaintiff's conspiracy-related claim against all Defendants pursuant to 42 U.S.C. § 1986 be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(9)     Plaintiff's Fourth Amendment malicious prosecution claim against the Delta Defendants be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(10)    Plaintiff's Fourteenth Amendment substantive due process claim against the Prosecutor Defendants be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(11)    The Sheriff-Deputy Defendants' Motion to Dismiss [#272] regarding Plaintiff's Fourteenth Amendment substantive due process claim be **DENIED** pursuant to Fed. R. Civ. P. 12(b)(6);

(12)    Plaintiff's Fourteenth Amendment procedural due process claim against all Defendants be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(13)    Plaintiff's *Monell* claim against the Delta Defendants and all individual Defendants be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6);

(14)    Plaintiff's request for injunctive relief from the Delta Defendants be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6); and

(15)    Plaintiff's request for attorney's fees be **DISMISSED with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91

F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated August 29, 2012, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge