IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02862-REB-KLM

DEAN CARBAJAL,

Plaintiff,

v.

CAROL WARNER, in her individual capacity,
DAVID ROMERO, in his individual capacity,
JOE QUINTANA, in his individual capacity,
BILL RAILEY, in his individual capacity,
CHRIS WELDON, in his individual capacity,
BENJAMIN SCHROEDER, in his individual capacity,
GILBERTO LUCIO, in his individual capacity,
JAMES DIXON, in his individual capacity,
ADAM BARRETT, in his individual capacity,
JOEL SMITH, in his individual capacity,
JESSE REMBERT, in his individual capacity,
JAY LOPEZ, in his individual capacity,
MICHAEL O'NEILL, in his individual capacity,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado,
DARIN DESEL, Police Officer for the Denver Police Department, in his individual capacity,
FRED MCKEE, Sheriff for the Delta Sheriff's Department, in his individual capacity,
PERRY SPEELMAN, Police Officer for the Denver Police Department, in his individual capacity,
JEFFREY WATTS, Investigator for the Second Judicial District, in his individual capacity, and
ED GRUNINGER, Investigator for the Second Judicial District and Police Officer for the Denver Police Department, in his individual capacity,

Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Sanctions Pursuant to**

-1-

**Fed. R. Civ. P. Rule 11** [Docket No. 266; Filed January 31, 2012] (the "Motion").

## I. Background

Plaintiff proceeds in this matter *pro se.* In the Motion, Plaintiff originally requested that the Court award sanctions pursuant to Fed. R. Civ. P. 11 against the Denver Defendants, the State Defendants, and the Delta Defendants for contending that they were not properly served with the summons and complaint in this action, despite Plaintiff's alleged multiple attempts to serve them. On March 7, 2012, the Court issued an Order [#277] denying sanctions with respect to all Defendants except for Myrl Serra ("Serra").[1] The Court deferred adjudication of the merits of Plaintiff's Motion against Mr. Serra until an evidentiary hearing could be held on the matter. The evidentiary hearing was subsequently held in two parts, on June 26, 2012 [#385] ("Hearing I") and on September 10, 2012 [#386] ("Hearing II").

In the Motion, Plaintiff asserted that Mr. Serra perjured himself with respect to the circumstances surrounding Plaintiff's attempted service on him on March 10, 2011. On July 22, 2011, Mr. Serra filed an affidavit claiming that his young son was served with the summons and complaint. *Aff. of Serra* [#190-1] at 3. Specifically, he stated:

> I was not at 700 N. Cascade Avenue in Montrose, Colorado on March 10, 2011. On or about March 10, 2011, an individual came to the front door at 821 N. Park, Montrose, Colorado. My 9-year-old son, Mario, answered the door. This individual handed court documents to my 9-year-old son.

*Id.* In opposition to Mr. Serra's statement, Plaintiff provided a sworn statement from his mother, Victoria Carbajal ("Mrs. Carbajal"), that she drove the process server, Jess

---

[1] On September 24, 2012, the District Judge issued an Order dismissing all claims against Mr. Serra in this case. *See Order* [#390] at 10.

Jimenez ("Jimenez"), to Mr. Serra's residence on that day. *Motion* [#266] at 7 (Ex. A, Aff. of Victoria Carbajal). Specifically, she states:

> On March 10, 2011 6:30 P.M. I Victoria Carbajal drove Jess Jimenez to Mr. Myrl Serra['s] residence at 821 North Park [A]venue in Montrose, Co. to serve a summons and complaint on Mr. Myrl Serra. I was parked on the side of the street[;] I was able to observe[ ] Jess Jimenez handing a summons and Complaint to an older male subject who answered the door.

*Id.* Comparing the sworn statements of Mr. Serra and Mrs. Carbajal, the Court found that there was a genuine issue of material fact with respect to whether Mr. Serra violated Fed. R. Civ. P. 11(b)(1)[2] by committing perjury through the presentation of sworn testimony in his affidavit for an "improper purpose," *i.e.*, avoiding service by Plaintiff of the Complaint in this lawsuit. *Order* [#277].

## II. Evidentiary Hearings

At the evidentiary hearings, the Court heard testimony from Mr. Jimenez, Mr. Serra, and Gwen Serra ("Mrs. Serra"), Mr. Serra's mother. Mr. Jimenez testified that Mrs. Carbajal drove him to Mr. Serra's residence on March 10, 2012. *Hearing I* [#385] at 8-10. At around 6:30 p.m., he went to the door of 821 North Park Avenue in Montrose, Colorado, to serve Plaintiff's Complaint on Mr. Serra. *Id.* at 10. Mr. Jimenez testified that he rang the doorbell, that Mr. Serra came to the door, and that he handed Mr. Serra a manila envelope.[3] *Id.* at 11-12. Mr. Jimenez then thanked Mr. Serra and left the premises. *Id.* at

---

[2] Pursuant to Fed. R. Civ. P. 11(b)(1), any paper presented to the Court must not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." In addition, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

[3] Mr. Jimenez later testified that he did not know what specific summons and complaint he served on Mr. Serra. *Hearing I* [#385] at 19.

13.  Mr. Jimenez also testified that the address filled in on the original Proof of Service on Mr. Serra was incorrect,[4] but that he later submitted a corrected Proof of Service with the 821 North Park Avenue address.  *Id.* at 16-17, 22-23; *Ex. C*, *Proof of Service* (signed by Mr. Jimenez on March 10, 2011).

Mr. Serra testified that he owns 700 North Cascade Avenue but lives with his mother, who owns the house at 821 North Park Avenue.  *Hearing I* [#385] at 48.  He stated that on March 10, 2011, the doorbell rang and his nine-year-old son ran to the door.  *Id.* at 49, 52.  He testified that his son opened the door and that Mr. Jimenez handed an envelope to his son and, as Mr. Serra came up behind his son, Mr. Jimenez said, "Myrl, you're served."  *Id.* at 49-51, 74.  Mr. Serra responded, "No, not really," took the envelope from his son, and closed the door.  *Id.* at 49-51, 60.

Mrs. Serra testified that at the time of these events, she was sitting in her living room in the pink or maroon chair with the blue throw on it (the "maroon chair"), from where she could view the front door.  *Hearing II* [#386] at 10, 19-20; *Ex. H-2* (photograph of Mrs. Serra's living room).  She stated that when the doorbell rang, her grandson ran to the door, opened it, and held it open with his foot.  *Hearing II* [#386] at 12.  She saw an unidentified man hand her grandson some sort of paper, which her grandson took.  *Id.* at 12-13.  She said that Mr. Serra arrived at the door a moment later, took the paper from his son, and shut the door.  *Id.* at 13.  She did not hear the man at the door say anything and could not identify what the packet was that was handed to her grandson.  *Id.* at 13, 16.

---

[4]  Mr. Jimenez testified that he and Mrs. Carbajal had gone to "a few" addresses on March 10, 2011 in the attempt to serve Mr. Serra, including to 700 North Cascade Avenue in Montrose, Colorado, although no one appeared to be living at that address.  *Hearing I* [#385] at 44.

### III.  Credibility

To begin, the Court notes that the pertinent issue is whether Mr. Serra allegedly misrepresented the circumstances surrounding the attempted service on him of the summons and complaint on March 10, 2012 by filing a false affidavit.  *See Reply* [#292] at 2.  The issue is not whether Mr. Serra was actually properly served with the summons and Complaint that day.

Plaintiff attempted to discredit Mr. Serra by implying that he is a liar who was merely trying to support his allegedly perjurious affidavit submitted to the Court on July 22, 2011.  *See Hearing I* [#385] at 54-59; *see Aff. of Serra* [#190-1] at 3.  Plaintiff's implications of falsified testimony were not supported by the weight of the evidence in the record.  The Court finds that Mr. Serra's testimony was credible and that his son opened the door and was handed the papers by Mr. Jimenez.

Plaintiff attempted to discredit Mrs. Serra by implying that she lied while giving testimony in order to shield her son from potential liability due to his allegedly perjurious testimony and affidavit.  *See Hearing II* [#386] at 34.  Plaintiff also attempted to discredit Mrs. Serra by suggesting her senses may have been impaired on March 10, 2011 by medications she was then taking.  *Id.* at 13-15.  Plaintiff's implications of falsehood and sensory impairment were not supported by the weight of the evidence in the record.  The Court finds that Mrs. Serra's testimony was credible and that her grandson opened the door and was handed the papers by Mr. Jimenez.

Mr. Jimenez testified in a manner directly contrary to the testimony provided by Mr. Serra and Mrs. Serra.  Counsel for Mr. Serra submitted evidence that Mr. Jimenez perjured himself on March 10, 2011 by signing a Proof of Service and declaring under penalty of

perjury that he served Mr. Serra at the 700 North Cascade Avenue address on March 10, 2011. *Ex. C, Proof of Service.* All testimony at the hearings, including that of Mr. Jimenez, was to the contrary, in that Mr. Serra was present at the 821 North Park Avenue address on March 10, 2011. *Hearing I* [#385] at 10 (Mr. Jimenez), 48 (Mr. Serra); *Hearing II* [#386] at 15 (Mrs. Serra). Mr. Jimenez further stated that he was a friend of the Carbajal family and that he was not paid for his services on March 10, 2011. *Hearing I* [#385] at 19-20. Mr. Jimenez's execution of the Proof of Service along with his personal connection to Plaintiff weighs against the testimony he provided at the hearing. The Court therefore affords less weight to Mr. Jimenez's testimony that Mr. Serra's son did not answer the door and that Mr. Jimenez did not hand the envelope with the summons and complaint to Mr. Serra's son.

## IV. Findings of Fact and Conclusions of Law

Having heard the testimony at the two Evidentiary Hearings, having examined the submitted exhibits, and having weighed the credibility of the witnesses, the Court therefore finds that:

1.  On March 10, 2011 at approximately 6:30 p.m., Mr. Jimenez approached the front door of 821 North Park Avenue;

2.  At that time, Mrs. Serra was sitting in her living room in the maroon chair with a view of the front door;

3.  When Mr. Jimenez rang the doorbell, Mr. Serra's nine-year-old son ran to the front door and partially opened it;

4.  Mr. Jimenez handed the envelope with the summons and complaint to Mr. Serra's minor son; and

5.      Mr. Serra immediately came up behind his son, took the envelope from him, and closed the door.

The Court further finds that these findings of fact align with the facts presented in Mr. Serra's affidavit submitted to the Court on July 22, 2011, which stated, in full:

> I was not at 700 N. Cascade Avenue in Montrose, Colorado on March 10, 2011. On or about March 10, 2011, an individual came to the front door at 821 N. Park, Montrose, Colorado. My 9-year-old son, Mario, answered the door. This individual handed court documents to my 9-year-old son.

*Aff. of Serra* [#190-1] at 3.   The Court therefore finds that Mr. Serra did not violate Fed. R. Civ. P. 11(b)(1) by committing perjury through the presentation of sworn testimony in his affidavit for an "improper purpose."[5]

### V.  Conclusion

Accordingly, based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion for Sanctions [#266] is **DENIED** with respect to Mr. Serra.

Dated:  September 27, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[5]  In addition, the Court notes that, in Plaintiff's Motion, he sought an award of "just costs and any actual expenses, including litigation costs and service costs, incurred as a result of the refusal to accept and waive service and submittal of frivolous and false informations [sic]." *Motion* [#266] at 5.  The remedies for violation of Rule 11 can include "nonmonetary directives, an order to pay a penalty into court, or . . . an order directing payment to the movant of all or part of the reasonable attorneys' fees and other expenses directly resulting from the violation." Plaintiff has presented no information on any costs he incurred in connection with his efforts to serve Mr. Serra. Plaintiff, who proceeds in this matter *pro se*, has not incurred attorneys' fees. Further, Plaintiff did not incur a fee for the process server, as Mr. Jimenez testified that he was not paid a fee for serving the paperwork. *Hearing I* [#385] at 19-20.  Plaintiff simply failed to present evidence of any damages at the two hearings.