IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02862-REB-KLM

DEAN CARBAJAL,

      Plaintiff,

v.

CAROL WARNER, in her individual capacity,
DAVID ROMERO, in his individual capacity,
JOE QUINTANA, in his individual capacity,
BILL RAILEY, in his individual capacity,
CHRIS WELDON, in his individual capacity,
BENJAMIN SCHROEDER, in his individual capacity,
GILBERTO LUCIO, in his individual capacity,
JAMES DIXON, in his individual capacity,
ADAM BARRETT, in his individual capacity,
JOEL SMITH, in his individual capacity,
JESSE REMBERT, in his individual capacity,
JAY LOPEZ, in his individual capacity,
MICHAEL O'NEILL, in his individual capacity,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado,
DARIN DESEL, Police Officer for the Denver Police Department, in his individual capacity,
FRED MCKEE, Sheriff for the Delta Sheriff's Department, in his individual capacity,
PERRY SPEELMAN, Police Officer for the Denver Police Department, in his individual capacity,
JEFFREY WATTS, Investigator for the Second Judicial District, in his individual capacity, and
ED GRUNINGER, Investigator for the Second Judicial District and Police Officer for the Denver Police Department, in his individual capacity,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for a Protection Order**

Pursuant to Fed. R. Civ. P. 26 and an Order Granting Mr. Carbajal Leave to Meet With His Investigator and Lead Assistant to Prepare Discovery and Conduct Depositions [Docket No. 428; Filed January 10, 2013] (the "Motion"). On January 30, 2013, Defendants Carol Warner, David Romero, and Joe Quintana (collectively, the "State Defendants") filed a Response [#435]. On January 31, 2013, Defendants Bill Railey, Chris Weldon, Benjamin Schroeder, and Fred McKee (the "Delta Defendants") filed a Response [#436]. On February 7, 2013, Defendants Jeffrey Watts and Edward Gruninger filed a Response [#438]. On February 15, 2013, Plaintiff filed Replies [#443, #444, #445] to each of the Responses. The Court has reviewed the pleadings and is fully advised in the premises.

## I. Background

Plaintiff generally seeks two forms of relief in the Motion. First, he objects to certain of Defendants' written discovery requests and seeks a protective order to shield him from those inquiries. Second, he seeks a Court order permitting him to meet with his investigator and legal assistants to prepare discovery and conduct depositions.

The Court addresses each request in turn, but makes one observation regarding an oft-repeated point of contention between Plaintiff and Defendants as a preliminary matter. The parties have on multiple occasions disputed whether and to what extent conferral over motions has occurred prior to their filing, as generally required by Local Rule 7.1A. *See, e.g.*, *Motion* [#428] at 1; *Response* [#436] at 4; *Reply* [#444] at 4. However, Local Rule 7.1A. explicitly exempts cases involving *pro se* prisoners. Thus, while the Court encourages conferral between Plaintiff and Defendants regarding the content of motions prior to filing, the parties are not *required* to confer, and the parties' repeated bickering over

conferral is a non-issue in connection with any motion filed by any party.

## II.  Request for Protective Order

Plaintiff states that on or around December 9, 2012, the Delta Defendants and Defendants Jeffrey Watts and Edward Gruninger served Plaintiff with two separate sets of written discovery.  *Motion* [#428] at 1.  Plaintiff objects to certain Requests for Production of Documents from these Defendants.  In part, Plaintiff objects to producing requested medical records and tax returns.  *Id.* at 2-3.  He also objects to producing other documents because they purportedly consist of legal research and work product documents.  *Id.* Finally, Plaintiff objects to producing other documents which he asserts are in the public record and/or are already in Defendants' possession (apparently information on prior suits Plaintiff has filed and documents from other cases).  *Id.*  Plaintiff did not provide the Court with copies of the written discovery requests at issue.  Defendants provided copies of Defendants Jeffrey Watts and Edward Gruninger's First Set of Written Discovery to Plaintiff [#438-1] and of the Delta Defendants' Discovery Requests to Plaintiff [#436-1].

At the outset, it is unclear that Plaintiff is specifically contesting any requests for written discovery from the State Defendants (Carol Warner, David Romero, and Joe Quintana).  No party provided the Court with a copy of written discovery served by the State Defendants.  Plaintiff does not specifically name them in his Motion.  Accordingly, to the extent that Plaintiff may be seeking a protective order with respect to written discovery served by the State Defendants, the Motion is **denied without prejudice**.

## A.  Legal Standard

Fed. R. Civ. P. 26(b) permits discovery "regarding any matter, not privileged, that

is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  *See also Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense).    Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public . . . has a right to every man's evidence,' " the Federal Rules broadly define the scope of discovery.  *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)).  The Court may, however, forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense.  *See* Fed. R. Civ. 26(c)(1).  Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## B.    Medical Records

The three Requests for Production of Documents served on Plaintiff by the Delta Defendants generally concern: (1) tax returns; (2) falsified evidence and affidavits; and (3) copies of documents upon which Plaintiff intends to rely at trial. [#436-1] at 4-5.  The Delta Defendants respond to Plaintiff's Motion by stating that they have not sought production of any medical records, and thus Plaintiff's request for a protective order regarding medical records with respect to the Delta Defendants is baseless and frivolous.  *Response* [#436] at 2.  Plaintiff does not contest the relevancy of his medical records from St. Anthony's

Central Hospital on August 28, 2010 or from Denver Health on April 28-30, 2009.  *Reply* [#444] at 2.  Plaintiff states that he will allow release of these records but that no other medical record is relevant to this litigation.  *Id.*

The Court finds that the Delta Defendants' broad third request may include medical records.  However, the Court construes Plaintiff's assertion regarding his medical records from St. Anthony's Central Hospital on August 28, 2010 and from Denver Health on April 28-30, 2009 to indicate that these are the only medical records on which he intends to rely at trial.  Thus, it appears that the parties are not at odds with one another regarding this discovery request.

Accordingly, Plaintiff's request for a protective order regarding the Delta Defendant's Request for Production No. 3 is **denied as moot**.  Concerning medical records, Plaintiff need only produce his medical records from St. Anthony's Central Hospital on August 28, 2010 and from Denver Health on April 28-30, 2009 to the Delta Defendants.[1]

Turning to Defendants Watts and Gruninger, Plaintiff asserts that they are seeking all of his medical records, including workers' compensation, pharmaceutical, social security, DOC, and mental health records.  *Motion* [#428] at 2 & 2 n.1.  Defendants Watts and Gruninger state they will limit their requests to the five years prior to Plaintiff's Complaint [#1], which was filed on November 23, 2010.

### 1.   Relevance

---

[1]  Plaintiff is expressly warned that if he later decides that he will use additional medical records at trial, he is required to supplement his response to the Delta Defendants' Request for Production No. 3 and to provide copies of those additional records.  Failure to do so may result in the imposition of sanctions, including denial of admission of those records into evidence at trial.

As a threshold matter, the Court must consider whether the discovery sought is relevant to the subject matter of the litigation.  Pursuant to Fed. R. Civ. P. 26(b)(1), any discovery sought must be relevant.  Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  *See, e.g.*, *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome").  Further, the objecting party cannot "sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing."  *Id.* (citation omitted).  However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.  *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, No. 07-1121-MLB, 2008 WL 678700, at *2 (D. Kan. Mar. 7, 2008) (citation omitted).

Plaintiff's mental health records are relevant because he alleges that he suffered

emotional distress, "suffering of reputation," humiliation, mental anguish, and loss of enjoyment of life. *Third Am. Compl.* [#254] at 25. He is seeking damages to compensate him for these non-pecuniary losses. *Id.* Thus, Plaintiff has put his mental health condition at issue, making his mental health records relevant. *Simpson*, 220 F.R.D. at 365; *Fox v. Gates Corp.*, 179 F.R.D. 303, 305 (D. Colo.1998); *LeFave v. Symbios, Inc.*, No. 99-Z-1217, 2000 WL 1644154, at *4 (D. Colo. Apr. 14, 2000). Discovery of Plaintiff's mental health records is likely to lead to the discovery of other admissible evidence.

The Court reaches the same conclusion with respect to Plaintiff's physical health records. Plaintiff has alleged that certain Defendants "wrenched his shoulder, separating it, twisted his wrist, spraining it" and "repeatedly struck [Plaintiff] in the head." *Third Am. Compl.* [#254] at 21. Certain other Defendants allegedly struck Plaintiff with a car, "throwing him up and to the ground," then "exiting the car and launching a projectile, and [striking] him in the head," causing "serious pain and injury to his head, neck, and back." *Id.* Thus, Plaintiff has put his physical health at issue, making his physical health records relevant. *Simpson*, 220 F.R.D. at 365; *Fox*, 179 F.R.D. at 305; *LeFave*, 2000 WL 1644154, at *4. Discovery of Plaintiff's physical health records is likely to lead to the discovery of other admissible evidence.

Turning to the period for which such records are relevant, Defendants Watts and Gruninger are seeking Plaintiff's medical records from November 23, 2005 through November 22, 2010. *See Response* [#438] at 7 (limiting their request "to the five years prior to Plaintiff's Complaint," which was filed on November 23, 2010). Because Plaintiff may have had preexisting conditions and/or been treated for his alleged injuries beyond his

initial treatments at St. Anthony's Central Hospital on August 28, 2010 and at Denver Health on April 28-30, 2009, the Court finds that more than those four days' worth of records are relevant. *See Reply* [#445] at 2; *Phillips v. Tiona*, No. 10-cv-00334-PAB-KMT, 2011 WL 587311, at *2 (D. Colo. Feb. 9, 2011).   Defendants seek Plaintiff's medical records beginning approximately three-and-a-half years prior to his alleged April 2009 injuries. *Response* [#438] at 7.  The Court finds that this time period is not overly inclusive and the requested documents are therefore relevant. *See, e.g.*, *Sheldon*, 204 F.R.D. at 689-90 (stating that a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party). Discovery of Plaintiff's medical records is likely to lead to the discovery of other admissible evidence.

## 2.    Privilege

The Court next examines application of privileges to Plaintiff's medical records. When federal law governs the rule of decision, federal common law governs the existence of privilege. *See Cutting v. United States*, No. 07-cv-02053-REB-MEH, 2008 WL 1775278, at *2 (D. Colo. Apr. 14, 2008).   This case was brought pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.  Therefore, federal common law governs whether the medical records are privileged. *See, e.g., Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990); *Hutton v. City of Martinez*, 219 F.R.D. 164, 167 (N. D. Cal. 2003); *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) ("We therefore hold that the federal law of privilege [applies in a federal question case], even if the witness-testimony is relevant to a pendent state law count which may be controlled by a

contrary state law of privilege.").

There is no physician-patient privilege recognized by federal common law. *Walen v. Roe*, 429 U.S. 589, 602 n.28 (1977). "Accordingly, the court's inquiry regarding the discoverability of plaintiff's general medical records is governed by relevancy standards contained in Fed. R. Civ. P. 26 and considerations of confidentiality," but not privilege. *LeFave*, 2000 WL 1644154, at *2. The Court has determined that Plaintiff's physical medical records are relevant. Moreover, by initiating this lawsuit and making a claim for compensatory damages relating to physical damages, Plaintiff has waived any applicable privacy rights to his physical medical records. *See Windsor v. Aasen*, No.09-00947-REB-KMT, 2009 WL 5184170, at *1 (D. Colo. Dec. 18, 2009).

On the other hand, the psychotherapist-patient privilege applies in federal cases. *Jaffee v. Redmond*, 518 U.S. 1, 12–13 (1996). However, "[l]ike other testimonial privileges, the patient may of course waive the protection." *Id.* at 15 n.14. A plaintiff waives the psychotherapist-patient privilege by placing his mental health at issue. *Simpson*, 220 F.R.D. at 364; *see also Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) (collecting cases holding that privilege is waived when a party puts his medical condition at issue).

As noted above, Plaintiff seeks damages for emotional distress. He has placed his psychological condition at issue. Thus, the psychotherapist-patient privilege has been waived. *See Weatherspoon v. Provincetowne Master Owners Ass'n, Inc.*, No. 08-cv-02754-MSK-KLM, 2010 WL 936109, at *3 (D. Colo. Mar. 15, 2010). Defendants are entitled to discovery of Plaintiff's mental health records. *See Fisher v. Southwestern Bell*

*Tel. Co.*, No. 09-5046, 2010 WL 257305, at *3 (10th Cir. Jan. 25, 2010).

### 3.      HIPAA

Plaintiff also asserts that the Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. 104-191, 110 Stat. 1936, enacted August 21, 1996), protects disclosure of his medical records in civil litigation.   HIPAA was enacted to provide standards for protection of the privacy of medical information.  *Wallin v. Dycus*, No. 03-00174, 2009 WL 2490127, at *5 (D. Colo. Aug. 13, 2009).   Pursuant to the terms of HIPAA, "[a] covered entity, may not use or disclose protected health information, except as permitted or required [by other statutory provisions]."  45 C.F.R. § 164.502(a).  The covered entity may disclose medical information to the patient who is the subject of the records.  45 C.F.R. § 164.502(a)(1)(iv).   Disclosure of a patient's medical information is permitted when it is requested by the patient.  *Id.*  Pursuant to this Order, Plaintiff is required to request copies of his medical records for purposes of pursuing his lawsuit.  Disclosure of Plaintiff's medical records to him is not a violation of HIPAA, and production of copies of such records to Defendants is required by law if Plaintiff seeks to obtain the related damages.  *See Weatherspoon*, 2010 WL 936109, at *4.  Plaintiff's argument regarding HIPAA has no merit.

Based on the foregoing, Plaintiff's Motion for Protective Order pertaining to production of his medical records from November 23, 2005 through and including November 22, 2010 is **DENIED**.  Plaintiff's Motion for Protective Order pertaining to production of medical records from before November 23, 2005 or from after November 22, 2010 is **DENIED as moot**, as the parties appear to be in agreement regarding those dates. Plaintiff shall obtain copies of his medical records for the relevant period and produce

copies of the records to defense counsel.[2]

## C.     Tax Returns

In their Request for Production of Documents No. 4, Defendants Watts and Gruninger ask Plaintiff to "[p]roduce copies of federal and state tax returns filed in the past five (5) years in your possession . . . ." [#438-1] at 5.  In their Request for Production of Documents No. 1, the Delta Defendants ask Plaintiff to "provide [his] federal income tax returns for each calendar year in which [he] claim[s] to have suffered economic damages by the Delta Defendants." [#436-1].  Plaintiff argues that he "is only claiming present and future damages in connection with lost earnings from his employers" and thus "he is only required to disclose his W-2 forms." *Motion* [#428] at 5.

When considering discovery requests for tax returns, the Court weighs "the need for privacy against the need for disclosure." *I'mnaedaft, Ltd. v. Intelligent Office Sys., LLC*, No. 08-cv-01804-LTB-KLM, 2009 WL 824304, at *2 (D. Colo. Mar. 30, 2009).  "The burden lies with the party seeking discovery to demonstrate a compelling need" for the tax returns. *Id.* (internal quotation omitted).  Here, according to the Third Amended Complaint, Plaintiff seeks, in part, "actual economic damages" and "compensatory damages, including but not limited to those for past and future pecuniary, and non-pecuniary losses." *Third Am. Compl.* [#254] at 25.

Plaintiff has asserted that he is seeking compensatory, consequential, and economic damages for lost income or wages and loss of earning capacity. *Plaintiff's Response to*

---

[2]    "Medical records" include physical and mental health records from the Colorado Department of Corrections and from outside providers; pharmacy records; social security records; and workers' compensation records, if any.

*Defendants' First Discovery Requests* [#436-2] at 5-6.   Thus, Plaintiff's tax returns are relevant to Plaintiff's claims for damages.   *See Simpson*, 220 F.R.D. at 359.   The parties do not dispute that the tax returns are confidential, as that term is ordinarily applied in the law.   Discovery in federal court is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on federal question or diversity of citizenship.   *See Everitt v. Brezzel*, 750 F. Supp. 1063, 1065 (D. Colo. 1990).   Although federal law does not provide absolute protection from disclosure for confidential financial information such as that included in personal tax returns, applicable precedent directs the Court to weigh the need for privacy against the need for disclosure in circumstances involving requests for disclosure of such information.   *See, e.g.*, *Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340 (1979).   If a state doctrine promoting confidentiality does not conflict with federal interests, it may be taken into account as a matter of comity.   *Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992).

Colorado law contains a doctrine promoting confidentiality of tax returns.   Pursuant to Colorado law, courts generally apply the three-part test set forth in *Martinelli v. Denver District Court*, 612 P.2d 1083 (Colo. 1980) to determine whether confidential information should be disclosed during discovery.   *See, e.g.*, *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 720-21 (Colo. 1999).   This test requires the court to consider:

> (1) whether the individual has a legitimate expectation of nondisclosure; (2) whether disclosure is nonetheless required to serve a compelling state interest; and (3) where a compelling state interest necessitates disclosure of otherwise protected information, how disclosure may occur in a manner which is least intrusive with respect to the right of confidentiality.

*Id.* (citing *Martinelli*, 612 P.2d at 1091).   In a subsequent decision, the Colorado Supreme

Court recognized the "limited applicability of the *Martinelli* test" in those cases where one private party seeks disclosure of confidential information from another private party. *Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 157 (Colo. 2008). In such cases, the court noted that "[c]onsideration of a compelling state interest (i.e. the second prong of *Martinelli*) . . . has little or no applicability . . . ." 185 P.3d at 158. Accordingly, the *Stone* court affirmed that the test set forth in *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005), is more appropriately used in cases involving two private parties and the discovery of confidential information like that contained in tax returns. *Stone*, 185 P.3d at 159.

The *Alcon* test, as set forth in *Stone*, requires courts to balance the concepts of "compelling need and least intrusive alternative" and mandates that this inquiry be considered in light of the particular circumstances of each case. *Id.* In applying the *Alcon* test, the *Stone* court noted that "[t]he burden lies with the party seeking discovery . . . to demonstrate a compelling need for the specific information contained within the requested documents. In responding to the discovery requests, the party opposing discovery can point to other available sources from which the information can be readily obtained." *Id.* Considering the circumstances of the instant discovery request, this Court likewise finds that the *Alcon* test is more appropriately applied, because the second *Martinelli* factor involving state interests appears to be unrelated to the issues in this case.

Therefore, pursuant to *Alcon*, the Court must consider whether Defendants have demonstrated a "compelling need" for Plaintiff's tax returns, and whether production of those documents is the "least intrusive" means of obtaining the information sought. *Stone*, 185 P.3d at 158. Citing to Plaintiff's written discovery responses, the Delta Defendants

assert that Plaintiff has failed to provide information identifying all of his employers for the relevant period. *Response* [#436] at 6. They therefore state that they cannot determine whether the W-2 Wage and Tax Statements provided by Plaintiff encompass all of his earnings for the relevant period. *Id.* The Delta Defendants further point to a direct contradiction by Plaintiff resulting from his initial claim that he had no income for 2008-2010, but his subsequent production of W-2 Wage and Tax Statements for 2008. *Id.* at 7. They assert that production of Plaintiff's federal tax returns would clarify Plaintiff's income for the relevant period.

In light of Plaintiff's responses to written discovery to date, the Court agrees that Plaintiff should produce copies of his federal tax returns for the years at issue. The confusion created by Plaintiff's failure to answer completely and by his contradictory responses suffices to establish a "compelling need" for Plaintiff's federal tax returns because production of those documents is the "least intrusive" means of obtaining the information sought. *Stone*, 185 P.3d at 158. However, Defendants Watts and Gruninger, the only Defendants to seek Plaintiff's state tax returns, have failed to clearly demonstrate why Plaintiff's state tax returns are necessary, *i.e.*, why they will provide information to Defendants that is not available on Plaintiff's federal tax returns. Thus, in light of the Court's ruling regarding the federal tax returns, the Court finds that Defendants Watts and Gruninger have not demonstrated a "compelling need" for the state tax returns.

Accordingly, the Court **DENIES** Plaintiff's request for a protective order regarding his federal tax returns for the relevant years and **GRANTS** his request for a protective order regarding his state tax returns. Therefore, Plaintiff is **ORDERED** to execute the releases

provided by Defendants allowing them obtain copies of his federal tax returns.  Plaintiff

need not execute any release regarding his state tax returns.

### D.    Work Product Documents

Plaintiff's general assertion that Defendants seek work product is insufficient for

purposes of determining whether a protective order is warranted.[3]  To the extent that

Plaintiff asserts this privilege, he must comply with Fed. R. Civ. P. 26(b)(5) and compile a

privilege log as required therein.  *See, e.g., Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201,

206 (D. Colo. 2002) (discussing Court's role in balancing party's need for documents

against harm of disclosure in context of whether to grant protective order).  Thus, in order

to obtain a protective order regarding alleged work product documents, Plaintiff must clearly

and specifically state which written discovery questions are inappropriate, state why each

specific question is improper, and, to the extent required by the Federal Rules of Civil

Procedure, compile a privilege log.  *See generally* Fed. R. Civ. P. 26(b)(1) (providing that

discovery relevant if information "appears reasonably calculated to lead to the discovery

of admissible evidence"); Fed. R. Civ. P. 26(b)(5) addressing requirements of a privilege

log).  Accordingly, the Court **DENIES without prejudice** Plaintiff's request for a protective

order regarding alleged work product documents.

### E.    Documents Already Accessible to Defendants

Finally, Plaintiff objects to producing other documents which he asserts are in the

public record and/or are already in Defendants' possession, apparently referring to

---

[3] For purposes of ruling on the Motion, the Court assumes, without deciding, that the work product doctrine applies to the work of a *pro se*, non-lawyer party. *See, e.g., McKenzie v. McNeil*, No. 4:11cv45-RH/WCS, 2012 WL 695108, at *1 (N.D. Fla. Mar. 1, 2012).

information on prior suits Plaintiff has filed and documents from other actions. *Motion* [#428] at 2-3. The Court finds that Plaintiff's objections lack sufficient specificity. However, regarding Plaintiff's argument that he is not required to produce certain documents because those documents may be available in public records, the Court notes that this consideration is irrelevant. *See Hoagland v. Rockin' R Ranch & Lodge Guest Operations, Inc.*, No. 2:10-cv-478-TC-PMW, 2011 WL 1740152, at *1 (D. Utah May 5, 2011). Plaintiff is required to produce any documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The same principle applies to Plaintiff's other argument regarding documents that Defendants "should" already have in their possession. Accordingly, Plaintiff's request for a protective order regarding these documents is **DENIED without prejudice**.

### III.  Miscellaneous Discovery Issues

#### A.    Notarization

Plaintiff contends that he cannot fulfill his discovery obligations to Defendants because "the law library staff refuses to notarize any interrogatories in absence of a court order." *Motion* [#428] at 1. However, Plaintiff need not have his discovery responses notarized; he may attest to the veracity of his responses by swearing to their truth under penalty of perjury, pursuant to 28 U.S.C. § 1746. Accordingly, the Court **DENIES** Plaintiff's request to the extent he seeks a Court Order requiring law library staff to notarize his discovery responses.

#### B.    Restriction of Plaintiff's Confidential Information

In the Reply [#444] to the Delta Defendants' Response [#436], Plaintiff brings to the Court's attention that certain documents containing information of a private nature were

filed on the electronic docket by some of the Defendants. *See Delta Defendants' Response* [#436-3] at 2 (tax-related document), [#436-4] at 2-4 (same); *Watts & Gruninger's Response* [#438-1] at 9-15, 17 (social security number and/or birth date). The parties may not file such documents without redaction or restriction of such private and personal information. Thus, pursuant to D.C.COLO.LCivR 7.2, the Court *sua sponte* finds that the presumption of public access to Court files is outweighed by Plaintiff's interest in privacy in his tax records, social security number, and birth date, and that a less restrictive alternative is not practicable. Accordingly, the Court **ORDERS**, *sua sponte*, that the Clerk of the Court is directed to maintain the following documents **UNDER RESTRICTION** at **LEVEL 1**:[4] Docket Nos. 436-3, 436-4, 438-1. **Defendants are warned that further filing of such information without redaction or restriction may result in the imposition of sanctions.**

## C.   Depositions and Meeting with Agents

Plaintiff states that he is an indigent party and is unable to bear the costs of discovery. As discussed further below, the Court notes that Plaintiff's position in this regard has changed from the time of the preliminary scheduling conference, when Plaintiff requested that the Court permit him to take dozens of depositions and stated that he would find the financial resources necessary to conduct such discovery. Plaintiff now seeks Court orders allowing him to meet with his investigator and legal assistants to compile an "electronic file of discovery" to turn over relevant evidence to Defendants and to help him

---

[4] Level 1, the least restrictive, limits access to the documents to the parties and the Court. *See* D.C.COLO.LCivR 7.2.

conduct discovery including depositions.

Before addressing the merits of Plaintiff's requests, the Court notes that it discussed depositions with Plaintiff on the record at the Scheduling Conference held on November 5, 2012 [#413].   At that time Plaintiff requested permission to take twenty-five depositions, fifteen more than are presumptively permitted by the Federal Rules of Civil Procedure.   *See* Fed. R. Civ. P. 26(b)(2), 30.   The Court provided a detailed explanation regarding the expense of taking a deposition, the individuals who may conduct a deposition, and the necessity and expense of deposition transcripts.   The Court also discussed with Plaintiff less expensive ways he could obtain information through discovery, such as through written discovery.   Plaintiff repeatedly and adamantly insisted that the "funds will be secured" and that the "moneys will be procured."   Plaintiff's present plea of indigence is dangerously close to the an admission that he made a deliberate misrepresentation to the Court on November 5, 2012.   **The Court warns Plaintiff that such misrepresentations may subject him to the imposition of sanctions in the future.**

CDOC Administrative Regulation 750-03 § IV.G. permits an offender to meet with his attorney/agent on Monday through Thursday between the hours of 8 a.m. to 5 p.m. This regulation also governs access to legal materials.   Plaintiff does not explain why the parameters set by this regulation are not sufficient to accommodate his needs. Accordingly, the Court **DENIES without prejudice** his request for a Court Order allowing him to meet with his investigator/legal assistants.

CDOC Administrative Regulation 750-03 § IV.J. permits depositions at CDOC facilities.   *See also* A.R. 750-03 § IV.G.10.b.   These regulations also permit the use of

certain recording equipment at depositions held at a CDOC facility.  Plaintiff does not explain why the parameters of these regulations are inadequate to accommodate his needs.  Accordingly, the Court **DENIES without prejudice** his request for a Court Order allowing recording equipment to be brought into his facility.

Finally, the Court notes that it previously explained, at the Scheduling Conference held on November 5, 2012, that a deposition record may not be made by Plaintiff's mother, Victoria Carbajal.  Federal Rule of Civil Procedure 28(c) states that a "deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action."  This means that neither Plaintiff's mother, Victoria Carbajal, nor his investigator, John Shull, may be charged with preserving the deposition testimony for the record.  Accordingly, the Court **DENIES** Plaintiff's request for a Court Order allowing Victoria Carbajal or John Shull to conduct and record depositions.

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#428] is **DENIED in part, DENIED as moot in part, DENIED without prejudice in part, and GRANTED in part**, as outlined above.

IT IS FURTHER **ORDERED** that, **on or before April 1, 2013**, Defendants shall file a proposed protective order that addresses the confidentiality of Plaintiff's medical records and tax return information.

IT IS FURTHER **ORDERED** that, **on or before April 15, 2013**, Plaintiff may file

objections to the proposed protective order.

IT IS FURTHER **ORDERED** that Plaintiff shall produce the ordered documents and/or execute the required releases for production of ordered documents **within fourteen days of the Court issuing a protective order regarding confidentiality of Plaintiff's records.**

IT IS FURTHER **ORDERED** that no extension of these deadlines shall be granted absent exceptional circumstances.

IT IS FURTHER **ORDERED**, *sua sponte*, that the Clerk of the Court is directed to maintain the following documents **UNDER RESTRICTION** at **LEVEL 1**:[5] Docket Nos. 436-3, 436-4, 438-1.

Dated:  March 18, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[5] Level 1, the least restrictive, limits access to the documents to the parties and the Court. *See* D.C.COLO.LCivR 7.2.