IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02862-REB-KLM

DEAN CARBAJAL,

      Plaintiff,

v.

CAROL WARNER, in her individual capacity,
DAVID ROMERO, in his individual capacity,
JOE QUINTANA, in his individual capacity,
BILL RAILEY, in his individual capacity,
CHRIS WELDON, in his individual capacity,
BENJAMIN SCHROEDER, in his individual capacity,
GILBERTO LUCIO, in his individual capacity,
JAMES DIXON, in his individual capacity,
ADAM BARRETT, in his individual capacity,
JOEL SMITH, in his individual capacity,
JESSE REMBERT, in his individual capacity,
JAY LOPEZ, in his individual capacity,
MICHAEL O'NEILL, in his individual capacity,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado,
DARIN DESEL, Police Officer for the Denver Police Department, in his individual
capacity,
FRED MCKEE, Sheriff for the Delta Sheriff's Department, in his individual capacity,
PERRY SPEELMAN, Police Officer for the Denver Police Department, in his individual
capacity,
JEFFREY WATTS, Investigator for the Second Judicial District, in his individual
capacity, and
ED GRUNINGER, Investigator for the Second Judicial District and Police Officer for the
Denver Police Department, in his individual capacity,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiff's **Motion for Reconsideration and**

**Contemporaneous Objection to the Court's October 11, 2013 Order [#553]** [#562][1] (the

"Motion"); on the Delta Defendants' **Motion for Attorney's Fees and Costs** [#558]; on

Defendants Jeffrey Watts and Edward Gruninger's **Amended Affidavit of Edmund**

**Kennedy Regarding Fees and Costs Pursuant to October 11, 2013, and December 13,**

**2013 Orders** [#575]; and on the State Defendants' **Amended Motion for Fees and Costs**

[#576]; and on the Denver Defendants' **Amended Petition for Fees and Costs** [#577]

(collectively, the "Motions for Fees and Costs"). On November 12, 2013, Defendants filed

a Response [#568] to the Motion to Reconsider [#562]. Plaintiff filed Responses [#573,

#581] to the Motions seeking fees and costs. The Court has reviewed these filings, the

entire docket, and the applicable law, and is sufficiently advised in the premises.

## I. Plaintiff's Motion to Reconsider

Plaintiff proceeds in this matter as an incarcerated pro se individual.[2] He seeks

reconsideration of the Court's Order [#553] imposing sanctions on him for his refusal to

appear for his deposition. *Motion to Reconsider* [#562].

A motion for reconsideration "is an extreme remedy to be granted in rare

circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995).

---

[1] "[#562]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). This convention is used throughout this order.

[2] The Court is mindful that it must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court is not a pro se litigant's advocate, nor shall the Court "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a pro se litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

It is well-established in the Tenth Circuit that grounds for a motion to reconsider are limited to the following: "(1) an intervening change in the controlling law; (2) new evidence previously unavailable; and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark*, 57 F.3d at 948).  Therefore, a motion to reconsider is "appropriate [only] where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*  Plaintiff does not argue that there has been an intervening change in the controlling law or that the Court should consider new, previously-unavailable evidence.  *See Motion to Reconsider* [#562]. Rather, he argues that there is a need to correct clear error and prevent manifest injustice. *See id.*

The Court first addresses Plaintiff's contention that the Court improperly relied on hearsay evidence in making its findings in the previous Order [#553], in violation of the Federal Rules of Evidence.[3]  Specifically, Plaintiff argues that Lt. Brett Hulbert's ("Hulbert") statements regarding the information he received in two telephone calls from the Segregation Unit is hearsay.  *See Ex. A-1 to Defs.' Motion, Decl. of Hulbert* [#526-1]. Lt. Hulbert's affidavit states that he received two telephone calls from the Segregation Unit informing him that Plaintiff refused to put on his orange jumpsuit, that Plaintiff demanded to wear a green jumpsuit, that Plaintiff refused to participate in his deposition wearing an orange jumpsuit, and that Plaintiff would not be brought to his scheduled deposition because he refused to wear his orange jumpsuit.  *Id.*

Plaintiff errs in his assertion that the Federal Rules of Evidence must be followed in

---

[3] The Court incorporates the statement of the facts surrounding the sanctions issue as outlined in the October 11, 2013 Order [#553] at 2-4.

determining a motion for sanctions.  *See, e.g.*, *Rezende v. Citigroup Global Markets Inc.*, No. 09 Civ. 9392(HB)(DF), 2011 WL 1584607, at *27 (S.D.N.Y. Mar. 11, 2011) (recommendation adopted in part and rejected in part on other grounds) (holding that a sanctions motion, even if case-dispositive, should not be viewed as equivalent to a summary judgment motion with respect to evidentiary standards); *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 901 (8th Cir.2009) (holding that, "[w]hile the Federal Rules of Evidence do not necessarily apply in the context of a motion for sanctions, evidence relied upon must, at a minimum, bear indicia of reliability"); *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 66 n.5 (1st Cir. 2008) ("We do not suggest that the rules of evidence necessarily apply to factfinding in the context of sanctions.  That is not the case."); *Cook v. Am. S.S. Co.*, 134 F.3d 771, 774 (6th Cir. 1998) (holding that the district court did not err by declining to apply the Federal Rules of Evidence when determining the imposition of sanctions).

Nevertheless, the Court must follow two procedural safeguards in determining the motion for sanctions.  First, because the alleged sanctionable conduct occurred outside of the presence of the Court, Plaintiff must be provided with notice and an opportunity to be heard.  *Cook*, 134 F.3d at 774; *see also Wasko v. Moore*, 122 F. App'x 403, 406 (10th Cir. Feb. 1, 2005) (citing *Hutchinson v. Pfeil*, 208 F.3d 1180, 1184 (10th Cir. 2000)).  Plaintiff has now been provided multiple opportunities to be heard, both in his Response [#544] to the original Motion for Sanctions [#526] and in connection with the present Motion [#562] seeking reconsideration of the Court's prior Order [#553].  This requirement has therefore been satisfied.

Second, the evidence on which the Court relies must "bear indicia of reliability." *Sentis Grp., Inc.*, 559 F.3d at 901.  The Court has already found that Defendants' counsel

were present and ready for Plaintiff's deposition to occur on the date in question.  *Order*

[#553] at 3-4.  In other words, the Court has found that Defendants were not at fault

regarding this incident.  Thus, the reliability of the evidence is essentially an issue of

whether the affidavit of non-party Lt. Hulbert or Plaintiff's filings are more credible.

Plaintiff's credibility has been damaged by his statements in this case.  As the Court noted

on March 18, 2013,

> Plaintiff states that he is an indigent party and is unable to bear the costs of discovery.  As discussed further below, the Court notes that Plaintiff's position in this regard has changed from the time of the preliminary scheduling conference, when Plaintiff requested that the Court permit him to take dozens of depositions and stated that he would find the financial resources necessary to conduct such discovery . . . .
>
> Before addressing the merits of Plaintiff's requests, the Court notes that it discussed depositions with Plaintiff on the record at the Scheduling Conference held on November 5, 2012 [#413].  At that time Plaintiff requested permission to take twenty-five depositions, fifteen more than are presumptively permitted by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(b)(2), 30.  The Court provided a detailed explanation regarding the expense of taking a deposition, the individuals who may conduct a deposition, and the necessity and expense of deposition transcripts.  The Court also discussed with Plaintiff less expensive ways he could obtain information through discovery, such as through written discovery.  Plaintiff repeatedly and adamantly insisted that the "funds will be secured" and that the "moneys will be procured."  Plaintiff's present plea of indigence is dangerously close to an admission that he made a deliberate misrepresentation to the Court on November 5, 2012.  The Court warns Plaintiff that such misrepresentations may subject him to the imposition of sanctions in the future.

*Order* [#459] at 17-18.  In addition, as noted in the prior Order [#553], Plaintiff does not

proceed in forma pauperis in this action.  Thus, based on Plaintiff's conduct in this litigation,

it appears to the Court that he is willing to make contradictory statements in order to further

his objectives.  In this current situation, Plaintiff states that he does not have the means to

cover Defendants' reasonable costs and fees for one failed deposition, even though at the

Scheduling Conference he adamantly asserted that he would have no problem paying for twenty-five depositions.  Thus, the Court finds that Plaintiff's credibility in this matter is dubious.

Turning to Lt. Hulbert and the telephone conversations he had with staff from the Segregation Unit, the Court notes that, beyond Plaintiff's bald assertions, there is no evidence to directly contradict the key holding of the Court's prior Order [#553].  Plaintiff appears to carefully choose his words in the Motion [#562], and no where does he state that he disputes the Court's holding that he insisted on being permitted to wear a different color jumpsuit to the deposition.  In other words, even if the Court accepts Plaintiff's assertion that he was already in his orange jumpsuit, and that he was requesting that he be taken to his deposition, there is no evidence contradicting Lt. Hulbert's affidavit that Plaintiff was demanding to wear a green jumpsuit in connection with his request to be taken to his deposition.  Further, neither Lt. Hulbert nor the other prison officials mentioned in Plaintiff's Motion are litigants in this lawsuit.  Beyond Plaintiff's conclusory statements that he was put in the Segregation Unit as retaliation and that prison security staff are intentionally interfering with his lawsuit, there is nothing to support Plaintiff's version of the facts.  The Court therefore finds that Plaintiff's testimony does not bear the requisite "indicia of reliability" and that Lt. Hulbert's testimony does.

In the Response [#568], Defendants point to Plaintiff's assertion of indigence in the Motion [#562] and accordingly ask the Court to reconsider dismissing this matter instead of ordering Plaintiff to pay monetary sanctions.  Pursuant to Fed. R. Civ. P. 37(d)(3), the Court *may* order other types of sanctions, if appropriate: (1) "directing that the matters embraced in the order or other designated facts be taken as established for purposes of

the action, as the prevailing party claims;" (2) "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" (3) "striking pleadings in whole or in part;" (4) "staying further proceedings until the order is obeyed;" (5) "dismissing the action or proceeding in whole or in part;" and (6) "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).  However, the Court *must* "require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).  This mandatory award of expenses may stand as its own sanction or be imposed in addition to any other permissible sanction.  *Id.*  The Court has previously found that Plaintiff's failure in this matter was not substantially justified and that other circumstances do not make an award of expenses unjust.  *Order* [#553] at 6.  The Court therefore does not have discretion regarding whether Plaintiff must, at a minimum, pay for Defendants' reasonable fees and costs.  As noted above, Plaintiff has provided the Court with varying statements regarding his ability to secure funding for his litigation.  In light of these variances, the Court will provide Plaintiff with an opportunity to pay the monetary sanctions before examining any other potential sanction.  As the Court has already informed Plaintiff, one such alternative sanction may be dismissal of his case.  *See Order* [#553] at 6-7.

Based on the foregoing, the Court **denies** Plaintiff's Motion to Reconsider [#562].

## II. Defendants' Motions for Fees and Costs

The Court proceeds to determine the amount of fees and costs for which Plaintiff is

responsible.

## A.    Delta Defendants

The Court first examines the Delta Defendants' request for fees and costs.  Pursuant

to D.C.COLO.LCivR 54.3B., a party seeking an award of expenses must provide "a detailed

description of the services rendered, the amount of time spent, the hourly rate, and the total

amount claimed; and a summary of the relevant qualifications and experience."  The Delta

Defendants submitted one affidavit, authored by their attorney Jeffrey L. Driscoll ("Driscoll")

[#558-1].  The Motion [#558] and the Affidavit [#558-1] include a description of services

rendered, the amount of time expended in connection with the cancelled deposition, Mr.

Driscoll's hourly rate, his qualifications/experience, and costs expended.   He seeks

$2,669.00 in attorney's fees and $573.33 in costs, for a total amount of $3,242.33.  The

Court finds that Mr. Driscoll has satisfied the requirements of Local Rule 54.3B.

Turning to the reasonableness of Mr. Driscoll's hourly rates, the party seeking

attorneys' fees bears the burden of producing "satisfactory evidence . . . that the requested

rates are in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886,

896 n.11 (1984).  Mr. Driscoll has practiced law since 1992, has provided defense of

governmental entities for about seventeen years, and has defended hundreds of cases and

conducted hundreds of depositions in that period.  *Motion* [#558] at 2.  In this case, he

seeks fees at an hourly rate of $170.00.  *See Aff. of Driscoll* [#558-1] at 1-2.  The Court

finds that the hourly rate of $170.00 is reasonable in this jurisdiction for counsel with Mr.

Driscoll's experiences and qualifications.  *See Shrader v. Beann*, No. 10-cv-01881-REB-

MLW, 2012 WL 527480, at *3 (D. Colo. Feb. 12, 2012) (finding that an hourly rate of $425

for senior attorneys in the Denver area is reasonable); *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, No. 09-cv-00717-CMA-BNB, 2011 WL 3568165, at \*8-9 (D. Colo. Aug. 15, 2011) (same)).

A party seeking an award of attorneys' fees must demonstrate that the expenses it seeks are reasonable. *See Dewey v. Hewlett Packard Co.*, No. 05-cv-01482-REB-MJW, 2007 WL 707462, at \*1 (D. Colo. Mar. 5, 2007). Therefore, counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Generally, the starting point for any calculation of reasonable attorneys' fees is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id.* at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017-18 (10th Cir. 1996). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436-37. The Court therefore exercises its "discretion in making this equitable judgment" and need not "apportion the fee award mechanically" by considering each claimed expense and determining its reasonableness overall. *Hensley*, 461 U.S. at 436-40 (holding that the Court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute).

Based on the undersigned's twenty-eight years of combined private and judicial experience and careful consideration of Mr. Driscoll's Affidavit and the issues underlying this matter, the Court finds that most of Mr. Driscoll's claimed fees are reasonable here.

*See, e.g.*, *Onesource Commercial Prop. Servs., Inc. v. City & Cnty. of Denver*, No. 10-cv-02273-WJM-KLM, 2011 WL 3583398, at *2 (D. Colo. Aug. 12, 2011). While the Court agrees that Mr. Driscoll should be compensated in the amount of $2363.00 for his time spent traveling to and from Sterling Correctional Facility, for his time spent at the prison, and for his time meeting with other Defendants' counsel regarding the Joint Motion to Dismiss [#526], the Court finds that he should not be compensated at this juncture for $306.00 for the time he spent reviewing documents and preparing for Plaintiff's deposition, as this preparation may still be useful should Plaintiff's deposition be taken in the future.

Thus, the Court finds: (1) that Mr. Driscoll's hourly compensation of $170.00 is reasonable; (2) that 13.9 hours of the 15.7 claimed hours of attorney time noted by Mr. Driscoll are reasonable; and (3) the expenses incurred by the Delta Defendants, as outlined in Mr. Driscoll's Affidavit [#558-1] are reasonable. Accordingly, the Court concludes that the Delta Defendants are entitled to an award of $2,363.00 in fees and $573.33 in costs they incurred as a result of Plaintiff's failure to attend his deposition.

**B.    Defendants Watts and Gruninger**

The Court next examines Defendant Watts and Gruninger's request for fees and costs. Defendants Watts and Gruninger submitted one affidavit, authored by their attorney Edmund Kennedy ("Kennedy") [#575]. The Affidavit [#575] includes a description of services rendered by Mr. Kennedy, by attorney Andrew Ringel ("Ringel"), and by legal assistant/paralegal Amber Tamborello ("Tamborello"), the amount of time expended by each of them in connection with the cancelled deposition, their hourly rates, their qualifications/experience, and costs expended. Defendants Watts and Gruninger seek $8,655.00 in fees ($7,200 for Mr. Kennedy, $600.00 for Mr. Ringel, and $855.00 for Ms.

Tamborello) and $284.15 in costs, for a total amount of $8,939.15.  The Court finds that Mr.

Kennedy has satisfied the requirements of Local Rule 54.3B.

Turning to the reasonableness of the hourly rates, Mr. Kennedy has practiced law

since October of 1999, has focused on civil litigation since at least September of 2001,

possesses significant experience in litigating § 1983 cases, and regularly represents district

attorneys, investigators, and law enforcement personnel, as he does in this case.  *Affidavit*

[#575] at 2-3.  He seeks an hourly rate of $200.00.  *Id.* at 2.  Mr. Ringel has practiced law

since October of 1994, has focused on civil litigation since at least August of 1996, and, like

Mr. Kennedy, possesses significant experience in litigating § 1983 cases, regularly

representing district attorneys, investigators, and law enforcement personnel, as he does

in this case.  *Id.*  He seeks an hourly rate of $200.00.  *Id.* Ms. Tamborello has been a legal

assistant/paralegal since 1997 and has worked with Mr. Kennedy, Mr. Ringel, and other

attorneys at their firm since January of 2010.  *Id.* at 3.  She seeks an hourly rate of $90.00.

*Id.* at 2.  The Court finds that the hourly rate of $200.00 is reasonable in this jurisdiction for

counsel with Mr. Kennedy's and Mr. Ringel's experiences and qualifications, and an hourly

rate of $90.00 is reasonable for a legal assistant/paralegal with Ms. Tamborello's

experience and qualifications.

Turning to the reasonableness of the hours expended, the Court has examined the

hours for which Defendants Watts and Gruninger seek reimbursement.  The Court finds

that the following hours are attributable to Plaintiff's failure to attend his deposition: 22.9

hours for Mr. Kennedy; 0.2 hours for Mr. Ringel; and 6.2 hours for Ms. Tamborello.  For all

other claimed hours, the Court finds either that the work done may be useful preparation

for a potential future deposition of Plaintiff, or else that it was unclear from the description

-11-

provided that the time could be attributed solely to the cancelled deposition.  Thus, based on the undersigned's twenty-eight years of combined private and judicial experience and careful consideration of the Affidavit and the issues underlying this matter, the Court finds that the hours enumerated above are reasonable here.

Thus, the Court finds: (1) that Mr. Kennedy's hourly compensation of $200.00 is reasonable; (2) that 22.9 hours of Mr. Kennedy's 35.7 claimed hours of attorney time are reasonable; (3) that Mr. Ringel's hourly compensation of $200.00 is reasonable; (4) that 0.2 hours of Mr. Ringel's 2.5 claimed hours of attorney time are reasonable; (5) that Ms. Tamborello's hourly compensation of $90.00 is reasonable; (6) that 6.2 hours of Ms. Tamborello's 9.0 hours claimed hours of paralegal time are reasonable; and (7) that $266.55 of the expenses incurred, as outlined in Mr. Kennedy's Affidavit, [#575 at 2], and attachment, [#575-1 at 40-41], are reasonable.[4]  Accordingly, the Court concludes that Defendants Watts and Gruninger are entitled to an award of $4,678.00 in fees and $266.55 in costs they incurred as a result of Plaintiff's failure to attend his deposition.

## C.    The State Defendants

The Court next examines the State Defendants' request for fees and costs.  The State Defendants submitted one affidavit, authored by their attorney Patrick L. Sayas ("Sayas") [#576-1].  The Affidavit [#576-1] includes a description of services rendered by Mr. Sayas, the amount of time expended by him in connection with the cancelled deposition, his hourly rate, his qualifications/experience, and costs expended.  Mr. Sayas

---

[4]  The only expense not granted to Mr. Kennedy at this time is that for copying charges ($16.60), as it is not clear that these copies will not be useful as preparation for a potential future deposition of Plaintiff.

seeks $376 in fees and $77.00 in costs, for a total amount of $453.00.  The Court finds that Mr. Sayas has satisfied the requirements of Local Rule 54.3B.

Turning to the reasonableness of the hourly rates, Mr. Sayas has practiced law since 1991 and has worked as a civil litigator for about twenty years.  *Affidavit* [#576-1] at 3.  He seeks an hourly rate of $94.00, the rate at which his office bills for its attorneys.  *Id.*  The Court finds that the hourly rate of $94.00 is reasonable in this jurisdiction for counsel with Mr. Sayas' experience and qualifications.

Turning to the reasonableness of the hours expended, the Court has examined the hours for which Mr. Sayas seeks reimbursement, which consist solely of the four hours of round-trip travel time to and from the location of the failed deposition.  The Court finds that the four requested hours are reasonable.

Thus, the Court finds: (1) that Mr. Sayas' hourly compensation of $94.00 is reasonable; (2) that 4.0 hours of Mr. Sayas' 4.0 claimed hours of attorney time are reasonable; and (3) that all requested costs, consisting of $77.00 for Mr. Sayas' hotel bill for one night, are reasonable.  Accordingly, the Court concludes that the State Defendants are entitled to an award of $376.00 in fees and $77.00 in costs they incurred as a result of Plaintiff's failure to attend his deposition.

**D.     The Denver Defendants**

The Court next examines the Denver Defendants' request for fees and costs.  The Denver Defendants submitted the declaration of their attorney Matthew Hader ("Hader") [#577-2].  The Declaration [#577-2] includes a description of services rendered by Mr. Hader, the amount of time expended by him in connection with the failed deposition, his hourly rate, his qualifications/experience, and costs expended.  The Denver Defendants

seek between $6,412.50 and $7,200.00 in fees and $156.77 in costs.  The Court finds that

Mr. Hader has satisfied the requirements of Local Rule 54.3B.

Turning to the reasonableness of the hourly rates, Mr. Hader was admitted to

practice law in 2004 and has worked as a municipal attorney first in Chicago and now in

Denver.  *Declaration* [#577-2] at 3.  He has appeared in and defended more than 120

federal civil rights cases as counsel or co-counsel for individual defendants and their

municipal employers.  *Id.*  Mr. Hader notes that because he is employed by the City and

County of Denver, he does not have an hourly billable rate.  *Motion* [#577] at 4.  He also

notes that he has never filed a fee petition seeking a specific hourly rate in any case in

which he has appeared as counsel and thus that there has never been a judicial

determination of an hourly market rate for his services.  *Declaration* [#577-2] at 3.  While

noting that it is "difficult to locate a similarly situated civil rights defense attorney of equal

experience, skill and reputation," Mr. Hader provides a thorough analysis concluding that

a reasonable baseline hourly rate for his services is in the range of $285-$320.  *Motion*

[#577] at 5.  However, given the uncertainty of the rate at which Mr. Hader's services

should be compensated, the Court finds that it is most reasonable to look to the billing rates

of the other attorneys in this particular matter.  As noted above, Mr. Driscoll's hourly rate

is $170.00, Mr. Kennedy and Mr. Ringel's hourly rates are $200.00 each, and Mr. Sayas'

hourly rate is $94.00.  Taking into account Mr. Hader's experiences and qualifications, his

analysis concluding that his services should be compensated at a hourly rate of $285-$320,

and the hourly rates of other attorneys in this matter, the Court concludes that Mr. Hader

should be compensated at a rate of $200.00 per hour in this matter.

Turning to the reasonableness of the hours expended, the Court has examined the

hours for which Mr. Hader seeks reimbursement. *Declaration* [#577-2] at 6. The Court finds that all of the 22.5 hours of requested time may be attributed to Plaintiff's failure to attend his deposition. Based on the undersigned's twenty-eight years of combined private and judicial experience and careful consideration of the Declaration and the issues underlying this matter, the Court finds that the hours enumerated and described by Mr. Hader are reasonable here.

Thus, the Court finds: (1) that an hourly rate of $200.00 is reasonable for Mr. Hader's services; (2) that 22.5 hours of the requested 22.5 hours of attorney time are reasonable; and (3) that the total amount of requested costs, consisting of $145.77 for mileage reimbursement, is reasonable. Accordingly, the Court concludes that the Denver Defendants are entitled to an award of $4,500.00 in fees and $145.77 in costs they incurred as a result of Plaintiff's failure to attend his deposition.

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Reconsider [#562] is **DENIED**.

IT IS FURTHER **ORDERED** that Defendants' Motions for Fees and Costs [#558, #575, #576, #577] are **GRANTED in part and DENIED without prejudice in part**, as follows:

1.  The Delta Defendants' Motion [#558] is **granted** to the extent that Plaintiff shall pay the Delta Defendants a total of $2,936.33 (consisting of $2,363.00 in fees and $573.33 in costs).

2.  Defendant Watts and Gruninger's request [#575] is **granted** to the extent that

Plaintiff shall pay Defendant Watts and Gruninger a total of $4,944.55 (consisting of $4,678.00 in fees and $266.55 in costs).

3.      The State Defendants' Motion [#576] is **granted** to the extent that Plaintiff shall pay the State Defendants a total of $453.00 ($376.00 in fees and $77.00 in costs).

4.      The Denver Defendants' Motion [#577] is **granted** to the extent that Plaintiff shall pay the Denver Defendants a total of $4,645.77 ($4,500.00 in fees and $145.77 in costs).

5.      All other requested relief is **DENIED without prejudice**.

IT IS FURTHER **ORDERED** that each group of Defendants shall file a Notice containing the name and address of the person or entity to whom any check, money order, or other form of payment may be made payable **on or before January 28, 2014**.

IT IS FURTHER **ORDERED** that Plaintiff shall make the payments due to Defendants, as listed above, **on or before March 14, 2014**. **Failure to do so will result in a recommendation that any Defendant not paid <u>in full</u> by that date be dismissed from this case**.

IT IS FURTHER **ORDERED** that all discovery in this matter shall remain **STAYED** until further order of the Court. *See Order* [#553] at 8.

Dated:  January 14, 2014                    BY THE COURT:

                                            Kristen L.  Mix
                                            United States Magistrate Judge