IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02862-REB-KLM

DEAN CARBAJAL,

    Plaintiff,

v.

CAROL WARNER, in her individual capacity,
DAVID ROMERO, in his individual capacity,
JOE QUINTANA, in his individual capacity,
BILL RAILEY, in his individual capacity,
CHRIS WELDON, in his individual capacity,
BENJAMIN SCHROEDER, in his individual capacity,
GILBERTO LUCIO, in his individual capacity,
JAMES DIXON, in his individual capacity,
ADAM BARRETT, in his individual capacity,
JOEL SMITH, in his individual capacity,
JESSE REMBERT, in his individual capacity,
JAY LOPEZ, in his individual capacity,
MICHAEL O'NEILL, in his individual capacity,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado,
DARIN DESEL, Police Officer for the Denver Police Department, in his individual capacity,
FRED MCKEE, Sheriff for the Delta Sheriff's Department, in his individual capacity,
PERRY SPEELMAN, Police Officer for the Denver Police Department, in his individual capacity, and
JEFFREY WATTS, Investigator for the Second Judicial District, in his individual capacity,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant Jeffrey Watts' ("Watts") **Motion for a**

**Protective Order Concerning Plaintiff's Subpoena to Produce Documents Directed**

-1-

**at Sprint Telecommunications** [#498][1] (the "Motion for Protective Order");[2] on Defendants City and County of Denver, Gilberto Lucio, James Dixon, Adam Barrett, Joel Smith, Jesse Rembert, Jay Lopez, Michael O'Neill, Darin Desel, and Perry Speelman's (the "Denver Defendants") **Motion to Quash Subpoena** [#504]; and on the Denver Defendants' **Motion to Quash Subpoena** [#505]. Plaintiff filed Responses [#513, #515] in opposition to the Motions, and Defendants filed Replies [#516, #524].

This matter is also before the Court on Defendant Watts' **Motion to Reassert Motion for a Protective Order Concerning Plaintiff's Subpoena to Produce Documents Directed at Sprint Telecommunications** [#645]; on the Denver Defendants' **Motion to Reassert Motions to Quash Subpoena [Docs. #504 and 505]** [#647]; and on Plaintiff's **Motion to Resurrect Subpoenas [#528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, and 540] and for Copies of Previous Discovery Motions [#498, 500, 504, 505, 512, 513, 515] With Leave to Amend His Responsive Pleadings to Respond to Defendants' Motions [#498, 500, 504, 505] That Have Just Been Resurrected Without Service of Process and Proper Notice** [#649] ("Plaintiff's Motion"). The Court has considered the Motions, the Responses, the Replies, the case record, and the applicable law, and is fully advised in the premises.

On June 4, 2013, the Court directed the United States Marshal to serve a number of subpoena duces tecum on nonparties on behalf of Plaintiff, who proceeds in this matter

---

[1] "[#498]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This Motion was originally also asserted by Edward Gruninger, who since has been dismissed as a defendant in this matter. *Order* [#618].

as an incarcerated pro se litigant. *Order* [#497] at 2. The subpoenas were duly served,[3] *see* [##528-540], and Defendant Watts' Motion for Protective Order [#498] and the Denver Defendants' Motions to Quash [#504, #505] were thereafter filed and fully briefed. Before all of the nonparties responded to the subpoenas and before the Denver Defendants' and Defendant Watts' Motions [#498, #504, #505] were adjudicated, discovery was stayed based on issues unrelated to the subpoenas. *Order* [#553] at 8. The Court later denied these discovery Motions [#498, #504, #505] and others without prejudice due to the stay. *Minute Order* [#582] at 2. The parties were informed at that time that "[w]hen and if the stay of discovery is removed, pending discovery motions may be timely refiled, <u>if necessary</u>, **within thirty (30) days** of the issuance of the order lifting the stay." *Id.* On January 26, 2015, the District Judge lifted the stay, *Order* [#633], and the undersigned thereafter held a Status Conference, in which the parties were directed to file motions reasserting any of the previously-denied discovery motions that still required adjudication. *Minute Entry* [#643]. In response, the parties filed three Motions [#645, #647, #649].

Before proceeding to the merits of the substantive motions, the Court addresses preliminary issues. First, the Court **grants** the Denver Defendants' and Defendant Watts' Motions to Reassert [#645, #647]. Accordingly, the Court considers the merits of Defendant Watts' Motion for Protective Order [#498] and the Denver Defendants' Motions to Quash [#504, #505] below.

Second, to the extent that Plaintiff seeks copies of the briefing on the discovery motions, the Court **grants in part** this request. The Court is not required to provide the parties with additional copies of filings. However, as a one-time courtesy, the Court will

---

[3] Exceptions to this service will be discussed below.

direct the Clerk of Court to mail to Plaintiff copies of the motions and briefs that are issue in connection with this Order. *See* [#498, #504, #505, #513, #515, #516, #524]. The Court will not direct the Clerk of Court to send additional copies of filings in this lawsuit that are presently not at issue. *See* [#500, #512].

Third, to the extent that Plaintiff seeks leave to amend his responses to the Motion for Protective Order [#498] and Motions to Quash [#504, #505], the request is **denied**. These Motions were fully briefed prior to imposition of the stay in this matter, and Plaintiff has provided no explanation for why this briefing is insufficient and should be amended.

### A. Defendant Watts' Motion for Protective Order

The Court first addresses Defendant Watts' Motion for Protective Order [#498]. The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). A protective order may issue upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). The good cause standard of Rule 26(c) is not met by the conclusory statements of the moving party. *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002)).

The subpoena at issue here is directed to the Custodian of Records for Sprint Telecommunications and seeks:

> Dean Carbajal's complete, unedited, unredacted Sprint Telecommunications file as kept in the ordinary course of business, from January 1, 2004 through the date of your response to this subpoena. This shall include but is not limited to: documentation of all phone numbers registered under social

-4-

>  security no. [redacted]; documentation for all applications for, or, registration of pen registers with supporting evidence or affidavits; all e-mails or correspondence with law enforcement concerning Dean Carbajal's accounts, to include all notes and memorandums related thereto; all warrants and applications for copies of Carbajal's phone records filed, with or without a warrant; and all correspondence sent to or from law enforcement, or other persons, re: Carbajal's Sprint phone accounts.

*Subpoena to Produce Documents, Information, or Objects* [#536] at 2.

Plaintiff asserts that Defendant Watts lacks standing to seek a protective order. *Response* [#513] at 3-4. "Generally, a party does not have standing to challenge a subpoena issued to a third party, absent some personal or proprietary interest or privilege in the materials subpoenaed." *Barton v. Tomecek*, No. 11-CV-619-CVE-TLW, 2012 WL 3730066, at *3 (N.D. Okla. Aug. 28, 2012); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008). Defendant Watts is a party to thsi case and asserts the law enforcement investigative privilege.[4] However, this privilege belongs to the government alone and must be asserted by it. *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 693 (D. Colo. 1993) (citing *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (identifying the law enforcement investigative privilege as one of the

---

[4] The law enforcement investigative privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (quoting *Black v. Sheraton Corp.*, 564 F.2d 531 (D.C. Cir. 1977)). "To assert the law enforcement evidentiary privilege, the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Winner*, 641 F.2d at 831. "The party claiming the privilege has the burden of establishing these elements." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, Civ. A. No. 93-2471-GTV, 1995 WL 104835, at *1 (D. Kan. Mar. 7, 1995) (citation omitted). "The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation and otherwise to prevent interference with an investigation." *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 693 (D. Colo. 1993) (citations and internal quotation marks omitted). "The privilege may be overridden by the movant's substantial need for the documents and [his] inability to obtain their substantial equivalent by other means." *Id.* (citations and internal quotation marks omitted).

privileges "exclusively reserved for the Government")). Without citation to authority, Defendants Watts replies that he has:

> . . . standing to [assert this privilege] as [a] Defendant[ ] in this litigation, and as [a] former employee[ ] of the Office of the District Attorney for the Second Judicial District. Moreover, it would do nothing more than elevate form over substance for this Court to require either Mr. Fuller[, who provided the government's affidavit in support of the Motion for Protective Order,] or the District Attorney for the Second Judicial District to make the same assertions in another motion for protective order directed at the same subpoena and supported by the same arguments and evidence.

*Reply* [#516] at 3.

In this matter, the Second Judicial District is no longer a defendant, and the only remaining claims against Defendant Watts are asserted against him in his individual capacity. Defendants Watts concedes that he is not a current employee of the Second Judicial District. In other words, it appears that Defendant Watts has no authority to assert a privilege that belongs exclusively to the government. The Court is aware of no legal authority that permits him to do so under the circumstances of this case and, as stated above, Defendant Watts has cited none. As Defendant Watts notes, the Second Judicial District may eventually assert the same argument and present the same evidence in support of its own motion for a protective order. It is clear that, as the government entity here concerned, it may do so on its own behalf. *See Winner*, 641 F.2d at 831.

Accordingly, Defendant Watts' Motion for Protective Order [#498] is **DENIED**.[5]

**B. The Denver Defendants' Motions to Quash**

---

[5] Nothing in this Order prevents the Second Judicial District or other appropriate governmental entity from asserting the law enforcement privilege and filing a motion to quash or other appropriate motion. *See S.E.C. v. Dowdell*, 144 F. App'x 716, 722 (10th Cir. 2005) ("Unlike Rule 45, Federal Rule of Civil Procedure 26(c) expressly limits who may move for a protective order to parties or the person from whom discovery is sought.").

-7-

The Denver Defendants move to quash subpoenas filed on two nonparty law firms: Killmer, Lane & Newman, LLP ("KL&N") and Rathod & Mohamedbhai, LLC ("R&M"). *Motions* [#504, #505]. Plaintiff broadly seeks the production of all discovery material from litigation conducted by KL&N and R&M in connection with three cases: (1) *Ortega v. City and County of Denver*, No. 11-cv-02394-WJM-CBS (D. Colo. filed Sept. 13, 2011); (2) *Graber v. Miller*, No. 09-cv-01029-JLK-MJW (D. Colo. filed May 4, 2009); and (3) *Moore v. Miller*, No. 10-cv-00651-JLK-MJW (D. Colo. filed Mar. 19, 2010). *Motion* [#504] at 2; *Motion* [#505] at 3. The City and County of Denver is a named defendant in each of these matters. *Motion* [#504] at 3; *Motion* [#505] at 3. R&M has already at least partially complied with the subpoena by producing copies of all publicly disclosed materials/filings sought by Plaintiff in connection with the *Ortega* matter. *Motion* [#505] at 2. KL&N to date has not produced any documents in connection with the subpoena served on it. *Motion* [#504] at 2.

The Denver Defendants make several arguments regarding why these two subpoenas should be quashed.[6] However, the law in this district is that a party lacks standing to seek to quash a subpoena served on a third party, except as to claims of privilege or on a showing that a privacy issue is implicated. *I'mnaedaft, Ltd. v. The Intelligent Office Sys.*, No. 08-cv-01804-LTB-KLM, 2009 WL 1537975, at *4 (D. Colo. May 29, 2009); *Mona Vie, Inc. v. Amway Corp.*, No. 08-cv-02464-WDM-KLM, 2009 WL 524938, at *2 (D. Colo. Mar. 2, 2009); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo.1997);

---

[6] Plaintiff's argument asserting that the Denver Defendants are not permitted to make any argument because the Motions were untimely is without merit. *Response* [#515] at 1. Fed. R. Civ. P. 45(d)(2)(B) provides a fourteen-day deadline to serve objections to production of the requested documents. The rule does not set a deadline by which motions to quash must be filed with the Court.

*Broadcort Capital Corp. v. Flagler*, 149 F.R.D. 626, 628 (D. Colo.1993). Accordingly, the Denver Defendants lack standing to make most of the arguments made (regarding, for example, the return of documents to Plaintiff's mother) in support of quashing the subpoenas. See *Motion* [#504] at 5-6; *Motion* [#505] at 5-6.

The Denver Defendants do raise a privacy issue, however, because many of the documents sought by Plaintiff are subject to protective orders entered in *Ortega*, *Graber*, and *Moore*. *Motion* [#504] at 3; *Motion* [#505] at 3; *Ex. A, Graber & Moore Protective Orders* [#504-1]; *Ex. A, Ortega Stipulated Protective Order* [#505-1]. In *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), the Tenth Circuit recognized that protective orders "allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, 'to secure the just, speedy, and inexpensive determination of every action.'" Therefore, in light of the important policy considerations underlying protective orders, the courts have found that a protective order that concerns the preservation of privileges and confidentiality endures beyond the closing of a case, and other courts should not disregard such a protective order. *See In Re Commercial Fin. Servs., Inc.*, 247 B.R. 828, 844 (Bankr. N.D. Okla. 2000) (citing *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 781-82 (1st Cir. 1988); *State of Florida v. Jones Chems., Inc.*, No. 90-875-CIV-J-10, 1993 WL 388645, at *2-3 (M.D. Fla. 1993)). Moreover, the well-established rule is that only the court that enters a protective order retains the power to modify it. *See United Nuclear Corp.*, 905 F.2d at 1427. Where, as here, the case involves materials and information which are restricted from public access, such as

materials produced under a protective order, *United Nuclear* directs that once the issue is properly raised in the court that entered the protective order, it must weigh the rights of the private party litigants who produced the materials and the reasons and policies for the restrictions against the interests of collateral and other litigants in disclosure of such material. *United Nuclear*, 905 F.2d at 1428. The correct procedure for a party seeking to challenge, modify, or enforce that order is to intervene in the case in which the order was issued. *See id.* at 1427; *Flint Hills Scientific, LLC v. Davidchack*, 2000 WL 33314112, at *2 (D. Kan. Mar. 27, 2000).

The Court will not allow Plaintiff to circumvent the protections provided in the protective orders in *Ortega*, *Graber*, and *Moore* by obtaining the Denver Defendants' privileged and/or confidential documents from KL&N and R&M. Indeed, in *United Nuclear*, the court noted that "federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding . . . [and] a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." 905 F.2d at 1428 (citing *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1300 (7th Cir. 1980)). Moreover, the undersigned lacks authority to modify the protective orders in *Ortega*, *Graber*, and *Moore* to allow for the discovery of these documents, or even to order that the documents be produced to Plaintiff pursuant to the protective orders, because the protective orders were not entered in the present litigation. *See Benton v. Bd. of Cnty. Comm'rs*, No. 06-cv-01406-PSF-MEH, 2007 WL 2071638, at *1 (D. Colo. July 16, 2007) ("[T]he Court will not require the production of any documents actually designated as confidential in [a separate litigation], nor any privileged documents. The court that entered the protective order in that case has jurisdiction to address the issue

of production of confidential documents."); *Kahle v. Adams County*, No. 04-cv-01536-LTB-CBS, 2007 WL 2381403, at *1 (D. Colo. Aug. 16, 2007) (recognizing court's ongoing jurisdiction over the protective order it entered). To the extent that KL&N and R&M are in possession of documents that are responsive to the subpoenas and not covered by the protective orders entered in *Ortega*, *Graber*, and *Moore*, the Court finds that these documents should be produced.

Accordingly, the Motions to Quash [#504, #505] are **granted in part**, to the extent that KL&N and R&M shall not produce documents that are covered by the protective orders entered in *Ortega*, *Graber*, and *Moore*.

### C.    Plaintiff's Motion

The only issue not yet addressed in Plaintiff's Motion [#649] is the resurrection of subpoenas served on nonparties before this case was stayed. Because the stay was implemented before all of the nonparties fully responded to the subpoenas, and because the stay has now been lifted, the nonparties must be informed that responses are needed to the original subpoenas. The Court sets a new deadline by which the nonparties must respond to the subpoenas by either making the requested production, by making objections to production or by filing motions to quash. Accordingly, Plaintiff's Motion is **granted in part** to the extent delineated in the Conclusion of this Order.

### D.    Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Denver Defendants' and Defendant Watts' Motions to Reassert [#645, #647] are **GRANTED**.

IT IS FURTHER **ORDERED** that Defendant Watts' Motion for Protective Order

[#498] is **DENIED**.

IT IS FURTHER **ORDERED** that the Denver Defendants' Motions to Quash [#504, #505] are **GRANTED in part** and **DENIED in part**. The Motions to Quash are **granted** to the extent that KL&N and R&M shall not produce documents that are covered by the protective orders entered in *Ortega*, *Graber*, and *Moore*. The Motions to Quash are **denied** as to all other relief sought.[7]

IT IS FURTHER **ORDERED** that Plaintiff's Motion [#649] is **GRANTED in part and DENIED in part**. The Motion is **granted** to the extent that the Clerk of Court shall mail to Plaintiff copies of the following motions and briefs: #498, #504, #505, #513, #515, #516, #524. The Motion is **denied** to the extent that the Clerk of Court shall **not** send copies of the following filings at this time: #500, #512. The Motion is further **denied** to the extent that Plaintiff seeks leave to amend his responses to the Motion for Protective Order [#498] and Motions to Quash [#504, #505]. The Motion is further **denied** to the extent that Plaintiff seeks to resurrect the subpoena to HSBC Auto Finance, as that subpoena was returned unexecuted by the United States Marshal because the Marshal "cannot serve a Post Office Box. [The Marshal] require[s] an actual, physical address to serve an HSBC representative." *Proof of Service* [#539]. The Motion is further **granted** to the extent that the Clerk of Court is directed to do as follows:

(1) Mail copies of #528, #633, and this Order to Nonparty Seventh Judicial District at the address listed in #528.

(2) Mail copies of #529, #633, and this Order to Nonparty KL&N at the address listed

---

[7] This ruling does not preclude KL&N and R&M from asserting other arguments on their own behalf as to why the requested documents should not be produced.

in #529.

(3) Mail copies of #530, #633, and this Order to Nonparty M&M Connections Bail Bonds at the address listed in #530.

(4) Mail copies of #531, #633, and this Order to Nonparty Holland, Holland, Edwards, Grossman P.C. at the address listed in #531.

(5) Mail copies of #532, #633, and this Order to Nonparty University of Colorado, Denver, at the addressed listed in #532.

(6) Mail copies of #533, #633, and this Order to Nonparty R&M at the address listed in #533.

(7) Mail copies of #534, #633, and this Order to Nonparty Local 55 Carpenter's Union at the address listed in #534.

(8) Mail copies of #535, #633, and this Order to Nonparty Internal Revenue Service at the address listed in #535.

(9) Mail copies of #538, #633, and this Order to Nonparty Bakers Concrete Construction, Inc. at the address listed in #538.

(10) Mail copies of #540, #633, and this Order to Nonparty Sun Trust Mortgage at the address listed in #540.

(11) Mail copies of #536, #633, and this Order to Nonparty Sprint Telecommunications at the address listed in #536.

The Court reiterates that the subpoenas listed above were previously served by the United States Marshal in 2013 and that this mailing is merely to inform these nonparties that the stay in this matter has been lifted and they must therefore respond to the subpoenas. This mailing does not constitute re-service of the subpoenas, as re-service is

-13-

not necessary.

IT IS FURTHER **ORDERED** that, **to the extent they have not already responded to the subpoenas prior to the implementation of the stay in this matter, the nonparties listed above shall respond to the subpoenas on or before May 28, 2015, either by producing the requested documents, objecting to production or filing motions to quash in the above-captioned lawsuit.** If a nonparty responded to the subpoena prior to implementation of the stay, the nonparty need take no further action.

Dated: April 28, 2015

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge