IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02862-CMA-KLM

DEAN CARBAJAL,

    Plaintiff,

v.

CAROL WARNER, in her individual capacity,
DAVID ROMERO, in his individual capacity,
JOE QUINTANA, in his individual capacity,
BILL RAILEY, in his individual capacity,
CHRIS WELDON, in his individual capacity,
BENJAMIN SCHROEDER, in his individual capacity,
GILBERTO LUCIO, in his individual capacity,
JAMES DIXON, in his individual capacity,
ADAM BARRETT, in his individual capacity,
JOEL SMITH, in his individual capacity,
JESSE REMBERT, in his individual capacity,
JAY LOPEZ, in his individual capacity,
MICHAEL O'NEILL, in his individual capacity,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado,
DARIN DESEL, Police Officer for the Denver Police Department, in his individual capacity,
FRED MCKEE, Sheriff for the Delta Sheriff's Department, in his individual capacity,
PERRY SPEELMAN, Police Officer for the Denver Police Department, in his individual capacity, and
JEFFREY WATTS, Investigator for the Second Judicial District, in his individual capacity,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Motion to Compel Production and/or**

**Entry of a Contempt Order** [#653]¹ (the "Motion to Compel");² on Plaintiff's **Amended Motion for Leave to Have a Legal Box For Each of Plaintiff's Cases That He Is Presently Litigating Pro Se** [#659] (the "Motion for a Box");³ on Plaintiff's **Motion to Open Discovery** [#731] (the "Motion for Discovery");⁴ on Plaintiff's **Motion for Sanctions and Emergency Hearing** [#733] (the "Motion for Sanctions");⁵ on Plaintiff's **Third Motion for Extension of Time** [#740] (the "Motion for Extension");⁶ and on Plaintiff's **Motion for Stay of Summary Judgment Proceedings Pending** [sic] [#741] (the "Motion to Stay").⁷ The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law. Based on the following, the Motion to Compel [#653] is **DENIED as moot**; the Motion for a Box [#659] is **DENIED without prejudice**; the Motion for Discovery [#731] is **DENIED in part and DENIED without prejudice in part**; the Motion for Sanctions [#733] is **DENIED**; the Motion for Extension [#740] is **DENIED in part and DENIED as moot in part**; and the Motion to Stay [#741] is **DENIED as moot**.

---

¹ "[#653]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

² Defendants did not file a Response.

³ Defendants filed Responses [#718, #719, #721], and Plaintiff filed a Reply [#722],

⁴ Defendants filed Responses [#735, #736, #738, #739] in opposition to the Motion for Discovery [#731]. Plaintiff filed Replies [#747, #752].

⁵ Defendants filed Responses [#735, #743, #744] in opposition to the Motion for Sanctions [#733]. Plaintiff filed a Reply [#747].

⁶ Defendants filed Responses [#748, #749, #750] in opposition to the Motion for Extension [#740].

⁷ Defendants filed Responses [#748, #749, #750] in opposition to the Motion to Stay [#741].

**A. Motion to Compel**

The full title of the Motion to Compel [#653] is "Plaintiff's Response to Denver Defendants['] Motions to Quash [DOC # 504, 505] and Motion to Compel Production and/or Entry of a Contempt Order." Plaintiff's Motion to Compel [#653] is denied because the merits of Plaintiff's request have already been determined by the Court. The Court previously addressed this filing in connection with its adjudication of Defendants' Motions to Quash [#504, #505]. *See Order* [#654] at 4 (determining that Plaintiff should not be permitted to amend his previously-filed response, which this Response and Motion to Compel [#653] was intended by Plaintiff to do). The substance of Plaintiff's request to compel production of certain documents was addressed and determined when the Court adjudicated Defendants' Motions to Quash [#504, #505], which sought to quash the subpoenas issued by Plaintiff to obtain the same documents. *See Order* [#654]. The Court sees no basis for reconsidering its prior ruling. Accordingly, the Motion to Compel [#653] is **denied as moot**.

**B. Motion for a Box**

Plaintiff, who is proceeding pro se,[8] is presently incarcerated by the Colorado Department of Corrections ("CDOC") at Arkansas Valley Correctional Facility. He states that he is currently litigating multiple cases (six cases in federal court and three cases in

---

[8] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

state court)[9] and that the volume of written legal materials he has acquired for each case exceeds the volume of the single 2' x 3' legal box he is permitted to have by CDOC. *Motion* [#659]. In short, Plaintiff seeks injunctive relief in the form of an order from the Court permitting him to have two additional 2' x 3' boxes for his legal materials.[10]

The amount of space permitted for legal materials kept by offenders incarcerated in CDOC facilities is governed by Administrative Regulation 850-06(IV)(G)(3)(a). This regulation provides:

> A 2.0 cubic foot box for legal papers [is permitted], which is available for sale through the DOC Canteen. In the interest of effective property management and fire safety concerns, facilities shall limit the amount of personal legal papers that an offender may maintain in his/her possession to a maximum of two cubic feet. It is the offender's responsibility to determine what legal papers he/she will retain to comply with this restriction. Excess legal material shall not be stored by any facility, nor shall anything other than legal papers be stored in this box. Property found stored within a legal box deemed not personal legal papers shall be considered contraband.

The Tenth Circuit has found that "prison rules permitting inmates two-cubic feet of legal materials in their cells [are] 'reasonable and necessary for orderly maintenance of the facility and proper security.'" *Green v. Johnson*, 977 F.2d 1383, 1390 (10th Cir. 1992) (citing *Cruz v. Hauck*, 515 F.2d 322, 333 (5th Cir. 1975) (finding that the restriction of legal materials in cell was reasonable in light of security and fire dangers)).

---

[9] Since the filing of the Motion [#659], one of Plaintiff's other federal lawsuits, 12-cv-02257-CMA-KLM, has been closed, but Plaintiff's appeal of this lawsuit is currently pending with the Tenth Circuit Court of Appeals.

[10] This is Plaintiff's second request for the same relief. *See Motion for Leave to Have a Legal Box for Each of Plaintiff's Cases That Are Presenting Being Litigated* [#631]. Plaintiff's original request was not framed as a request for injunctive relief. The Court denied the initial motion without prejudice and directed Plaintiff to address the elements of a preliminary injunction should he choose to re-file. *See Order* [#641] at 2, 8. Plaintiff has complied with that directive in the present Motion for a Box [#659].

Fed. R. Civ. P. 65(a) and (b) govern preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citing 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2951 (2d ed.1995)). Here, because Defendants were given notice and an opportunity to respond, the Court analyzes the Motion [#659] under the standards for issuance of a preliminary injunction.

Injunctive relief is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish the following: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Id.* at 1267. Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Id.* at 1258-59 (citations omitted). These disfavored injunctions are "more closely

scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

As noted above, Plaintiff seeks an injunction requiring CDOC to allow him to obtain two additional legal boxes.[11] Thus, the relief Plaintiff seeks would alter the status quo rather than preserve it and would also require CDOC, a non-party, to act. Therefore, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier*, 427 F.3d at 1261. Accordingly, the Motion [#659] must be denied unless Plaintiff's "right to relief [is] clear and unequivocal." *Id.* at 1258.

The law is well-established that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269-70 n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). Indeed, the Court of Appeals for the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564

---

[11] According to Administrative Regulation 850-06(IV)(G)(3)(a), Plaintiff must purchase legal boxes from his facility's canteen. Plaintiff does not take issue with the regulation. The requested injunction merely seeks permission to have and store two additional legal boxes which Plaintiff would purchase himself. *See Motion* [#659] at 13.

F.2d 388, 392 (10th Cir. 1977) (quotation omitted). As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

Plaintiff seeks an order against a non-party, CDOC, and its non-party employees. The Tenth Circuit applies a heightened standard for litigants seeking injunctive relief against non-parties. *Andrews v. Andrews*, 160 F. App'x 798, 800 (10th Cir. 2005). "While the non-party status of an injunction's target may [not] be a conclusive impediment, it nevertheless heightens the hurdle that must be cleared to obtain the injunction: not only must the motion advance considerations satisfying the traditional injunction factors . . . but those considerations must also constitute . . . 'appropriate circumstances' . . . to justify issuing an injunction against a non-party." *Id.* The "appropriate circumstances" referred to by the *Andrews* court require a non-party to be "in a position to frustrate [or facilitate] the implementation of a court order or the proper administration of justice." *Id.* at 799 (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)).

Here, Plaintiff has failed to demonstrate that he will suffer irreparable injury unless the injunction issues. *See Schrier*, 427 F.3d at 1258. For example, in *Pope v. Carns*, No. CIV-07-1331-F, 2009 WL 3614789, at *6 (W.D. Okla. Oct. 28, 2009), the incarcerated plaintiff asked the court to issue an injunction against his non-party prison facility, "requiring it to allow access to all necessary cases and state statutes." The court there held that "Plaintiff does not indicate what administrative measures he has taken to achieve the relief sought by his request for injunctive relief, and his failure to employ those available

remedies effectively prevents him from showing . . . irreparable harm . . . ." *Pope*, 2009 WL 3614789, at \*5. Similarly, here, because Plaintiff has not shown he has attempted to use CDOC's internal administrative procedures to fulfill his alleged need, *see Administrative Regulation ("AR") 850-04*,[12] he has not met the first factor of the preliminary injunction test, i.e., that he will suffer irreparable injury *unless* the injunction issues. The Court therefore finds that Plaintiff's request is premature.

Accordingly, the Motion for a Box [#659] is **denied without prejudice**.

### C. Motion for Discovery

In the Motion for Discovery [#731], Plaintiff asserts that the Denver Defendants and the State Defendants[13] concealed information from or provided false information to Plaintiff. Before determining whether discovery should be reopened, the Court examines Plaintiff's assertions regarding Defendants' discovery conduct and the impact it allegedly had on the discovery process.

First, Plaintiff argues that he was not provided with information regarding a police officer named Anthony Schluck ("Schluck") "until the Summary Judgment phase of proceedings" in September 2015. *See Reply* [#747] at 1. Although Plaintiff's discussion primarily focuses on Officer Schluck, he also mentions Defendants' alleged concealment of another police officer named George Gann, Jr. *See Motion* [#731] at 5.

---

[12] AR 850-04 "establish[es] requirements and procedures for offenders to file informal complaints and informal grievances." AR 850-04(II). Plaintiff's request for additional legal boxes does not appear to fall within any of the listed exceptions to the grievance process. *See* AR 850-04(IV)(D)(2).

[13] The Motion for Discovery does not appear to be directed at the Delta Defendants or Defendant Watts, but those parties also filed Responses [#738, #739] to the Motion for Discovery [#731] to the extent they could be impacted if discovery were reopened in this matter.

-8-

The Court ordered a final set of written discovery responses to be provided by Defendants to Plaintiff no later than August 4, 2015. *Minute Order* [#711]. Plaintiff states that he was unable to review these materials, including materials which mention Officers Schluck and Gann, until he was returned to his prison facility following a federal court civil trial in a separate action.[14] Plaintiff's argues that he needs additional discovery in connection with Officers Schluck and Gann.

Contrary to Plaintiff's argument, Defendants assert that Officer Schluck was revealed to Plaintiff prior to August 4, 2015. In support, they provide the Denver Defendants' Response to Plaintiff's Second Request for Production [#735-1], which includes a Certificate of Service to Plaintiff dated May 13, 2015. In this Response [#735-1], the Denver Defendants noted that they were providing a copy of a document titled "General Sessions Summons and Complaint #GD-136117 (bates no.: DENVER006296)." [#735-1] at 4 ¶ Z. This document twice shows initials which appear to be "A S," one set of which is far more legible than the other. [#735-2]. Although Plaintiff could have earlier followed up on these initials to determine to whom they belonged, the Court cannot find that this was enough to put him on notice of the existence of Officer Schluck.

Defendants further assert that, in the same set of documents produced on May 13, 2015, they provided a copy of a document titled "Incident Detail Report # DPD-09-0250125 (bates no.: DENVER000648-000650)." [#735-1] at 3 ¶ G. This document lists "Schluck A 04040 = CIT (P04040)" and "Gann Jr, G 05017 = CIT (P05017)" as the police personnel

---

[14] Plaintiff does not state on which date he was transported from his facility for the trial, but the trial began on August 10, 2015, and concluded on August 18, 2015. It is also unclear precisely on which day he was returned to his facility. He only states that he was unable to review the materials provided to him on August 4, 2015, until September 2015. *See Reply* [#747] at 1.

assigned to the incident involving Plaintiff which occurred on April 28, 2009. [#735-3]. The Court finds that this information was enough to put Plaintiff on notice of the existence of both Officers Schluck and Gann and their involvement in the incident report as of May 2015.

Defendants next direct the Court's attention to the Denver Defendants' First Supplemental Response to Plaintiff's Second Request for Production [#735-4], which includes a Certificate of Service to Plaintiff dated June 5, 2015. In this Supplemental Response [#735-4], the Denver Defendants note that they were providing to Plaintiff a copy of a document titled "Court File of 2009GS136117 (Bates No.: DENVER006917-6942)." [#735-4] at 3 ¶ nn. This document lists "SCHLUCK, ANTHONY" and his identification number in connection with Plaintiff's case file for the court proceedings in Case Number 09GS136117, which stemmed from the April 2009 incident. [#735-5]. The Court finds that this information was enough to put Plaintiff on notice of the existence of Officer Schluck as of June 2015.

Thus, the Court finds that Officer Schluck was revealed to Plaintiff at least by May 2015 and no later than June 2015, and that Officer Gann was revealed to Plaintiff at least by May 2015. Accordingly, the Court finds that discovery should not be reopened to accommodate Plaintiff's desire to conduct additional discovery with respect to these two persons.

Second, to the extent Plaintiff argues in his Reply [#747] that Defendants "have conceal[ed] the identity of Matthew Mullins as a material witness concerning the incident of August 28th, 2010," this issue was not raised in Plaintiff's Motion for Discovery. The Court need not address issues raised for the first time in a Reply brief. *See Stump v.*

*Gates*, 211 F.3d 527, 533 (10th Cir. 2000). The same result applies to Plaintiff's argument that Defendants failed to supplement a discovery response first provided in May 2015. *See Reply* [#747] at 12-13. This issue was not raised in the initial Motion [#731].

Third, Plaintiff argues that certain Computer-Aided Dispatch ("CAD") reports were inaccurate or concealed by Defendants. *Motion* [#731] at 4. The only CAD report to which Plaintiff specifically refers is the one from the April 2009 incident. In response to this argument, Defendants direct the Court's attention to the Denver Defendants' Response to Plaintiff's Second Request for Production [#735-1], which includes a Certificate of Service to Plaintiff dated May 13, 2015. In this Response [#735-1], the Denver Defendants noted that they were providing a copy of a document titled "Incident Detail Report # DPD-09-0250125 (bates no.: DENVER000648-000650)." [#735-1] at 3 ¶ G. This document appears to be the April 2009 CAD report sought by Plaintiff. [#735-3]. Hence, the document was not concealed by Defendants, contrary to Plaintiff's assertion. Moreover, to the extent Plaintiff argues that this document or other documents are inaccurate or "false," he has provided no grounds for additional discovery on the issue. Indeed, if he has knowledge that documents are "false," he may share his knowledge of any alleged inaccuracies or issues of material fact in connection with the Motions for Summary Judgment and/or at trial. *See, e.g.*, *Response* [#735] at 10.

Fourth, Plaintiff argues that Defendants should have produced certain Internal Affairs files. *See, e.g.*, *Reply* [#747] at 13. However, Defendants first objected to producing these documents on May 13, 2013, and Plaintiff did not file a timely motion to compel.[15] *See*

---

[15] Defendant objected a second time to Plaintiff's materially identical later request in their discovery responses submitted to Plaintiff on August 4, 2015. *See Response* [#735] at 8-9.

[#735-7] at 2. In *Continental Indus., Inc. v. Integrated Logistics Solutions, LLC*, 211 F.R.D. 442, 444 (N.D. Okla. 2002), the court stated under somewhat similar circumstances:

> Plaintiff's motion is untimely. Plaintiff has waited 18 months before moving to compel production of the documents it seeks. The ILS defendants informed Plaintiff in April 2001 that they objected to production of the documents at issue. Plaintiff's Motion to Compel was filed on November 8, 2002—only three weeks before the scheduled trial of a case the Plaintiff filed two years ago. Furthermore, the Motion to Compel was filed nearly six months after discovery cutoff. Although Fed. R. Civ. P. 37 does not specify any time limit within which a Motion to Compel must be brought, courts have made it clear that a party seeking to compel discovery must do so in timely fashion. *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) ("A party cannot ignore available discovery remedies for months and then, on the eve of trial, move the court for an order compelling production."). Once, as here, a party registers a timely objection to requested production, the initiative rests with the party seeking production to move for an order compelling it. *Clinchfield R. Co. v. Lynch*, 700 F.2d 126, 132 n. 10 (4th Cir. 1983). Failure to pursue a discovery remedy in timely fashion may constitute a waiver of discovery violations. *DesRosiers v. Moran*, 949 F.2d 15, 22 n.8 (1st Cir. 1991). It is especially important that a party file its motion before [the] discovery cutoff. *American Motorists Insurance Co. v. General Host Corp.*, 162 F.R.D. 646, 647-48 (D. Kan.1995) (motion to compel denied where defendant made "absolutely no effort" to file motion before discovery deadline).

(footnote omitted). Thus, to the extent Plaintiff seeks to compel discovery of these files, or to object to other discovery responses received prior to Defendants' final submission on August 4, 2015, such requests and objections are untimely at this late stage of the lawsuit.

Fifth, to the extent Plaintiff argues that Defendants concealed the identity of a witness named Kathy Jones, Plaintiff fails to direct the Court's attention to any relevant discovery request or response. To the extent Plaintiff asserts that Kathy Jones was intimidated by Defendants' counsel at Plaintiff's civil trial in Case No. 12-cv-02257-CMA-KLM in August 2015, this alleged occurrence has no bearing on whether discovery in this matter should be reopened, as all discovery in this case was completed approximately a

week before that trial began.

The Court next turns to Plaintiff's request to reopen discovery, which he asserts as a request under both Fed. R. Civ. P. 56 and Fed. R. Civ. P. 16(b). To the extent Plaintiff seeks the reopening of discovery pursuant to Fed. R. Civ. P. 56, the request is denied. Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." This rule does not provide *carte blanche* for re-opening discovery after the filing of summary judgment motions. Generally, a party's Rule 56(d) application "should be liberally treated." *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993). But Rule 56(d) "is not a license for a fishing expedition," *Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990), and should be denied if "dilatory or lacking in merit." *Jensen*, 998 F.2d at 1554. The Rule is not intended to permit late discovery simply because a party failed to determine that he needed certain evidence to oppose a motion for summary judgment, or failed to timely file a motion to compel related to previously-received discovery responses.

> Rule 56(d) may not be invoked based solely upon the assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. *See Jensen*, 998 F.2d at 1554. Moreover, while the summary judgment movant's exclusive control of information weighs heavily in favor of relief under 56(d), *see Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000), merely asserting such is insufficient to justify denial of summary judgment, *see Jensen*, 998 F.2d at 1554. Furthermore, "if the party filing the Rule 56[(d)] affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted." *Id.* (denying a 56(d) request stating "the record reflect[ed] that plaintiffs were dilatory in pursuing discovery prior to the filing of their 56[(d)] affidavit"). *See Johnson v. Holmes*, 377 F. Supp. 2d 1039, 1044-45 (D.N.M.2004) (denying a 56(d) request

> where plaintiff did not explain why, during the discovery period that the court allowed, he did not obtain the discovery sought in his motion).

*Chavez v. Cnty. of Bernalillo*, 3 F. Supp. 3d 936, 968-969 (D.N.M. 2014). Thus, under Rule 56(d), dilatory requests for discovery must be adequately explained. As discussed throughout the adjudication of this Motion for Discovery, Plaintiff has failed to do so. The purpose behind the discovery process is to allow the parties to timely and efficiently gather information needed to present disputes to the trier of fact. Here, however, Plaintiff first brought these issues to the Court's attention nearly two months after the close of written discovery and even longer after the dispositive motions deadline—i.e., precisely when his Responses to the Motions for Summary Judgment were due. The timing therefore leads the Court to conclude that Plaintiff neglected to obtain the discovery he believes is necessary to respond to the Motions for Summary Judgment before the discovery deadline, and is belatedly attempting to remedy that problem. Accordingly, Plaintiff's request under Fed. R. Civ. P. 56(d) is **denied**.

Turning to Plaintiff's argument under Fed. R. Civ. P. 16(b), discovery in this matter closed on August 4, 2015. The Court may modify the Scheduling Order on a showing of good cause. *See* Fed. R. Civ. P. 16(b)(4); D.C.COLO.LCivR 16.1. Whether to modify a scheduling order "to extend or reopen discovery is committed to the sound discretion" of the Court. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). When exercising its discretion, the Court considers the following factors: (1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for

additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id.* (citations omitted). With regard to the fourth factor, the Court of Appeals for the Tenth Circuit has explained that "[d]emonstrating good cause under [Rule 16(b)(4)] 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'" *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)).

Incorporating the Court's discussion above, the Court considers each of the factors set forth under the *Smith* test. First, trial has not yet been set in this matter. Because trial is not imminent, this fact weighs in favor of allowing the reopening of discovery. Second, the request to reopen discovery is opposed by all Defendants. This factor weighs against reopening discovery. Third, Defendants would be prejudiced by having to respond to untimely discovery requests when they should be devoting their time, money, and energy to settlement and/or trial preparation. This factor weighs against reopening discovery. Fourth, Plaintiff was not diligent in obtaining the discovery he seeks. The parties have had an excessively lengthy period of time to complete discovery in this rapidly-aging case. This factor weighs against reopening discovery. Fifth, the foreseeability of the need for additional discovery likewise does not favor Plaintiff. Plaintiff's claims have not evolved since the outset of this litigation. Hence, Plaintiff should have foreseen the need for this type of discovery long ago. This factor weighs against reopening discovery. Finally, the suggested discovery could lead to the discovery of relevant evidence. This factor weighs in favor of reopening discovery. However, taken as a whole, Plaintiff has not carried his burden of demonstrating good cause to reopen discovery, as four of the six factors weigh

against it. Discovery should not be reopened prior to Plaintiff filing Responses to the Motions for Summary Judgment simply to give him an opportunity to fill late-detected holes in discovery. Accordingly, Plaintiff's request under Fed. R. Civ. P. 16(b) is **denied**.

Three additional matters raised in the briefing must be addressed. First, to the extent Plaintiff asks to amend his pleadings, this request is **denied without prejudice**. Such requests must be accompanied by a proposed amended pleading. *See, e.g., Birman v. Berkebile*, No. 14-cv-00376-KLM, 2014 WL 4783611, at *2 (D. Colo. Sept. 25, 2014). However, based on the Court's resolution of the various Motions adjudicated in the present Order, the Court notes that it is unlikely that such a request would be granted at this late stage of the proceedings. Second, to the extent Plaintiff may be making any further arguments regarding discovery which was allegedly not timely provided, the Court finds them too unclear to address on the merits, and such requests are **denied**. Third, Defendants ask the Court for permission "to move for an award of fees incurred in responding to the Motions pursuant to Fed. R. Civ. P. 37(a)(5)—to the extent that Plaintiff's Motion can be construed as one to compel pursuant to Rule 37—and pursuant to the Court's powers under Rule 11(c)(3)." *Response* [#735] at 14-15. This request is **granted**. **On or before December 8, 2015**, Defendants may file a motion for attorney fees, with supporting evidence, which complies with D.C.COLO.LCivR 54.3.[16]

Accordingly, the Motion for Discovery [#731] is **denied**.

### D. Motion for Sanctions

In the Motion for Sanctions [#733], Plaintiff seeks sanctions based on Defendants'

---

[16] The Court does not determine at this time whether the request for attorney fees will be granted.

discovery tactics, as discussed above in connection with the Motion for Discovery [#731]. Having found that Defendants have not engaged in discovery abuse,[17] there is no basis to impose sanctions on them pursuant to Fed. R. Civ. P. 11 or 37. Likewise, there is no reason to hold the "emergency hearing" also requested by Plaintiff.

Accordingly, the Motion for Sanctions [#733] is **denied**.

**E.      Motion for Extension**

In the Motion for Extension [#740], Plaintiff seeks an extension of the briefing schedule on the Motions for Summary Judgment [#694, #697, #700, #714] as well as a stay of proceedings until the Motion for Discovery [#731] and the Motion for Sanctions [#733] are resolved.

Regarding the request for an extension of the briefing schedule on the Motions for Summary Judgment, the Court first notes that the four Motions for Summary Judgment [#694, #697, #700, #714] were filed on July 6, 13, and 27, 2015. Plaintiff's Response to the earliest-filed Motion for Summary Judgment [#694] was therefore due by July 30, 2015. On August 26, 2015, Plaintiff filed a belated Motion for Extension of Time to Respond to Defendants' Motions for Summary Judgment (All Pending Motions) [#724]. Despite the belatedness of the request, the Court granted the extension and ordered Plaintiff to respond to all four Motions for Summary Judgment by September 17, 2015. *Minute Order* [#726]. On September 21, 2015, Plaintiff again belatedly filed a Second Motion for

---

[17] To the extent Plaintiff argues that some of Defendants' counsel intimidated an alleged witness named Kathy Jones in mid-August 2015 in the Alfred A. Arraj United States Courthouse outside of Plaintiff's then on-going civil trial in 12-cv-02257-CMA-KLM, the Court notes that this event occurred after the close of discovery in this case on August 4, 2015. Any interaction Defendants' counsel may have had with Ms. Jones therefore would not impact discovery relating to the pending dispositive motions.

Extension of Time [#727]. The Court again granted the request and extended the deadline for Plaintiff to respond to the Motions for Summary Judgment to October 17, 2015. *Minute Order* [#730]. Plaintiff was warned at that time that "**[n]o further extensions of time will be permitted, absent extraordinary circumstances.**" *Id.* (emphasis in original).

Calculated from the date each Motion for Summary Judgment was filed, Plaintiff had approximately between twelve and fifteen weeks to file Responses before the October 17, 2015 deadline.[18] Given the fact that Plaintiff's Motion for Discovery [#731] and Motion for Sanctions #733] lack merit, the Court cannot find that "extraordinary circumstances" exist to permit an additional extension of time. There is no reason why Plaintiff could not have timely responded to the Motions for Summary Judgment and, should additional discovery have been permitted, later sought to amend or supplement his original Responses. Further, the discovery sought by Plaintiff does not appear to impact the claims raised against the majority of Defendants, and there is no reason why Plaintiff could not have filed Responses to the Motions for Summary Judgment that were not otherwise impacted by the Motion for Discovery or Motion for Sanctions. In short, Plaintiff appears to have engaged in delay tactics solely for the purpose of obtaining more time than the twelve-to-fifteen weeks already permitted by the Court for him to file his Responses.[19] Thus, Plaintiff's request for an extension of time to file Responses to the Motions for Summary Judgment

---

[18] Even when calculated from the submission date of Defendants' final written discovery responses, i.e., August 4, 2015, Plaintiff still had approximately ten-and-a-half weeks in which to file his Responses.

[19] To the extent Plaintiff states that he has been denied access to the law library at his facility, such statements are too vague and conclusory to warrant further consideration when unaccompanied by evidentiary support.

is **denied**. A Recommendation on the Motions for Summary Judgment [#694, #697, #700, #714] will issue in due course.

Regarding the request for a stay of proceedings until the Motion for Discovery [#731] and the Motion for Sanctions [#733] are resolved, the Court has adjudicated these Motions as part of the present Order. Thus, this request is **denied as moot**.

Accordingly, the Motion for Extension [#740] is **denied in part and denied as moot in part**.

F.   **Motion to Stay**

In the Motion to Stay [#741], Plaintiff repeats his request for an extension of the briefing schedule on the Motions for Summary Judgment [#694, #697, #700, #714] as well as for a stay of proceedings until the Motion for Discovery [#731] and the Motion for Sanctions [#733] are resolved. Because the Court has ruled on both of these requests in connection with the Motion for Extension[#740, the Motion to Stay is moot.

Accordingly, the Motion to Stay [#741] is **denied as moot**.

G.   **Conclusion**

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion to Compel [#653] is **DENIED as moot**.

IT IS FURTHER **ORDERED** that the Motion for a Box [#659] is **DENIED without prejudice**.

IT IS FURTHER **ORDERED** that the Motion for Discovery [#731] is **DENIED in part and DENIED without prejudice in part**.

IT IS FURTHER **ORDERED** that the Motion for Sanctions [#733] is **DENIED**.

IT IS FURTHER **ORDERED** that Defendants' request to seek an award of attorneys' fees and costs is **GRANTED**. Any such motion and supporting documentation shall be filed **on or before December 8, 2015**.

IT IS FURTHER **ORDERED** that the Motion for Extension [#740] is **DENIED in part and DENIED as moot in part**.

IT IS FURTHER **ORDERED** that the Motion to Stay [#741] is **DENIED as moot**.

Dated:  November 24, 2015             BY THE COURT:

*(signature)*

Kristen L. Mix
United States Magistrate Judge