IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10 CV 2862 - CMA-KLM

DEAN CARBAJAL,
          Plaintiff

v.

CAROL WARNER, et al.,
          Defendant

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 08 2015

JEFFREY P. COLWELL
CLERK

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 07 2015

JEFFREY P. COLWELL
CLERK

---

Plaintiffs Verified Response To The State Defendants
Motion For Summary Judgment [DOC #694]

---

Plaintiff Dean Carbajal, pro se, respectfully responding and opposing State Defendants' Motion For Summary Judgment, and hereby submits this memorandum in support of this action:

**Introduction[1]**

In 2008, the Delta County Prosecution and Probation Department made a routine decision to fabricate a false sentence, and in furtherance of a conspiracy to wrongfully prosecute and convict Mr. Carbajal, the Defendants Carol Warner, David Romero, and Joe Quintana, altered legal documents and destroyed original documents to prevent the discovery of these fraudulent acts. The Prosecution and Probation Defendants Warner, Romero, and Quintana altered their files and destroyed any document that supported a concurrent factor. These obviously unconstitutional acts were supported, approved, and condoned by Warner, and more Warner participated in these abuses.

Subsequent to the manufacturing of a false probation sentence, the Probation Department Supervisory Staff Warner and Romero and probation officer Quintana collectively decided to wrongfully revoke Mr. Carbajal's deferred sentence with full knowledge no jurisdiction or authority existed that

[1] Plaintiff declares under the penalty of perjury that the following is true and correct to the best of his knowledge pursuant to Title 28 USC §1746.

1

would support this unconstitutional conduct, and drafted affidavits containing known falsities, that Mr. Carbajal is on a deferred sentence and and violated the terms and conditions, despite having knowledge and being advised that the deferred had expired by operation of law; and that Mr. Carbajal had completed his sentence; thus, instituting and continuing a prosecution wrongfully and maliciously, to compel Mr. Carbajal's arrest and continued confinement without probable cause; as well as conviction.

The applications for revocation filed jointly by Warner, Romero and Quintana were obviously outside the applicable four(4) hour period set forth by statutory law, which expired on August 30, 2005. More, each of these fraudulent and false affidavits or motions to revoke intentionally omitted material information; specifically, that no jurisdiction existed or authority to revoke Mr. Carbajal's deferred sentence; the dates Mr. Carbajal entered his plea and and statutory authority governing deferred sentence; as well as the actual sentence and charges relating to this judgment. These material omissions were designed to prevent a fair determination of probable cause and to mislead judicial officers into establishing an improper timeline regarding the applicable four year period, in which, a petition to revoke can be filed. The State Defendants Warner, Romero, and Quintana's perjurous and distorted affidavits, that were directed and ratified by Warner, were presented with a malicious intent to manipulate judicial officers into issuing an illegal warrant for Mr. Carbajal's arrest without probable cause, in direct violation of Mr. Carbajal's due process rights secured under the Fourteenth Amendment to the United States Constitution. This repeated and abusive wrongful prosecution ultimately was overturned by the Supreme Court, thus, terminating this malicious prosecution in Mr. Carbajal's favor, but only after he had suffered extreme and many injuries, including but not limited to: the loss of liberty for nearly three years, thus, damaging him emotionally and financially, as well as stripping him of his peace and love for life.

The dynamics of this case support clearly and unequivocally

2

that no reasonable prosecutor or probation officer would have found sufficient cause to revoke, arrest, prosecute, convict, or imprison Mr. Carbajal, is that, the actions of these officials were grossly false, and in complete contradiction of clearly established law. Moreover, the Defendants confessed that the sentence and their actions were illegal, and proceeded out of vindictiveness—falsifying affidavits and ignoring the law. It is well established and common knowledge that it is illegal and unconstitutional to destroy evidence and falsify evidence to frame a person who is actually innocent. Miller v. Pate, 386 US 1, 7 (1967); Brady v. Maryland, 373 US 83, 83 S.Ct. 1194 (1963); Mooney v. Holohan, 294 US 103 (1935). Thus the Defendants had due notice that their above conduct would violate Mr. Carbajal's civil rights; and their decision to proceed with this action, strips them of good faith immunity and more, compels a punitive factor.

"It of course has long been clearly established that knowingly arresting a defendant without probable cause, leading to the defendant's subsequent confinement and prosecution, violates the the Fourth Amendment's proscription against unreasonable searches seizure." Wilkins v. DeReyes, 528 F.3d 790, 805 (10th Cir. 2008) And, a Plaintiff's §1983 malicious prosecution claim may also encompass procedural due process violations." Wilkins, 528 F.3d at 797 n.4; Albright v. Oliver, 510 US 266 (1994)("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause."). Thus, the Defendants are liable for their tortuous and unconstitutional conduct.

I.   Plaintiff's Response To State Defendants' Statement Of Undisputed Material Facts

  1.   State Defts' SmF #1: Admit.

  2.   State Defts' SmF #2: Denied. Quintana was assigned to Mr. Carbajal's case load long before July 18, 2006. And this is evidenced by statements given to Mr. Carbajal by Quintana and the State's Notes

[2. Plaintiff hereby incorporates by reference his Response to State defendant's Statement of Undisputed material facts in Exhibit 15, as if fully set forth herein. ¶1 through 39.]

3

Narratives and Events. Exh.15, Plaintiff Dean Carbajal's Declaration And Response To The State Defendants' Statement of Material Fact ("Plaintiff's Response To State Def's' SMF") ¶ 2.

3.   State Def's SMF ¶ 3 : Denied. See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 3.

4.   State Def's SMF ¶ 4 : Denied. See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 4.

5.   State Def's SMF ¶ 5 : Denied. See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 5.

6.   State Def's SMF ¶ 6 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 6

7.   State Def's SMF ¶ 7 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 7.

8.   State Def's SMF ¶ 8 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 8.

9.   State Def's SMF ¶ 9 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 9.

10.   State Def's SMF ¶ 10 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 10.

11.   State Def's SMF ¶ 11 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 11.

12.   State Def's SMF ¶ 12 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 12.

13.   State Def's SMF ¶ 13 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 13.

14.   State Def's SMF ¶ 14 : Admit, but deny that only Romero was involved. See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 14.

15.   State Def's SMF ¶ 15 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 15

16.   State Def's SMF ¶ 16 : Denied, See Exhibit 15, Plaintiff's Response To State Def's SMF ¶ 16.

17. State Def's STMF #17: Denied, See Exhibit 15, Plaintiff's Response To State Def's STMF #17.

18. State Def's STMF #18: Admit.

19. State Def STMF #19: Denied, See Exhibit 15, Plaintiff's Response To State Def's STMF #19.

20. State Def STMF #20: Denied, See Exhibit 15, Plaintiff's Response To State Def's STMF #20.

21. State Def STMF #21: Denied, See Exhibit 15, Plaintiff's Response To State Def's STMF #21.

22. State Def STMF #22: Denied, See Exhibit 15, Plaintiff's Response To State Def's STMF #22.

23. State Def STMF #23: Denied, See Exhibit 15, Plaintiff's Response To State Def's STMF #23.

24. State Def STMF #24-28, Denied, See Exhibit 15, Plaintiff's Response To State Def's STMF #24-28: See Also Exhibit 14, Plaintiff's Response To State Defendant's Discovery.

## II. Statement Of Additional Disputed Facts ("SADF")

A. Mr. Carbajal's Position In His Criminal Case And His Civil Suit Has Been Consistent — "I am Innocent."

25. Mr. Carbajal has never conceded in his criminal proceedings, or throughout this litigation in the State Court proceedings, that Defendants Warner, Romero, and Quintana had probable cause to arrest, revoke, prosecute, or convict him in case no. 99CR96 in 2006 to 2009, noting that the Court and Defendants lacked jurisdiction, which can never be agreed to, consented to, or waived. Thus, irrespective of how the Defendants Warner, Romero and Quintana choose to frame their conduct, what they were doing was illegal and, more, they submitted false evidence in the form of an affidavit or Complaint for Warrant to arrest Mr. Carbajal, in a bad faith attempt to manufacture probable cause and jurisdiction over the subject matter and Mr. Carbajal which failed and was ultimately exposed by the Colorado Supreme Court and corrected

III.  Argument Opposing Summary Judgment And Establishing A Prima Facie Case for Malicious Prosecution And Conspiracy Based On A Fourth And Fourteenth Amendment Violation

   A.  Plaintiff's Malicious Prosecution Claim Survives Summary Judgment

   While the State Defendants Warner, Romero, and Quintana take great care to describe what Plaintiff Mr. Carbajal will need to do at trial to win his Malicious Prosecution claim, this, however, is irrelevant here as applied to summary judgment, as Plaintiff does not need to prove his case at this stage of proceedings. Rather, the Defendants need to demonstrate that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. Fed R. Civ. P 56 (c).

   Plaintiff's claim of Malicious Prosecution under the Fourteenth Amendment requires Plaintiff to prove at trial, by a preponderance of the evidence, that (1) Defendants caused the Plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the Plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) Defendants acted with malice; and (5) Plaintiff sustained damages. Wilkins v. DeKeyes, 528 F.3d 790, 799 (10th Cir. 2008).[3]

   Importantly, the common-law elements are just a "starting point" for § 1983 malicious prosecution claims, and Plaintiff is not necessarily required to prove all of the elements, because "the ultimate question 'in such case is whether Plaintiff has proven the deprivation of a constitutional right." Id. (quoting Novitsky v. City of Aurora, 491 F.3d 1244, 1257-58 (10th Cir. 2007).

       1.  Defendant Quintana, Romero, and Warner Caused Mr. Carbajal's Unconstitutional arrest, confinement, and prosecution.

   The First element of a Fourteenth Amendment malicious prosecution claim is that the defendant must have caused the plaintiff's continued confinement or prosecution. Wilkins, 528 F.3d at 799. The evidence before the Court, including, the Factual Finding established by the Colorado Supreme Court based on the Record, Exh. 11, People v. Carbajal, 198 P.3d 102, 104-106 (Colo 2008), Verified Complaint [#254], ¶¶ 29-53; Exh. 13, Declaration of Truth, [#108] pp 4-14, Exh. 7, Record of Action, pp 15-35; Exh. 2-5, Complaints To Revoke, pp 1-5, Exhibit 10, Plaintiff's Deposition Testimony, pp 4-103, 106-141, 147-83, and The Court's original Finding [#369] pp 20-21, support that Mr. Carbajal was unconstitutionally arrested, confined, prosecuted and convicted, based on the actions of Warner, Romero, and Quintana and others, which were clearly illegal;

_____
[3] The Defendants Warner, Romero, and Quintana do not contest that they were acting under the color of law; thus, for purposes of this analysis Mr. Carbajal will address the other related factors.

"Here on August 30, 2001, the Delta County District Court imposed a deferred judgment on Plaintiff. Carbajal, 198 at 104. "[B]y operation of law," Plaintiff's deferred judgment ended on August 30, 2005." Id at 106. Plaintiff was originally confined from August 30, 2001 until July 26, 2004. Id at 104. "[O]n April 25, 2006, the People filed a petition to revoke [Plaintiff's] deferred judgment and impose a judgment and sentence" Id. After a hearing on July 14, 2006, the Delta County District Court ordered that Mr. Carbajal's deferred judgment would run through July 14, 2010. Id. On April 26, 2007, the People filed a second petition to revoke Mr. Carbajal's deferred judgment. Id at 105. The Delta County District Court set a hearing on the petition, and Mr. Carbajal failed to appear. Id. The Court issued a warrant for his arrest and, on August 22, 2007, the Delta County Sheriff arrested Mr. Carbajal pursuant to the failure to appear warrant." Id. Court's Recommendation [#369] p.21. Based on the Colorado Supreme Court's find of facts, and the record that existed prior to Mr. Carbajal's Habeas Appeal, this Court reasoned that sufficient evidence exists in the public record to establish that the State Defendants caused Mr. Carbajal's arrest, confinement and prosecution. However, it is important to note that, while the Supreme Court was never apprised of the continual abuses taken by Quintana, Romero, and Warner through a supplementation of the record, Mr. Carbajal was ultimately wrongfully convicted on 12/10/2008, based upon the distorted affidavits and fraudulent information presented by the State Defendants. See Exhibit 7, Record of Motion in Case no. 99CR96, p 3.9-338.

In addition, the State Defendants ignore[4] that reliable and admissible evidence exists that supports that Warner, Romero, and Quintana knowingly, willingly and wantonly caused Mr. Carbajal's arrest, prosecution, confinement and conviction by:

a. Ignoring Statutory Law And Applicable Authority

In 2006, 2007, and 2008, Mr. Carbajal continuously claimed that the deferred had been completed, and complained to Warner, Romero, and Quintana, that what "you are doing is illegal and circumvents statutory law." Still they ignored these cries by Mr. Carbajal, despite acknowledging that their actions were illegal, and stated that they didn't care, "If you keep fighting this, we are going to put you away for life." Each of the State Defendants confessed that the sentence and that their actions were illegal, but they

4 Record of Motion, Exhibit 7, Supreme Court Opinion Exhibit 11, Probation File Exhibit 1, Probation Complaints Exhibits 2-5 are attached. The Court can take judicial notice of public records from other courts concerning matters that bear directly upon the disposition of the case at hand. United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); St. Louis Baptist Temple, Inc. v. Fed Deposit Ins Corp., 605 F.2d 1169, 1172 (10th Cir. 1979).

continued to arrest, prosecute, confine, and convicted Mr. Carbajal by ignoring statutory law and well settled authority. See Dawson v. Newman, 419 F.3d 656, 662 (7th Cir. 2005) (parole officials were not entitled to absolute immunity where they refused to investigate Plaintiff's correct claim that he was not entitled to release from probation); Harper v. Jeffries, 808 F.2d 281, 284 (3rd Cir. 1986); Ray v. Pickett, 734 F.2d 370, 373-74 (8th Cir. 1984)(wrongful filing of violation report by probation officer); Exhibit 10, Plaintiff's Deposition Testimony, pp. 26-27 (Defendants Confessions); pp. 41-48 (Romero's Confessions and refusal to comply with statutory law); and pp. 50-64, 67 (Warner's participation and consent to wrongful revocation).

The Defendants Warner, Romero, and Quintana are deemed to have constructive notice of the penal statutes, specifically CRS § 18-1.3-102(1). See People v. Rafter, 36 P.3d 98 (Colo App 2001) cert. denied (Colo 2001). As early as 1996, Colorado law clearly established, that it was a clear abuse of discretion to revoke a deferred sentence beyond the applicable four year period and illegal. Indeed, a probation officer's revocation of probation outside of this four year time period prescribed by statutory law deprived Mr. Carbajal of a State created liberty interest, thereby violating his due process right to secured under the Fourteenth Amendment. The Defendants Warner, Romero, and Quintana's deliberate "misuse of the legal procedure is so egregious as to subject [Mr. Carbajal] to a deprivation of Constitutional dimension." See Anthony v. Baker, 767 F.2d at 662. (Quoting Norton v. Liddel, 620 F.2d 1375, 1378-79 (10th Cir. 1980). The [5] confessions made by the State Defendants are supported by Mr. Carbajal's testimony and verified declarations, as well as this verified pleading. Exhibit 10, Plaintiff's Deposition pp. 33-50, 51-53, 65-69, [5] and detail the Defendants deliberate efforts to ignore and circumvent the law to wrongfully prosecute, confine and convict Mr. Carbajal. More, the public record and pleadings show a deliberate disregard for clearly established law; which had the direct effect of wrongfully revoking, prosecuting, confining and convicting Mr. Carbajal.

The Tenth Circuit has established, that the wrongful "decision involving the revocation of probation by a probation officer" based on a complete disregard for the law, in order to wrongfully revoke Mr. Carbajal, is not shielded by qualified immunity. Russ v. Uppah, 972 F.2d 300, 303-304 (10th Cir. 1992). Thus, Warner, Romero, and Quintana's confessions and acknowledgment that their actions are illegal, and complete disregard for the law has stripped them of good faith immunity. Id.[6]

[5] "Both Warner and Quintana, as well as Romero, acknowledged that they knew that this deferred was illegal. Everyone knows that the deferred was illegal." Exh.10, Pltf Deposition, pp. 67, 80, 84-88, 95-96, 101-102, 103. Warner contested that the deferred was illegal. Id., pp. 107-108, 111-112.

[6] Also, given that Warner, Romero and Quintana confessed repeatedly that they did not care that the probation had been completed or that it was illegal, knowledge may be inferred from proof that defendant deliberately avoided actual knowledge by circumvention of statutory law and operative facts, in order to have a defense in the event of a subsequent prosecution. See United States v. Espinoza, 244 F.3d 1234 (10th Cir. 2001).

8

*Accordingly,* the Defendants continual ignoring and circumvention of clearly established law, caused Mr. Carbajal to be prosecuted, confined, repeatedly arrested and ultimately convicted. Exhibit 14. Pltf's Resp. To State Defendants First set of Written Discovery, pp 1-3, ¶ 1-6. Had the Defendants Warner, Romero, and Quintana complied with well settled authority and clearly established Statutory law Mr. Carbajal would not have been arrested, prosecuted, confined, or convicted.

### b. Manufacturing a Fraudulent sentence

The Defendants Warner, Romero, and Quintana caused Mr. Carbajal's prosecution, continued confinement, and conviction by manufacturing a Fraudulent sentence by altering the record to read that Mr. Carbajal's original deferred was consecutive to a 4 year Doc sentence, and more falsified probation complaints to create a false 2 year probation sentence, that was in actuality never entered or imposed. These fraudulent acts were designed to manufacture a basis to wrongfully prosecute, confine, and convict Mr. Carbajal, and had the direct effect of violating Mr. Carbajal's due process rights secured under the Fourteenth Amendment to the US Constitution. Pltf's Complaint #254 ¶ 31-39, 70-82.; Exhibit 14 Pltf's Discovery Response; pp 2-4.; Exhibit 10, Pltf's Deposition pp. 21-23, 57-89. Indeed, Joe Quintana had actually confessed

> ...[T]hat him and Romero or Warner, had actually altered the documents to read "consecutive" as opposed to "concurrent."

Id at p. 57:13,17;

> Again, the legal context that his speaking about were the actual stipulations of the actual deferred as well as the... actual probationary contracts that enforce the actual deferred that were looked to be signed in 2001.

Id at p. 60;

> And, again,... based on the the confessions from Joe Quintana and the circumstantial evidence concerning my original recollection of the actual documents and my statements concerning the documents I don't believe there's any other evidence apart from the confessions from Joe Quintana and his staff, Carol Warner, and David Romero, concerning the actual alteration.

Id at p. 63;

> Warner was one of the key players in this, because she was the actual supervisor of staff and chief probationary officer, and based on the actual evidence provided by the defendants concerning the actual correspondence and the actual correspondence and the journals of the actual actions that were taken in the case, it became even more evident that Carol Warner was ultimately involved in the actual manufacturing of the evidence as well as the... wrongful revocation of the actual alleged illegal deferred and the actual drafting of false affidavits.

Id at p. 64; The additional facts or evidence that would support this would be the affidavits as well as the contracted agreements that were submitted... in the record, and my specific recollection

7. Exhibit 10, Plaintiff Declaration; pp 10-34, 35-40, 42-54, 57, 60-64, 66-75, 77-103, 106-126, 135-38, 141, 147-154, 160-162, 169-179, 181-183, 213,338, 370-372, 381, 429-430.; Exhibit 7-3, Complaint To Revoke; pp 1-3; Carbajal, 198 P.3d 102-106.

of the original documents and my refusal to sign those
documents if they entailed or referenced a consecutive factor

Id. at 64-65.

As the Defendants know, in approximately November,
December of 2001, I refused to sign the probationary
agreement, because they potentially entailed a consecutive
factor, and I made a big stink about that, refused to
do it. I told them, I said, "You guys need to get a hearing,
because I'm not going to concede to this deferred if you
guys are trying to say that this is consecutive."
They brought me back from the Department of Corrections
...and we had a hearing on it. At that specific time,
I gave specific reference to that to both counsel, as well
as the probationary department that I would not sign
these agreements, because you guys improperly dictated
or documented a consecutive factor.

Now, once that concurrent factor was properly dictated
and it was properly represented to me, I believe I signed
the original document, and thereafter in, I believe, 2000,
these documents were either recopied and redrafted and
read to entail consecutive factor, because I specifically
stated initially from the beginning, that I would not sign it
if it read consecutive. My understand was that it was
concurrent.

Id at 65-66. The original Stipulations For Deferred Judgment and Sentence, Exhibit 6,
page 1, detells the altered "consecutive" factor and also shows a Fraudulent
"Signature" by Defendant. This is not the original document that was
signed by Mr Carbajal, but was altered to manufacture a false sentence.
"Evidence that these contracts were drafted to read concurrent is the statements
made by Mr Carbajal to Rick Mohre in 2001 prior to being transported to DOC and
confessions of Jeff Herron."

In addition, the defendants manufactured a false deferred sentence
by submitting affidavits attesting to a false deferred and judgment that
had never been entered by the Delta District Court; thus, establishing
a hypothetical, but false jurisdiction; namely, the defendants submit notarized
affidavits stating:

"The Defendant [Dean Carbajal] was placed on
probation on 1-14-06 for two years by virtue of
his conviction of Assault in the Second Degree, F-4."

Exhibit 2 and 3, Complaint of Probation Officer, April 26, 2007, pg. 1. These [8]
deceptive statements were used to manufacture a false prosecution and
conviction, and hypothetical jurisdiction; thereby, wrongfully causing Mr Carbajal's

[8] The Defendants Warner, Romero, and Quintana acknowledged that the deferred
was illegal and admitted that what they were doing is illegal. See ¶¶ 4-5, 12-17, and 19-21, Exh 15.
Thus admissible evidence exists that each of the State defendants knew that their statements
were false. This is further elaborated in Exh. 12 & 15, and is hereby incorporated by reference.



wrongful and malicious confinement, prosecution, and conviction, effectively working a deprivation of Mr. Carbajal's 4th and 14th Amendment rights, causing him numerous injuries, including the wrongful loss of his liberty and extreme emotional distress, amongst other injuries. Exhibit 13. Declaration of Truth, pp 29-31.

        c). Falsifying and distorting affidavits to mislead judicial officers into wrongfully arresting and prosecuting Mr. Carbajal.

From 2006 to 2008, the Defendants and their co-conspirators together repeatedly submitted false and distorted affidavits with the intent and understanding to mislead judicial officers into wrongfully arresting, prosecuting, and convicting Mr. Carbajal. In particular, as detailed in the complaint [#254],

        37. The application for revocation was first filed on April 25, 2006, and was obviously outside the applicable four year period established by statutory law that expired August 30, 2005. More, Warner, Romero and Buntana intentionally omitted material information, specifically that no probation existed or authority to revoke Mr. Carbajal's deferred sentence, as well as omitted the dates Mr. Carbajal entered his plea and statutory authority governing deferred sentences, to present a full determination of probable cause, and to mislead judicial officers into establishing an improper timeline for the applicable four year period, in which, a petition can be filed to revoke a deferred sentence. Romero and Buntana perjurous and distorted affidavits, directed and ratified by Warner were presented with a malicious intent to manipulate judicial officers into issuing an arrest warrant for Mr. Carbajal without probable cause, ...

Id. at ¶ 37. This verified statement is evidenced by Plaintiff's Exhibits 2, 3, 4, 5, and 8, which are copies of the original affidavits seeking Mr. Carbajal's arrest based on the false assertion that he was:

        "placed on probation" on 01-14-06 for two years by virtue of his conviction of sexual assault in second degree F-4"

Id. First, the simple assertion that Mr. Carbajal is on probation is false. A probation and deferred sentence are two different sentences. Secondly, the assertion that conviction for sexual assault was entered on 01-14-06 is an outrageous lie. Third, a two year probation sentence was never entered against Mr. Carbajal. Each of these false assertions were intentional,

as evidence by the Defendants confessions to Mr. Carbajal (See Exhibit 10, Pltff. Deposition 4-130, Exhibit 14 Plf. Discovery Response, pp 1-3.) and the public record. In fact, Mr. Carbajal confronted each defendant with Federal law suit (Case no. 08-CV-1131-PAB-BNB), which gave each defendant notice that what they were doing was illegal, which they also acknowledged in their State narratives and notes. See Exhibit 1, Narratives and Events, pp 14 →

> "Upon speaking with Sherri Price, DA, I had my reservations about filing an updated complaint on this guy, because I feared this would really prolong the current revocation. She said we need to file ASAP, because the defendant has filed appeals in this case that there was an illegal evidence. Therefore, I filed an amended complaint today in Latha for Joe.

Id. at pg 14. Certainly, the defendants Rosero, Quintana, and Warner each knew that their actions were illegal, and that the information that they were presenting was false, distorted, and malicious.

Accordingly, it was based on these falsities and material omissions, that Mr. Carbajal was continuously wrongfully arrested, prosecuted, confined, and ultimately wrongfully convicted; thus, working a violation of Mr. Carbajal's Fourth and Fourteenth Amendment rights, causing him extreme pain and suffering, and wrongful confinement amongst other injuries. See Exhibit 13, Declaration of Truth, pp. 29-32.

Framing an innocent person, is such a gross act, that no reasonable person could have concluded that it is permissible, and this is exactly what defendant Warner, Rosero, and Quintana did, when they fabricated affidavits and manufactured a fraudulent sentence. The First Circuits analysis in Limone v. Condon, 372 F.3d 39 (1st Cir 2004); is instructive. In Limone, the Court determined, that actions taken to suppress exculpatory evidence to cover up wrong doing violated clearly established constitutional right. Id at 45-48. Analyzing decades of Supreme Court precedent, the Court held that since 1967, "reasonable law enforcement officers [have] fair warning that framing an innocent person would violate the constitutional rights of the falsely accused." Id at 52. This right could have been clearly established as early as 1935, namely, the

Exhibit 10, Plaintiff's Deposition Testimony, pp. 17-20, 21-24, 26-28, 38-39, 42-47, 57, 63-66, 67-68, 71, 75-76, 78-80, 82-84, 85-86, 87, 88, 92, 93, 95-96, 99-100, 101-102, 107, 108 (the acknowledged at the latter portion of time that she knew that it was illegal, she didn't really care. To take it up with the courts), 110-112. 148-151, 159-63, 173-177.

12

use of perjured testimony to secure a conviction violates constitution. Id at 45; Mooney v. Holohan, 294 US 103 (1935). Indeed, the "Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence," a constitutional right which is patently clear as early as 1967. Miller v. Pate, 386 US 1, 7 (1967). Moreover, the intentional disregard for the truth in the application for an arrest warrant clearly violates the Fourteenth Amendment. Frank v. Delaware, 438 US 154, 155-56 (1978). In the reasoning set forth in Franks v. Delaware, applies to omissions as well as affirmative misstatements, if the omissions are so probative they would vitiate probable cause." Stewart v. Donges, 915 F.2d 572, 582 n.13, 583 (10th Cir. 1990); DeLoach v. Bevers, 922 F.2d 618, 621-22 (10th Cir. 1990) (" Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known to be false, had he not recklessly disregarded the truth, not only does the arrest violate the Fourth Amendment, but the officer will not be entitled to good faith immunity [under § 1983]").

By the same token, statutory law and precedent authority establish that by 1996, it was a clear abuse of discretion to revoke a deferred sentence beyond the applicable four year period; thereby, implicating a Fourth and Fourteenth Amendment right. The Defendants Warner, Korien and Quintana are presumed to have constructive notice of statutory law and precedent authority, and Colorado State law is very clear. A probation officer lacks jurisdiction to revoke a deferred sentence unless written application to revoke is filed within the time period statutorily prescribed. People v. Berquist, 916 P.2d 629 (Colo. App. 1996). And the Statutory language in the deferred sentencing statute clearly states a deferred sentence can not be continued beyond 4 years from the entry of plea of guilty, and once the applicable four year period expires, the court loses jurisdiction over the matter. See CRS § 18-1.3-102(1); People v. Simonds, 91 P.3d 405 (Colo. App. 2003) cert granted (Colo. 2004). Thus, it is clear and well settled in Colorado, that it is wrong and unconstitutional to revoke a probationary sentence after it expires. Snell v. Tunell, 920 F.2d 673, 692 n.18 (10th Cir. 1990)

("The wrongful "decision involving the revocation of probation ... by a probation ... officer warrant only qualified, not absolute immunity"); Russo v. Uppah, 972 F.2d 300, 303-304 (10th Cir. 1992).

Accordingly, the Defendants Warner, Romero, and Quintana personally participated in the abusive disregard of statutory and applicable law, manufacturing of a fraudulent sentence and hypothetical jurisdiction record, falsifying and distortion of affidavits for Mr. Carbajal's arrest and prosecution, which, caused Mr. Carbajal's continued wrongful confinement, prosecution, and conviction; therefore, violating Mr. Carbajal's Fourth and Fourteenth Amendment rights, which has caused him great injuries, including serious emotional distress; thereby, establishing a genuine issue of material fact.

    d.  Warner, Romero, and Quintana Conspired together To Wrongfully Revoke Mr. Carbajal's Hypothetical And False Probation And Deferred Without Jurisdiction

A genuine issue of material fact exists as to, whether or not the Defendants Warner, Romero, and Quintana conspired to maliciously arrest, confine, prosecute, and convict Mr. Carbajal, in that, admissible evidence supports a valid conspiracy to violate Mr. Carbajal's civil rights, including but not limited to: Quintana, Warner, and Romero's confessions that they "knew that the sentence and actions by them were illegal," and that they agreed to "still revoke the Mr. Carbajal's false probation and illegal deferred," to Mr. Carbajal, and their notes documented in the State Oath base. See Exhibit 1, Notes and Narratives, p 4-5, 14; Exhibit 14, Plaintiffs Response To State Defendants Discovery Requests, pp 1-3; Exhibit 10, Plaintiffs Deposition, pp 3-10. This joint and parallel illegal conduct is evidence of a conspiracy.[10]

The factual and evidentiary basis for this conspiracy claim, and actions of Warner, Romero, and Quintana, that caused Mr. Carbajal to be wrongfully arrested, confined, prosecuted, and convicted, are detailed in Section B. below and is hereby incorporated by reference, as if fully set forth herein.

    2.  The Underlying Conviction Was Terminated In Mr. Carbajal's Favor As Evidenced By The Public Record.

The Public record and analysis conducted by the Colorado Supreme

[10] See Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir. 1994) (parallel conduct indicative of conspiracy.

14

Court is admissible evidence of a favorable termination. Specifically, the Colorado Supreme Court reasoned, that the trial Court exceeded its jurisdiction when it extended Plaintiffs deferred judgment and dismissed the deferred judgment. People v. Carbajal, 198 P.3d 102, 104-107 (Colo 2008). The Court stated that Colorado Statute requires that "upon full compliance with such conditions by the defendant, the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the Court was deferred shall be dismissed with prejudice" CRS § 18-1.3-102(2). "[B]y operation of law" Plaintiffs deferred judgment terminated on August 30, 2005. Carbajal, 198 P.3d at 106. Based on this premise, when the Defendants Warner, Romero, and Quintana filed false affidavits alleging that a hypothetical probation had been violated, and an illegal deferred judgment was extended on July 14, 2006, no probation or deferred judgment existed, and the State Defendants lack subject-matter and personal jurisdiction. On December 15, 2008, the Supreme Court ordered that this deferred be vacated with prejudice. Subsequently, the District Court vacated the illegal conviction that was entered during the appeal of this illegal judgment, based upon the Supreme Court's opinion and direction to vacate the illegal sentence See Exhibit 7, Record of Action Case no. 99CR96, 1215/2008, p 35. Therefore, evidence exists, and the circumstances raise an inference of favorable termination. Wilkins v. DeReyes, 528 F.3d 790 (10th Cir. 2008), thereby, establishing a controverted issue of material fact concerning the favorable termination of the illegal sentence and judgment in case no. 99CR96.

        3.   The Defendants Warner, Romero, and Quintana's Actions Were In Absence Of Jurisdiction And Probable Cause"

The evidence presented thus far, has presented a prima facie case for lack of probable cause to arrest, confine, prosecute, and convict Mr. Carbajal. In fact, the Colorado Supreme Court has observed in the opinion People v. Carbajal, 198 P.3d 102, 104 (Colo. 2008), that the deferred

" Exhibit 10, Deposition Testimony, pg 21-24, 36-37, 82-84, 110-112. Deposition Testimony and the record supports that no probable cause existed to seize or prosecute Mr. Carbajal. Certainly, no reasonable officer could have believed that Mr. Carbajal, was on probation or a deferred, because no jurisdiction existed and Colorado law clearly shows that no jurisdiction existed.

never existed prior to 2006, because it had ended by operation of law. Thus, the Defendants Quintana, Romero, and Warner lack legal basis and jurisdiction to file affidavits to arrest, confine, prosecute, and convict Mr. Carbajal. More, the Fabrication of information that Mr. Carbajal was:

> ...placed on probation on 1-14-06 for two years
> by virtue of his conviction of [ ... ] assault in
> the second degree, F-4.

Exhibit 2 & 3 Complaint of Probation Office, p 1, is evidence alone that no probable cause existed to prosecute, arrest, confine, and convict Mr. Carbajal. Therefore, the "third element in the tort of malicious prosecution ... that there was no probable cause to support the "arrest, continued confinement, prosecution, and conviction, has been established. Pierce v. Gilchrist, 359 F.3d 1279, 1294 (10th Cir. 2004).

Interestingly though, the State Defendants falsely assert, that Mr. Carbajal has conceded probable cause during his criminal proceeding, and is barred from alleging anything to the contrary. This, of course, is not legally or factually accurate, and more importantly is a question reserved for the jury. Therefore, precluding summary judgment.

The record in this case clearly demonstrates material factual disputes regarding the existence of probable cause to arrest, prosecute continually confine, and convict Mr. Carbajal. These questions need to be resolved by the jury; especially, considering that no jurisdiction ever existed to act against Mr. Carbajal, and no probation sentence was ever entered in January of 2006. [12] Mr. Carbajal has thus presented sufficient proof to dispose of the question of probable cause to arrest, confine, prosecute, and convict in the "long recognized" way — by submitting it to the jury. DeLoach, 922 F.2d at 623. Because Plaintiff Mr. Carbajal has sufficiently proved the deprivation of a constitutional right, his claim survives summary judgment. Wilkins, 528 F.3d at 797.

---

[12] As detailed above, the lack of probable cause to arrest, confine, prosecute, and convict Mr. Carbajal work a deprivation of his 4 and 14th Amendment rights; See Franks v. Delaware, 438 US 154, 155-56 (1978).

4.   Malice Was Present In Mr.Carbajal's Wrongful Arrest, Prosecution, Confinement, and Conviction.[13]

The Fourth element of a Fourth Amendment malicious prosecution claim is that the defendant acted with malice. Wilkins, 528 F.3d at 799. Fabricating or omitting evidence "knowingly and intentionally, or with reckless disregard for the truth" is sufficient to establish malice in the context of the Fourteenth Amendment violations. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Mr.Carbajal's verified Complaint [#284] and Deposition Testimony, in conjunction with the false affidavits/complaints to revoke, and the Record of Matters, establish a prima facie case of malice, and that the State Defendants "knowingly, intentionally, willingly, and wantonly," coerced Mr.Carbajal, fabricated documents, and wrongfully prosecuted him, based on a false and manufactured sentence without jurisdiction. Thus, a controverted issue of material fact exists, as to whether or not malice was present, making this action not a case for summary judgment. Exhibit 10, Plaintiff's Deposition Testimony,pp. 3-132, 55-56; Exh. 1, Probation File,pp. 14 ("File ASAP Because The Defendant Has Filed Appeals In This Case That There Was An "ILLEGAL SENTENCE."); Exhibit 2-5, Probation Complaints (Based On False And Distorted Facts),no. 1-2; Exhibit 14, Plaintiff's Response To State Defendants' Discovery Requests, pp. 1-3 (Defendants Warner, Romero, and Quintana admit that the sentence is illegal, and state that they do not care, that if you keep fighting this we'll put you in prison for life); and Exhibit 13, Declaration of Truth, pp. 1-30. Certainly, malice was the driving force here.

5.   Damages In This Case Are Evident And Extreme.

The Fifth element of a Fourth and Fourteenth Amendment malicious prosecution claim is that the plaintiff sustained damages. Wilkins, 528 F.3d at 799. The State Defendants' decision to file false affidavits/complaints to revoke repeatedly over nearly three years, and decision to enforce this illegal deferred with knowledge that their conduct and this sentence was illegal, caused Mr.Carbajal to be continually wrongfully confined, humiliated,

---

[13] The evidence here, supports that the Defendants Warner, Romero, and Quintana, were not motivated to bring to justice Mr.Carbajal based on the notion that he had committed a crime in case no. 98CR96, because they knew that he was innocent, and that no jurisdiction or legal basis existed to prosecute him, detain arrest him based on an illegal and false sentence; thereby, establishing malice. Sure, the lack of probable cause and deliberate disregard for the law shows malice. Koch v. Wright, 184 P.3d 363 (1919); W. Prosser & W. Keeton, Torts § 119 (5th ed. 1984); Carbajal, 198 P.3d at 102-107.

and to be financially broke and homeless, resulting in serious emotional pain and suffering, amongst other injuries. See Exhibit 13, Declaration of Truth, pp 29-31; Exhibit 10, Plaintiff's Deposition Testimony, pp 115-117 (lost employment, lost home, and property); pp 412-419 ("my life was being thrown into turmoil... I was losing my house... dropped out of school... constantly dragged in and out of court. Constantly loosing my jobs. I was emotionally distraught. I was suffering extreme emotional distress). In fact, the illegal confinement here forms part of the damages, given that Mr. Carbajal was illegally confined for nearly three years. Carbajal, 198 P.3d 102, Exhibit 13, Declaration of Truth, pp 29-31. Wallace v. Kato, 549 US 384, 390 (2007). Therefore, evidence exists to support damages, thereby establishing a controverted issue of material fact, as to whether Mr. Carbajal suffered damages due to the violation of his Fourth and Fourteenth Amendment, which makes this not a case for summary judgment.

     5. The State Defendants Do Not Enjoy Qualified Immunity

The Defendants Warner, Rosero, and Quartana admitted to the Plaintiff and documented in their State Narratives that the sentence and their actions were illegal. Thus, based on this intentional malicious prosecution, these defendants are not qualifiedly immune from suit.

The evidence here makes a prima facie showing of a Fourth and Fourteenth Amendment violation, based on Mr. Carbajal's malicious prosecution; thus, establishing the first prong. See Section A 1 through 4, above.

Secondly, "it of course has long been clearly established that knowingly arresting a defendant without probable cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth [and Fourteenth] Amendment's proscription against unlawful search and seizure," and denial of due process of law. Wilkins v. De Reyes, 528 F.3d 790, 805; Limone v. Condon, 372 F.3d 39, 45-48 (1st Cir. 2004) ("The Tenth Circuit recognized that it was clearly established in 1986, that the knowing or reckless falsification or omission of evidence in ... prosecution violates the 14th Amend."). Therefore, the defendants had due notice that they were violating Mr. Carbajal's

civil rights, and still proceeded with complete disregard for Mr.Carbajal's well being. Based on the foregoing, immunity of any kind is not applicable.

B.   Defendants Warner, Romero, and Quintana Conspired To Prosecute Mr.Carbajal In Direct Violation Of His Civil Rights

There exists both direct and circumstancial evidence, that establishes a prima facia case of a conspiracy to violate Mr.Carbajal's civil rights, thus, creating a genuine issue of material factual dispute regarding each of the elements of this cause of action, based on the premise that Warner, Romero, and Quintana worked together and agreed to maliciously prosecute Mr.Carbajal and violated his civil rights in furtherance of this joint venture, to wrongfully convict and confine Mr.Carbajal. Therefore, Mr.Carbajal's conspiracy claims survive.

1.   Mr.Carbajal's Fourth and Fourteenth Amendment Rights Were Violated As A Direct Result Of His Malicious Prosecution.

A prima facie showing of malicious prosecution has been made in Section A, above, and is hereby incorporated by reference; thereby, establishing the existence of an "actual deprivation of rights;" specifically, Mr.Carbajal's Fourth and Fourteenth Amendment rights; Exhibit 1. Notes and Narrative, p 4-5, 14; Exhibit 14, Plaintiffs Response To States Defendants Discovery Requests, pp 1-3; Exhibit 10, Plaintiffs Deposition, pp 3-104; Exhibit 2, Complaint Of Probation, pp 1-3 (Romero and Quintana both signed and approved this false affidavit); Exhibit 3, Complaint of probation officer, pp 1-3; Exhibit 4, Probation Violation Complaint, 1-5 (David Romero and Quintana signed); Exhibit 5, Probation Violation Complaint, pp 1-4; Exhibit 6, Stipulations for Deferred, p 1 (fabrication of records to show a consecutive factor); Exhibit 7, Record of Action, pp 15-38; Exhibit 10, Transcript of Dean Carbajal Deposition, pp 3-103, 370-373, 375, 411-418, 429-431; Exhibit 11, Opinion People v. Carbajal, 198 P.3d 102 (2008), pp 1-8; Exhibit 12, Court of Appeals Opinion, People v. Carbajal, 2012 COA 107, July 5, 2012, pp 4-8, 21-23; Exhibit 13, Declaration of Truth, pp 6-12; Exhibit 15, Plaintiff Dean Carbajal's Declaration And Response To The State Defendants Statement Of Material Facts, pp 1-38. The underlying wrong is thus established for purposes of this analysis.

2.   Defendants Romero, Quintana, and Warner Conspired To Violate Mr.Carbajal's Fourth and Fourteenth Amendment rights.

Sufficient evidence has been presented to support that the defendants

each agreed to violate Mr.Carbajal's civil rights, and that they acted in concert, based on Warner's[14] Romero's[15] and Quintana's[16] words and conduct, which supports that their was a meeting of the minds to maliciously prosecute Mr.Carbajal; thus, establishing a genuine issue of material fact.

a. The Probation Defendants Continual Presence And Involvement With The Enforcement And Prosecution Of This Illegal Sentence And Conviction Is Sufficient To Show Participation In The Conspiracy

The State Defendants Romero, Quintana, and Warner each agreed to revoke Mr.Carbajal's hypothetical and false probation sentence and illegal sentence; with knowledge that the Plaintiff was innocent, and that this sentence was illegal. This is evidenced by Romero, Quintana, and Warner's Narrative and Notes documented in the State data base, which amounts to a confession:

6/04/08   GOT A CALL FROM DETECTIVE LUCIO OF THE DENVER FUGITIVE UNIT IN DENVER. (720) 641-1909. STATED THAT HE... WANTED US TO REVOKE HIS PROBATION. I TOLD HIM THERE IS ALREADY A REVOCATION CURRENTLY PENDING AND WE MAY ADD OR AMEND THE COMPLAINT TO INCLUDE THIS CHARGE. UPON SPEAKING WITH [ CHIEF PROBATION OFFICER WARNER ] IT WAS DECIDED THAT IF WE FILED NOW THAT MAY DELAY THE CURRENT REVOCATION PROCEEDINGS AND DRAG THIS OUT LONGER THAN NECESSARY....

6/06/08   C, CW UPON SPEAKING WITH SHERRI PRICE DA, I HAD MY RESERVATIONS ABOUT FILING AN UPDATED COMPLAINT ON THIS GUY BECAUSE I FEARED THIS WOULD REALLY PROLONG THE CURRENT REVOCATION." **SHE SAID WE NEEDED TO FILE ASAP** BECAUSE THE DEFENDANT HAS FILED APPEALS IN THIS CASE THAT THERE WAS AN ILLEGAL SENTENCE. THEREFORE, I FILED AN AMENDED COMPLAINT TODAY IN DELTA FOR JOE

Exhibit 1, NARRATIVE AND NOTES, p. 14. Certainly, Quintana, Romero, and Warner each agreed to revoke Mr.Carbajal's freedom, despite knowing no probable cause existed. More, Warner,[14] Romero,[15] and Quintana[16] confessed that they knew their actions were illegal and that they had been working together to revoke Mr.Carbajal's freedom, with knowledge that he was innocent and that no jurisdiction existed. Their Evidence of an agreement to violate Mr.Carbajal's civil

[14] Warner's agreement to do wrong and joint effort is detailed throughout Deposition Testimony, Exhibit 10, Deposition Testimony 22, 24, 29, 30, 31, 35, 36, 43, 45, 47, 48, 49, 57-58, 60, 63, 64, 68, 70-71, 75, 81-82, 84-85, 91, 94-98, 99-103, 106-108, 110-111, 122-124, 210, 373-375, 398.

[15] Romero's agreement to do wrong by word and action is detailed through Deposition Testimony, Exhibit 10, pp. 18-724, 29-20, 30-39, 41-49, 53, 57, 60-63, 64-68, 71, 75-78, 80-85, 91-94, 96-99, 100-108, 109-112, 121-122, 160. Exhibits 2-5, Complaints To Revoke, p. 1. 57 actions approval in State Information 1.

[16] Quintana's agreement to do wrong by words and actions is detailed in Deposition Testimony, Exhibit 10, pp. 10-34, 35-40, 42-54, 57, 60-64, 66, 75, 77-103, 106-126, 135-138, 141, 147-154, 160-162, 169-178, 181-183, 213, 338, 370-372, 381, 412, 429-430. See Also Exhibits 2-5, Revocation Complaints, p. 1-5.

rights is present and creates a genuine issue of material fact. See Also Exhibit 14, Plaintiffs Response To State Defendants Discovery Requests, pp 1-5 (Warner, Romero, and Quintana continuously worked to wrongfully convict Mr.Carbajal, despite knowing and acknowledging that the sentence was illegal). See Poole v. Brodie, 532 P.2d 325, 325 (Colo 1975); Saint Johns Church Scott, 194 P.3d 475 (Colo. App 2008)

 b. The Unlawful Purpose Of Defendants Conduct Is Glaring

The Defendants' Statement and Grossly abusive conduct in Filing false affidavits to compel an arrest, confinement, prosecution, and a wrongful conviction, and repeatedly revoking an illegal sentence, with knowledge that no jurisdiction exists or legal authority, is an unlawful purpose to institute process, which was agreed upon by Warner, Romero, and Quintana; thus, establishing a conspiracy. Espinoza v. O'Dell, 633 P.2d 455 (Colo 1981) cert denied, 456 US 430(1982). The unlawful purpose and acts violated Mr.Carbajals Fourth and Fourteenth Amendment rights causing him great injuries, as detailed in Section A, above.

 c. Numerous Overt Acts Were Committed By The Defendants In Furtherance Of This Conspiracy To Violate Plaintiffs Civil Rights

The Plaintiff has made a prima facie showing of numerous overt acts in furtherance of this conspiracy, including, but not limited to: (1) Warner, Romero, and Quintana together drafted and discussed the filing of numerous false affidavits and Complaints to revoke a false sentence, and filed this false information on five different occasions, with knowledge that no legal basis existed, and that Mr.Carbajal was innocent; Exhibits 2-5, Complaints To Revoke, pp 1-5; Carbajal 198.R31 104-107; Exhibit 1, Narrative and Notes, p 4-5, 14; Exhibit 10, Deposition Testimony pp 1-170; Exhibit 13, Declaration of Truth, [#108]; p 2-32; Exhibit 14, Plaintiffs Response To State Defs Discovery Requests, pp 1-5; (2) the manufacturing of a false probation and deferred sentence; See Section A(1)(b), above; and (3) repeated revocation of an illegal deferred in contradiction of applicable law, see section A(1)(a), above. There overt acts had the direct effect of wrongfully arresting, continuing, prosecution, and convicting Mr.Carbajal, in direct violation of Mr.Carbajals 4th and 14th Amendment. Therefore, this case survives summary judgment.

Respectfully submitted this 2nd day of December, 2015, and I declare under the penalty of perjury that the foregoing is true and correct.

Dean Carbajal
12750 Hwy 96 Ln 13
Ordway, Co 81034

Certificate Of Service

The undersigned hereby certifies that the foregoing Verified Response to the Defendants motion For Summary Judgment [# 74] was mailed to the Clerk of Court, and that a true and correct copy was mailed to all interested parties.

Patrick Sayas              pat.sayas@state.co.us
Jeffrey L. Driscoll        jdriscoll@wth-law.com
David Cooperstein          david.cooperstein@denvergov.org
Andrew Ringel              ringela@hallevan.com

Dean Carbajal