IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02862-PAB-KLM

DEAN CARBAJAL,

    Plaintiff,

v.

CARROL WARNER, in her individual capacity,
DAVID ROMERO, in his individual capacity,
JOE QUINTANA, in his individual capacity,
BILL RAILEY, in his individual capacity,
CHRIS WELDON, in his individual capacity,
BENJAMIN SCHROEDER, in his individual capacity,
GILBERTO LUCIO, in his individual capacity,
JAMES DIXON, in his individual capacity,
ADAM BARRETT, in his individual capacity,
JOEL SMITH, in this individual capacity,
JESSE REMBERT, in his individual capacity,
JAY LOPEZ, in his individual capacity,
MICHAEL O'NEILL, in his individual capacity,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado,
DARIN DESEL, Police Officer for the Denver Police Department, in his individual capacity,
FRED MCKEE, Sheriff for the Delta Sheriff's Department, in his individual capacity,
PERRY SPEELMAN, Police Officer for the Denver Police Department, in his individual capacity, and
JEFFREY WATTS, Investigator for the Second Judicial District, in his individual capacity,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 783] filed on February 17, 2016.[1] The magistrate judge recommends that the Court (1) grant the State Defendants' Motion for Summary Judgment [Docket No. 694]; (2) grant the Motion for Summary Judgment filed by defendant Jeffrey Watts [Docket No. 697]; (3) grant the Delta Defendants' Motion for Summary Judgment [Docket No. 714]; and (4) grant in part and deny in part the Denver Defendants' Motion for Summary Judgment [Docket No. 700]. Docket No. 783 at 56. The Recommendation states that objections to the Recommendation must be filed within fourteen days after service on the parties. *Id.*; See 28 U.S.C. § 636(b)(1)(C). The Recommendation was served on February 17, 2016. Objections were due on or before March 7, 2016, but the Court granted plaintiff an extension until March 14, 2016 to file any objections. *See* Docket No. 793. The Denver Defendants filed a timely objection. Docket No. 787.

The Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that

---

[1] For simplicity's sake, the Court adopts the Recommendation's naming convention for the numerous defendants in this case: the "State Defendants" – defendants Warner, Romero, and Quintana; the "Denver Defendants" – defendants Barrett, Desel, Dixon, Lopez, Lucio, O'Neill, Rembert, Smith, Speelman, and the City and County of Denver; and the "Delta Defendants" – defendants Railey, Weldon, Schroeder, and McKee. *See* Docket No. 783 at 2. Since the Denver Defendants are the only parties who object to the Recommendation, the Court will, when discussing their objections, refer to the Denver Defendants simply as "defendants."

Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings"). An objection is proper if it is specific enough to enable the Court "to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In light of plaintiff's pro se status, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

The Court may not grant a motion for summary judgment simply because the nonmovant has failed to respond.[2]  *See Galvin v. McCarthy*, No. 07-cv-00885-PAB-

---

[2]This case was reassigned to this Court on January 27, 2016. Docket No. 780. The procedural history of plaintiff's actions in response to the instant motions is set forth in the Honorable Christine M. Arguello's January 13, 2016 Order, issued before the case was assigned to the Court:

> On December 21, 2015, Magistrate Judge Mix entered a minute order (Doc. # 762) granting a motion by the Defendants (Doc. # 759) to strike Mr. Carbajal's response to a motion for summary judgment (Doc. # 755) for untimeliness. Mr. Carbajal's stricken response was initially due on or before July 30, 2015 (Doc. # 759 at 2). After filing a belated "Motion for Extension of Time to Respond to Defendants' Motions for Summary Judgment (All Pending Motions)" on August 26, 2015 (Doc. # 724), Mr. Carbajal was granted an extension to respond by September 17, 2015 (Doc. # 726). After missing his court-ordered deadline, Mr. Carbajal filed a belated "Second

4

BNB, 2009 WL 890717, at *2 (D. Colo. March 31, 2009) (citing *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002)). The Court must apply the usual Rule 56 analysis and consider whether the moving party has met its burden. *Id.* (citing *Reed*, 312 F.3d at 1194); *see also* Fed. R. Civ. P. 56(e)(3) (if the opposing party does not respond, summary judgment should be entered if "the movant is entitled to it"). The Court must "accept as true all material facts asserted and properly supported in [defendants'] summary judgment motion" and grant summary judgment if, based on those facts, the moving party is entitled to judgment as a matter of law. *Reed*, 312 F.3d at 1195. Moreover, as the magistrate judge notes, Docket No. 783 at 3 n.4, plaintiff's sworn complaint, "is treated as an affidavit for summary judgment purposes as long as it satisfies the standards for affidavits outlined in Rule 56[]." *Adams v. Dyer*, 223 F. App'x 757, 764 n.7 (10th Cir. 2007) (unpublished) (citations omitted).

---

Motion for Extension of Time" on September 21, 2015 (Doc. # 727). In an act of generosity, Magistrate Judge Mix granted the second belated request, extending the deadline until October 17, 2015 and stating "**[n]o further extension of time will be permitted, absent extraordinary circumstances."** (Doc. # 730) (emphasis in original). On October 21, 2015, Mr. Carbajal filed a belated "Third Motion for Extension Of Time." (Doc. # 740). Finding no "extraordinary circumstances" permitting an extension and "no reason why [Mr. Carbajal] could not have timely responded to the Motions for Summary Judgment . . . ," Magistrate Judge Mix denied the third request for an extension. (Doc. # 753 at 18). In defiance of the denial, Mr. Carbajal filed his response on December 8, 2015 (Doc. # 755).

Docket No. 774 at 2-3, ¶ 2 (emphasis and alterations in original). Because plaintiff's response was stricken as untimely, the Court reviews defendants' motions for summary judgment under the standard applicable where the nonmoving party fails to respond.

5

## II. ANALYSIS

This case involves many claims against many different defendants. In 2001, plaintiff agreed to a plea deal resolving six criminal cases pending against him, pursuant to which plaintiff was sentenced to four years imprisonment, three years mandatory parole, and a deferred judgment with four years supervision set to begin after his release from confinement. *See People v. Carbajal*, 198 P.3d 102, 104 (Colo. 2008).

Plaintiff's claims against the Delta Defendants — Section 1983 claims for malicious prosecution and conspiracy to commit malicious prosecution — relate to those defendants' alleged use of physical coercion in 2006 to obtain plaintiff's signature on a document that extended his deferred judgment. *See* Docket No. 254 at 7-8, ¶¶ 40-42. Against the State Defendants, plaintiff brings Section 1983 malicious prosecution and conspiracy claims related to their knowing submission of false affidavits stating that plaintiff violated the terms of his parole and/or deferred judgment. *See* Docket No. 229 at 8 (dismissing all claims against the State defendants except the aforementioned false affidavit claim). Additionally, plaintiff brings Section 1983 unreasonable search and seizure and conspiracy claims against defendant Quintana. Docket No. 254 at 19-20, ¶¶ 90-95. Against defendant Watts, plaintiff asserts claims for unreasonable search and seizure, conspiracy, and excessive use of force. *Id.* at 19-21, ¶¶ 90-95, 100-105. Against the Denver Defendants, plaintiff asserts Section 1983 claims for malicious prosecution, conspiracy to commit malicious prosecution, unreasonable search and seizure, conspiracy to commit unreasonable search and

seizure, excessive force, and municipal liability. *See generally* Docket No. 254 at 16-23. Plaintiffs' claims are primarily based on incidents occurring on April 29, 2009, October 13, 2009, April 5, 2010, August 14, 2010, and August 28, 2010. *See id.* Additional relevant facts are set forth in considerable detail in the Recommendation[3] and will not be recited here except as relevant to the Court's de novo review.

As plaintiff has not objected to any of the magistrate judge's findings that recommend granting defendants' respective motions for summary judgment, the Court has reviewed those findings and is satisfied, with one exception that will be discussed below, that there is "no clear error on the face of the record."[4] Fed. R. Civ. P. 72(b), Advisory Committee Notes.

The magistrate judge recommends that the Court grant the Denver Defendants' motion with two exceptions: the Recommendation finds that defendants are not entitled to summary judgment with respect to plaintiff's § 1983 excessive use of force claims against defendants Barrett and Dixon in connection with the events of April 29, 2009 and against defendants Lucio and O'Neill in connection with the August 28, 2010 incident. *See* Docket No. 783 at 55. The Denver Defendants object to the magistrate judge's recommendation that their motion be denied in part on several grounds.

---

[3]*See* Docket No. 783 at 3-5, 7-19, 22-24, 30 -31, 33-35, 39, 41-44, 47-49.

[4]This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

### A. The April 29, 2009 Incident

Defendants object to the magistrate judge's finding that defendants Barrett and Dixon are not entitled to summary judgment on plaintiff's excessive use of force claim. Defendants argue that the magistrate judge did not address evidence that defendant Barrett was not present during plaintiff's arrest on April 29, 2009. Docket No. 787 at 6. Defendants also argue that plaintiff's claim against defendant Dixon fails because he cannot state with certainty whether defendant Barrett or defendant Dixon used force against him and because plaintiff does not establish that he suffered injuries due to the alleged excessive use of force. *Id.* at 6-8. The Court addresses each of these arguments in turn.

#### *1. Defendant Barrett*

Defendants argue that the magistrate judge erred in disregarding evidence that defendant Barrett was not present during plaintiff's arrest on April 29, 2009. Docket No. 787 at 6. Specifically, defendants point to declarations submitted by defendant Barrett and defendant Dixon, each stating that defendant Barrett was not present, Docket No. 700-9 at 1-2, ¶¶ 2-5; Docket No. 700-4 at 4-5, ¶¶ 13, 16; an "Incident Detail Report" from the incident, which does not list defendant Barrett as a responding officer, Docket No. 700-4 at 6-8; and defendant Barrett's dispatch records dated April 29, 2009, which indicate that he was responding to other calls at the time of plaintiff's arrest. Docket No. 700-9 at 6-10.[5]

---

[5]Both the dispatch call from the incident involving plaintiff and defendant Barrett's dispatch records indicate that the respective calls occurred shortly before midnight on April 28, 2009 and that the incidents lasted until after midnight on April 29, 2009. *See* Docket No. 700-4 at 7-8; Docket No. 700-9 at 6-7. It appears that the parties refer to

8

The Court agrees with defendants that no genuine dispute of material fact exists with respect to plaintiff's excessive use of force claim against defendant Barrett. Plaintiff's complaint alleges that, during the April 29, 2009 incident, defendants "Dixon or Barrett forcefully grabbed and assaulted" him. Docket No. 254 at 11-12, ¶ 56. Given the lack of specificity of plaintiff's allegation and defendants' evidence that defendant Barrett was not present during the April 29, 2009 incident, there is no evidence upon which a reasonable jury could find for plaintiff on his excessive use of force claim against defendant Barrett related to this incident.

### 2. Defendant Dixon

Defendants argue that plaintiff's allegation that either "Dixon or Barrett" committed the alleged excessive use of force fails to establish personal participation and that the magistrate judge did not address plaintiff's failure to establish that he suffered any injuries as a result of the alleged April 29, 2009 excessive use of force. Docket No. 787 at 8-9.

In analyzing an excessive use of force claim, the Court must "analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment Rights under the 'objective reasonableness' standard of the Fourth Amendment." *Marquez v. City of Albuquerque*, 399 F.3d 1216 1220 (10th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). That analysis is conducted "from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Buck v. City of Albuquerque*,

---

this as the "April 29, 2009 incident" because April 29 was the date of plaintiff's arrest. *See* Docket No. 700-4 at 10. The Court will do the same.

549 F.3d 1269, 1287-88 (10th Cir. 2008) (quotation omitted). "Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (quoting *Graham*, 490 U.S. at 396) (internal quotations omitted). In addition to such justifications for the use of force, the Court must also consider "the degree of force . . . used to effect it." *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

Defendants argue that plaintiff has failed to allege personal participation because he has not identified precisely which defendant engaged in the alleged excessive use of force. Docket No. 787 at 7-8. The Court disagrees. Plaintiff's complaint, construed as an affidavit for summary judgment purposes, states that either defendant Dixon or defendant Barrett assaulted him. Docket No. 254 at 12, ¶ 56. Drawing all inferences in plaintiff's favor, a jury could conclude that defendant Dixon personally participated in using excessive force during the April 29, 2009 incident. *Cf. Guion v. Spurlock*, No. 14-cv-00391-LTB-MEH, 2015 WL 394020, at *9 (D. Colo. Jan. 29, 2015) ("Plaintiff's allegations that [one of two defendants] destroyed Plaintiff's mail on specific dates in 2013 is sufficient to demonstrate their personal participation in the alleged constitutional violation"). The case that defendants cite, *Shouse v. Price*, 2008 WL 360854 (W.D. Okla. Feb. 8, 2008), does not compel a contrary result. In that case, not only had the plaintiff stated that he could not identify which of four defendants "took the actions about which he complains," the plaintiff "attaches [evidence] . . . that show[s] it was

indeed *not* any of the four [defendants] who physically placed him under arrest." *Id.* at *9 (emphasis in original). Here, although there is evidence that defendant Barrett could not have personally participated in employing excessive use of force during the April 29, 2009 incident, there is no such evidence with respect to defendant Dixon. The fact that defendant Barrett could not have participated makes it more certain that defendant Dixon did.

Defendants argue that the magistrate judge erred in not addressing plaintiff's failure to establish that the alleged excessive use of force caused him any injuries. Docket No. 787 at 8-9. Defendants point to "photographic evidence," namely, plaintiff's booking photo from April 29, 2009, *see* Docket No. 700-8, and to a prior filing in plaintiff's criminal case in state court where plaintiff provided a description of the events of April 29, 2009 that did not include any injury. See Docket No. 700-7 at 2, 5.

In *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007), the Tenth Circuit considered an excessive force case based on "unduly tight handcuffing" and found that such a claim "requires some actual injury that is not de minimis, be it physical or emotional." *Id.* at 1129. "Although this language from *Cortez* was broadly worded . . . [the Tenth Circuit's] post-*Cortez* cases reflect the view that the holding in *Cortez* is limited to handcuffing cases." *United States v. Rodella*, 804 F.3d 1317, 1327 (10th Cir. 2015), *petition for cert. filed*, --- U.S.L.W. ---- (U.S. Mar. 16, 2016) (No. 15-1158); *see also Maresca v. Bernalillo County*, 804 F.3d 1301, 1315 (10th Cir. 2015) ("Generally, since *Cortez*, the Tenth Circuit has required a showing of more than *de minimis* injury only in Fourth Amendment excessive force cases based on handcuffing," and has only

suggested that the requirement might apply in other contexts in dicta); *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (stating that *Cortez* "explain[s]" what must be shown to recover for an excessive force claim "in a handcuffing case"); *Koch v. City of Del City*, 660 F.3d 1228, 1247 (10th Cir. 2011) (noting that the standard excessive force factors do not require a showing of injury but "an examination of the resulting injury supplements our inquiry" in "cases in which the handcuffing is permissible yet the *manner* of handcuffing may render the application of force excessive") (emphasis in original) (citation and quotations omitted). "[T]here is no de minimis injury requirement for Fourth Amendment excessive force claims that involve more than mere handcuffing." *Rodella*, 804 F.3d at 1329.[6]

Because the injury requirement in excessive force claims applies is limited to handcuff cases, the Court finds no error in this aspect of the Recommendation.

---

[6]Although *Rodella* is the clearest statement the Tenth Circuit has provided concerning the lack of injury requirement in non-handcuffing excessive force cases, the fact that *Rodella* was only recently decided does not entitle defendants to qualified immunity. As of at least 2001, the Tenth Circuit has upheld non-handcuffing excessive force cases where there was no evidence of physical injury. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001). In so doing, the Tenth Circuit recognized that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests– a person's 'sense of security' and individual dignity." *Id.* at 1195. Given the holding in *Holland*, and the Tenth Circuit's limitation of the de minimis injury requirement to handcuffing cases, *see Koch*, 660 F.3d at 1247 ("we examine the resulting injury in tight-handcuffing cases in order to fill a small analytical void that *Graham* [*v. Connor*, 490 U.S. 386 (1989),] left open" (citing *Fisher*, 584 F.3d at 902 (Gorsuch, J, concurring) (internal quotations omitted)), it was "clear to a reasonable officer in [defendants'] position" that plaintiff had a constitutional right to be free from excessive use of force, whether or not that force caused plaintiff injury. *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

### B.  The August 28, 2010 Incident

Defendants object to the magistrate judge's recommendation that the Court deny defendants' motion for summary judgment with respect to plaintiff's excessive use of force claim against defendants Lucio and O'Neill.  Specifically, they argue that plaintiff has provided no evidence to support his claim that he was beaten and sustained "serious injuries to his head, back and ribs, as well as serious emotional trauma," Docket No. 787 at 10 (citing Docket No. 254 at 15, ¶ 74), and that there is no evidence that plaintiff suffered any injury as a result of the alleged use of force.  *Id.*

As the magistrate judge noted, defendants admit that the parties "offer conflicting accounts" with respect to what happened on August 28, 2010.  Docket No. 700 at 27.  Defendants argue that, pursuant to the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), the Court should reject plaintiff's version of events.  *Scott* concerned an excessive use of force claim in which a police officer, during a car chase, "applied his push bumper to the rear of [plaintiff's] vehicle," causing plaintiff to lose control of the vehicle and crash.  *Id.* at 375.  In the plaintiff's version of events, he "remained in control of the vehicle, slowed for turns and intersections, and typically used his indicators for turns.  He did not run any motorists off the road."  *Id.* at 379.  A video recording of the incident, however, showed "[plaintiff's] vehicle racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast.  We see [plaintiff's vehicle] swerve around more than a dozen other cars, cross the double-yellow line, and force cars traveling in both directions to their respective shoulders to avoid being hit," requiring the officers in pursuit to "engage in the same hazardous maneuvers just to

keep up." *Id.* at 379-80. The Supreme Court held that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

The magistrate judge declined defendants' invitation to apply *Scott* to the facts of this case on the ground that *Scott* requires that a nonmovant's evidence or testimony be "blatantly contradicted by the record," such as an "incontrovertible video or audio recording of relevant events." Docket No. 783 at 53 (quoting *Carbajal v. St. Anthony Central Hosp.*, No. 12-cv-02257-REB-KLM, 2015 WL 3896902, at *2 (D. Colo. June 23, 2015)). Defendants urge the Court to find just such a blatant contradiction here. Defendants point to evidence that, when plaintiff was examined by a nurse as part of his jail admissions process several hours after he was allegedly beaten, the only injury plaintiff complained of was to his head and the only injury the nurse noted was a cut above plaintiff's left temple. Docket No. 787 at 11; *see also* Docket No. 702 at 1-2. Defendants argue that "[c]ommon sense alone" should compel the conclusion that plaintiff's physical injuries would have been more extensive had he been beaten as he alleges. Docket No. 787 at 11-12. Defendants also argue that the evidence "provides a conclusive explanation" for plaintiff's cuts, namely, before plaintiff was apprehended, he had smashed the window of an apartment and climbed inside, cutting his head on broken glass. *Id.* at 12. Defendants point to photos of the broken glass, blood evidence that matched plaintiff's DNA, testimony from defendants Lucio, O'Neill, and Lopez that plaintiff had already sustained the cuts when they first encountered him, and

plaintiff's criminal conviction for felony burglary which was based on the physical and documentary evidence of the break-in. *Id.*; *see also* Docket No. 700-3 at 3, ¶ 11, 7-13, Docket Nos. 700-21 to 700-23; Docket No. 700-16 at 2, ¶ 5; Docket No. 700-17 at 3, ¶ 11; Docket No. 700-24.

The Court finds that defendants' evidence is not, as they contend, "so overwhelming as to be conclusive" that plaintiff's version of events is a fabrication. Docket No. 787 at 12. First, while the blood evidence to which defendants refer is evidence of an alternate cause of the cuts on plaintiff's head, it does not foreclose the possibility plaintiff was beaten. Second, defendants' invitation to the Court to apply its "common sense" to conclude that plaintiff's injuries would have been more severe if his version of events were true is, in this context, an invitation to draw inferences in defendants' favor. This, of course, the Court cannot do on summary judgment. The Court agrees with the magistrate judge that, if plaintiff's version of events is believed, the elements of an excessive force claim are satisfied with respect to the August 28, 2010 incident.

### C. Defendant Watts' Motion

Although plaintiff does not object to defendant Watts' motion for summary judgment, the Court addresses it as part of its independent review of the Recommendation. The magistrate judge recommends granting defendant Watts' motion on the ground that plaintiff has failed to present evidence of any injury caused by defendant Watts' alleged use of force on August 24, 2010. Docket No. 783 at 26-27. As discussed above, the Tenth Circuit does not require an excessive force plaintiff to

demonstrate injury, except in handcuffing cases. Thus, the Recommendation's finding in this respect will be overruled.

The Court has reviewed defendant Watts' motion and finds that defendant Watts is not entitled to summary judgment with respect to plaintiff's excessive use of force claim related to the August 24, 2010 incident. The only ground besides lack of injury that defendant Watts offers with respect to this injury is that defendant Watts' actions "were insufficient to obtain an arrest[.]" Docket No. 697 at 8. The Court is unaware of any case that immunizes officers from excessive force claims if the victim of such force is able to evade capture. While the fact that plaintiff was fleeing arrest is certainly relevant to whether defendant Watts employed excessive force, *see Weigel*, 544 F.3d at 1151-52, it is not dispositive. The Court finds that, if plaintiff's version of events is true, namely, that defendant Watts "rac[ed] his car at [plaintiff] and [struck] him with the intent to cause him serious injury," Docket No. 254 at 21, ¶ 109, a reasonable jury could find that defendant Watts employed excessive force. Accordingly, defendant Watts' motion for summary judgment will be denied with respect to plaintiff's excessive use of force claim related to the events of August 24, 2010. The Court has reviewed the remainder of the Recommendation concerning defendant Watts' motion for summary judgment and is satisfied that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 783] is **ACCEPTED** in part and **REJECTED** in part as reflected in this Order. It is further

**ORDERED** that defendants Carrol Warner, David Romero, and Joe Quintana's Motion for Summary Judgment [Docket No. 694] is **GRANTED**. It is further

**ORDERED** that defendant Jeffrey Watts' Motion for Summary Judgment [Docket No. 697] is **GRANTED** in part and **DENIED** in part as reflected in this Order. It is further

**ORDERED** that defendants Adam Barrett, Darin Desel, James Dixon, Jay Lopez, Gilberto Lucio, Michael O'Neill, Jesse Rembert, Joel Smith, Perry Speelman, and the City and County of Denver's Motion for Summary Judgment [Docket No. 700] is **GRANTED** in part and **DENIED** in part as reflected in this Order. It is further

**ORDERED** that defendants Bill Railey, Chris Weldon, Benjamin Schroeder, and Fred McKee's Motion for Summary Judgment [Docket No. 714] is **GRANTED**. It is further

**ORDERED** that defendants Carrol Warner, David Romero, Joe Quintana, Adam Barrett, Darin Desel, Jay Lopez, Jesse Rembert, Joel Smith, Perry Speelman, the City and County of Denver, Bill Railey, Chris Weldon, Benjamin Schroeder, and Fred McKee are dismissed from this lawsuit.

DATED March 29, 2016.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge