IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02862-PAB-KLM

DEAN CARBAJAL,

      Plaintiff,

v.

GILBERTO LUCIO,
JAMES DIXON,
MICHAEL O'NEILL, and
JEFFREY WATTS,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on Plaintiff's Motion for New Trial Under Fed. R. Civ. P. 59 [Docket No. 967]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

      Plaintiff initiated this lawsuit on November 23, 2010. Docket No. 1. The complaint asserted a variety of claims against many different defendants under 42 U.S.C. § 1983.[1] On March 29, 2016, the Court entered an order accepting in part and rejecting in part the magistrate judge's recommendation on defendants' summary judgment motions. Docket No. 804. The effect of that order was to dismiss the majority of plaintiff's claims. *See id.* at 17. By the start of trial on July 10, 2017, plaintiff's only

---

[1]A detailed summary of plaintiff's claims can be found in the assigned magistrate judge's report and recommendation on summary judgment, Docket No. 783, as well as this Court's order accepting in part the magistrate judge's recommendation. Docket No. 804.

remaining claims were claims for excessive force against defendants James Dixon, Jeffrey Watts, Gilberto Lucio, and Michael O'Neill. *See* Docket No. 873. These claims were based on incidents occurring on April 29, 2009, August 24, 2010, and August 28, 2010. *See generally* Docket No. 254 at 16-23. Specifically, plaintiff alleged that: (1) defendant Dixon used excessive force against plaintiff while responding to a noise complaint at plaintiff's residence on April 29, 2009, *see* Docket No. 783 at 33-35; (2) defendant Watts hit plaintiff with Watts' car while attempting to serve plaintiff with a subpoena on August 24, 2010, *see id.* at 23; and (3) defendants O'Neill and Lucio beat plaintiff during his arrest on August 28, 2010, *see id.* at 51. After a seven-day jury trial, the jury returned a verdict for defendants on all claims. *See* Docket No. 959. On August 22, 2017, plaintiff moved for a new trial. Docket No. 967. Plaintiff supplemented his motion on September 8, 2017. Docket No. 975. On September 12 and 18, 2017, defendants filed responses to plaintiff's motion. *See* Docket Nos. 976, 977.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(a) provides that "[t]he Court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A motion for a new trial may be granted on any error, so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir.

1998)).

## III. ANALYSIS

Plaintiff asserts eleven grounds for a new trial: (1) the Court improperly allowed defendants to introduce evidence regarding plaintiff's criminal history and lengthy prison sentence to vilify him in front of the jury, Docket No. 967 at 4, 5, 9, 15-16; Docket No. 975 at 2, 5; (2) the Court erred in instructing the jury on the meaning of a lawful use of force and in denying plaintiff a "theory of the case instruction," Docket No. 975 at 4, 6; (3) defense counsel misrepresented evidence in opening and closing arguments, Docket No. 967 at 8; (4) the Court erred in excluding the testimony of plaintiff's witness, Chris Marez, *id.* at 10;[2] (5) the Court improperly admitted expert testimony by Stephen Swan, *id.* at 13; (6) the Court erred in allowing evidence of plaintiff's drug use, Docket No. 975 at 7; (7) defense counsel improperly discussed plaintiff's past lawsuits in order to portray him as a chronic litigator, Docket No. 975 at 10; (8) the Denver Police Department intentionally interfered with the jury's deliberations, Docket No. 967 at 12; (9) plaintiff was improperly paraded in front of the jury in handcuffs, *id.* at 15; (10) the jury verdict in favor of defendants O'Neill and Watts was against the weight of the evidence, *id.* at 14; and (11) the cumulative effect of these errors deprived plaintiff of a fair trial. Docket No. 975 at 10. Because plaintiff is proceeding *pro se*, the Court

_____

[2]Plaintiff's motion also contains a section entitled, "Mr. Carbajal Was Denied A Fair Opportunity to Present His Case-in-Chief When The Trial Court Denied Mr. Carbajal leave to Present Testimony From Martin Carbajal." Docket No. 967 at 11. However, because plaintiff makes no developed argument on this issue, any claim of error is waived. *See Gunn v. Carter*, No. 13-cv-2197-WJM-MEH, 2016 WL 8446261, at *2 (D. Colo. Oct. 24, 2016) ("[I]nadequately briefed arguments are deemed waived."); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .")

construes his motion liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## A.  Use of Plaintiff's Criminal History

Plaintiff contends that the Court improperly admitted evidence related to his criminal history.  Plaintiff's challenge consists of four sub-arguments: (1) defense counsel improperly commented on plaintiff's prior misdemeanor convictions, Docket No. 967 at 4, 9; Docket No. 975 at 5; (2) defense counsel improperly used the length of plaintiff's prison sentence to vilify him, Docket No. 967 at 5; (3) the Court erred in allowing defendants to introduce evidence of plaintiff's prior convictions to show defendants' "state of mind," Docket No. 975 at 2, 5; and (4) the Court improperly allowed evidence of fraudulent or void felony convictions for purposes of impeachment. Docket No. 967 at 15-16.

### 1.  Prior Misdemeanor Convictions

Plaintiff argues that defense counsel improperly used plaintiff's prior misdemeanor domestic violence convictions to vilify him in front of the jury.  Docket No. 967 at 4, 9; Docket No. 975 at 5.  At trial, the Court ruled that evidence related to plaintiff's relationship with his ex-girlfriend, Lorena Holguin, including plaintiff's misdemeanor convictions for violating a protection order, was admissible for two purposes: (1) to rebut plaintiff's testimony that he had a good relationship with Ms. Holguin and was not doing anything wrong at the time of his arrest;[3] and (2) to explain

_____

[3]In August 2010, Denver Police Department Fugitive Unit officers were attempting to locate and arrest plaintiff on outstanding warrants.  On August 28, they tracked plaintiff's phone to Ms. Holguin's apartment, where Officer Lucio saw plaintiff exit through the back door.  At the time, Ms. Holguin had a protective order against

defendants' sense of urgency in apprehending plaintiff, as well any force used at the time of plaintiff's arrest.[4]

Plaintiff cites *United States v. Commanche*, 577 F.3d 1261 (10th Cir. 2009), for the proposition that a court may not allow evidence regarding the details of a criminal defendant's prior felony convictions, even if those convictions are admissible for impeachment purposes under Fed. R. Evid. 609. *See* Docket No. 967. In that case, however, the defendant's prior convictions were admissible only under Fed. R. Evid. 609. *See Commanche*, 577 F.3d at 1269-70. Here, by contrast, plaintiff opened the door to details about his criminal conduct by asserting that he had a good relationship with Ms. Holguin, was not committing any crimes on August 24 and 28, 2010, and was being persecuted by defendants in retaliation for his prior complaints of police abuse.[5] Plaintiff's prior convictions were also relevant to the excessive force analysis under *Graham v. Connor*, 490 U.S. 386 (1989), as defendants testified that their knowledge of

---

plaintiff preventing him from having any contact with her.

[4]To the extent that the evidence consisted of information about plaintiff's prior felony convictions, the Court ruled that such evidence was also admissible for impeachment purposes under Fed. R. Evid. 609. Given that plaintiff's credibility was a central issue at trial, the Court determined that the probative value of plaintiff's felony convictions was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. The Court did, however, instruct the jury that the evidence of plaintiff's prior felony convictions was to be used only for purposes of judging plaintiff's credibility.

[5]Moreover, to the extent that plaintiff challenges evidence regarding his general relationship with Ms. Holguin and not his prior misdemeanor convictions, Fed. R. Evid. 609 does not apply.

plaintiff's criminal history informed their encounters with plaintiff on August 24 and 28.[6]

Plaintiff contends that defense counsel committed gross misconduct by repeatedly making comments during opening and closing arguments regarding Ms. Holguin as the victim. Docket No. 967 at 5, 9. Contrary to plaintiff's assertions, however, defense counsel did not "harp" on this issue. Counsel made only two comments about Ms. Holguin during opening and closing arguments that were not directly relevant to rebutting plaintiff's assertion that he was not doing anything wrong at the time of his encounters with police. The first statement was that Ms. Holguin was in protective custody on August 27, 2010. The second was that defense counsel did not bring Ms. Holguin into court to testify because he did not want to "subject her to a cross-examination from the man who stalked, imprisoned her." Plaintiff cannot show that these isolated remarks were unduly prejudicial. The Court sustained plaintiff's objection to the first comment and instructed the jury after the second that plaintiff's prior felony convictions were to be considered only for the purpose of determining credibility. The Court therefore cannot conclude that counsel's remarks affected the fairness of the trial. *See Beene v. Ford Motor Co.*, 513 F. App'x 755, 762 (10th Cir. 2013) (unpublished) (holding that the district court did not abuse its discretion in concluding "that the jury was not unduly influenced by the allegedly improper remarks" during

---

[6]In *Graham v. Connor*, the Supreme Court stated that a determination of whether an officer's use of force was objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Id.*

6

closing argument, where "[t]he remarks complained of were few and isolated, and [defendant's] three objections were sustained").

### 2. Length of Sentence

At trial, the Court ruled that defense counsel could ask plaintiff whether he was serving a lengthy sentence, but could not go into the actual length of the sentence, in order to correct the misleading impression, created by plaintiff, that he was a free man. As defense counsel argued, the fact of plaintiff's incarceration was relevant to the issue of plaintiff's claim for emotional distress damages. Plaintiff testified at length about his various hobbies and professional aspirations and argued that the physical and emotional injuries he sustained in his encounters with defendants "changed [his] life entirely." Had the Court precluded defendants from introducing evidence regarding plaintiff's prison sentence, the jury would have been "left with the highly prejudicial and unfair inference that everything that ha[d] gone wrong in [plaintiff's] life [was] a result" of defendants' conduct. Given these circumstances, there was nothing improper about allowing defendants to question plaintiff regarding his prison sentence.

### 3. "State of Mind" Evidence

Plaintiff contends that the Court erred in allowing evidence of plaintiff's prior convictions for purposes of showing defendants' "state of mind." Docket No. 975 at 2, 5. At trial, the Court permitted defendants to introduce evidence regarding plaintiff's prior convictions on the basis that the information defendants had before their encounters with plaintiff was directly relevant to whether defendants' use of force was excessive. *See Graham*, 490 U.S. at 396. Plaintiff argues that defendants' "state of

mind" was irrelevant because defendants denied using any force against plaintiff. Docket No. 975 at 2. This argument fails for two reasons. First, defendant O'Neill did testify that he used force in apprehending plaintiff. He stated specifically that he pulled plaintiff off a roof and "forced [him] to the ground where [they] had a brief struggle" as plaintiff tried to return to his feet. Second, even if certain defendants denied using force, their knowledge of plaintiff's prior convictions informed the general manner in which they approached plaintiff's capture. Plaintiff has thus failed to establish that the Court erred in admitting plaintiff's prior convictions as relevant to the excessive force analysis under *Graham*.

### 4. Fraudulent and/or Void Convictions

Plaintiff alleges that his motion to suppress evidence of his prior convictions was intentionally "rejected by the Clerk of Court in an effort to prevent" the Court from learning that plaintiff's prior convictions were void and/or fraudulent. Docket No. 967 at 15-16. In support of his argument, plaintiff has submitted a motion to suppress evidence of his prior convictions, which is dated June 30, 2017. *See id.* at 19, 32. Plaintiff has also attached an envelope purportedly showing that his motion was rejected by the Clerk's office in early July 2017. *See id.* at 18. The Court finds this evidence insufficient to support plaintiff's claim that the Clerk's office intentionally prevented plaintiff from filing his motion. As an initial matter, plaintiff has not explained what the various dates on the envelope actually represent. The envelope indicates that mail was returned to plaintiff on July 7, 2017 and received in a mailroom on July 10, 2017. However, there is no evidence that the Clerk of the Court was responsible for the

return.  Plaintiff's assertion that he attempted to file a motion in limine in June 2017 is also inconsistent with his statements at trial.  On the first day of trial, the Court twice addressed the issue of plaintiff's prior convictions.  In the first instance, the Court expressed doubt that plaintiff would be able to collaterally attack his conviction so late in the proceedings, to which plaintiff responded that he had been "operating based on the court's local rules that the courts generally disfavor motions to suppress until they have had an opportunity to hear the facts or the evidence" relevant to the suppression issue. During the second discussion, the Court asked plaintiff what had prevented him from raising the issue before trial.  Plaintiff stated only that his convictions were "being collaterally attacked independently in the individual proceedings" and that a "separate motion was filed with the courts to attack the[] judgments in the official documents." Defendants subsequently argued to the Court that plaintiff had waived the issue of the admissibility of his prior convictions by failing to file a motion in limine before trial. Again, plaintiff made no claim that he had, in fact, filed such a motion, arguing instead that "jurisdictional defects in a void judgment that's based on fraud" can never be waived.  Because plaintiff has failed to explain the inconsistencies between his statements at trial and the evidence submitted in support of his instant motion, the Court finds no basis for a conclusion that the Clerk's office intentionally rejected plaintiff's motion.[7]

There is also no support for plaintiff's assertion that, "had this document not been rejected[,] the verdict here would have been different."  Docket No. 967 at 16.  In

---

[7]Even if the Clerk's Office did, for some unexplained reason, reject plaintiff's motion, plaintiff offers no reason he could not have raised the issue orally before trial.

fact, the Court addressed the admissibility of plaintiff's prior convictions and ruled that it was improper for plaintiff to collaterally attack final criminal judgments in the middle of his civil trial. Plaintiff has not cited any authority demonstrating that the Court's ruling was incorrect. *Cf. Custis v. United States*, 511 U.S. 485, 496 (1994) (holding that defendant was not permitted to challenge state convictions in federal sentencing and reasoning that to allow otherwise would "deprive the state-court judgment of its normal force and effect in a proceeding that has an independent purpose other than to overturn the prior judgment" (internal quotation marks and brackets omitted)); *White v. Medina*, 464 F. App'x 715, 718-19 (10th Cir. 2012) (unpublished) (holding that habeas petitioner was not entitled to collaterally attack prior conviction that was to be used only for impeachment purposes).[8]

### B.  Errors in Jury Instructions

Plaintiff argues that the Court erred in instructing the jury that "force is lawful if it is reasonably believed to be necessary" and improperly denied plaintiff a "theory of the case" instruction. Docket No. 975 at 4, 6.

With respect to the first claim of error, plaintiff contends that the giving of an instruction regarding lawful use of force was improper because, with the exception of

---

[8]The Supreme Court has held that the use of a conviction to impeach a defendant's credibility in a criminal trial constitutes a violation of due process when the defendant was denied the assistance of counsel in the prior criminal proceeding. *See Loper v. Beto*, 405 U.S. 473, 480-84 (1972). The Court has not found any case applying this principle in the civil context. Nor has plaintiff made any assertion that he was denied the assistance of counsel in his criminal cases. Plaintiff also does not argue that his prior convictions have "been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure" based on a finding of rehabilitation or innocence, which would render them inadmissible under Fed. R. Evid. 609(c).

handcuffing, defendants denied using any force against plaintiff. Docket No. 975 at 4.[9]

Plaintiff is incorrect. As discussed above, defendant O'Neill admitted to using some

force during plaintiff's arrest. Accordingly, the Court's instruction on lawful use of force

was appropriate.

The instruction was also consistent with established law. While plaintiff argues

that the Court "unfairly instructed the jury to consider highly prejudicial evidence,"

Docket No. 975 at 4, the jury was properly informed that it should consider the totality of

facts and circumstances confronting defendants at the time of the alleged use of force,

including "[t]he severity of the crime for which the police encounter was initiated" and

"[w]hether the person who was arrested posed an actual or a reasonably-perceived

threat to the safety" of himself or others. *See* Docket No. 956 at 17; *see also Graham*,

490 U.S. at 395-96 (providing that use of force in the course of an arrest, investigatory

stop, or other seizure should be evaluated under an objective reasonableness standard

---

[9]Plaintiff does not specify the particular instruction to which he objects, and none
of the instructions given by the Court contain the precise language quoted in plaintiff's
motion. The closest language can be found in Instruction No. 13, which stated, in
relevant part:

> In determining whether any force used by a defendant was excessive, you
> should remember that a law enforcement officer has the right to use such
> force as is necessary under the circumstances then facing him. You
> should approach this inquiry from the perspective of a reasonable officer
> facing the same circumstances the defendant you are considering faced. .
> . . Force may be considered objectively unreasonable if no reasonable
> police officer would have used such degree of force under the
> circumstances. . . . The amount of force used can be reasonable even if .
> . . it was based on a mistaken, but otherwise reasonable, belief that such
> force was necessary . . . .

Docket No. 956 at 16-17.

requiring "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").

Plaintiff's argument that the Court improperly denied him a "theory of the case" instruction is also without merit. A party is entitled to an instruction on his theory of the case if it is consistent with applicable law and supported by the evidence. *Pratt v. Petelin*, 733 F.3d 1006, 1009 (10th Cir. 2013); *Craig v. Murphree*, 35 F. App'x 765, 769 (10th Cir. 2002) (unpublished). A court may deny such an instruction, however, if the same subject matter is addressed in the general instructions, if the proffered instruction is argumentative, or if the instruction merely summarizes the facts in a light most favorable to the proponent. *United States v. Chadwick*, 554 F. App'x 721, 723 (10th Cir. 2014) (unpublished); *Craig*, 35 F. App'x at 769; *United States v. Posey*, 647 F.2d 1048, 1052 (10th Cir. 1981).

At the final jury instruction conference on July 18, 2017,[10] plaintiff tendered a four-page "statement of the case" instruction in which he summarized the facts of the case in inflammatory terms. *See* Docket No. 957 at 2 (plaintiff's tendered Instruction No. 2). For example, plaintiff gave the following account of the April 28, 2009 incident:

> Denver Police broke into the residence and charged up the stairs. Officer Dixon ran up and abusively grabbed Mr. Carbajal and slammed him onto the stairs as he cranked on his arm upward until his shoulder separated, while also twisting his wrist. Dixon then began to maliciously strike Mr. Carbajal in the back of his head, causing him extreme pain and suffering.

---

[10]The final jury instruction conference was held at 12:10 p.m. on the final day of trial. Docket No. 954 at 3. Closing arguments began at 2:30 p.m. *Id.*

*Id.* The Court declined to include plaintiff's "statement of the case" in the final jury instructions, reasoning that it would take considerable time to revise plaintiff's tendered instruction and that plaintiff would have the ability to make all the same points in his closing argument. This ruling was proper. Plaintiff's instruction was a highly argumentative summary of the facts in a light most favorable to plaintiff's case and thus appropriately reserved for closing argument. *Cf. United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir. 1992) ("[S]ummaries of the evidence in the light most favorable to the defense . . . [are] more appropriate for closing argument."). Moreover, because the Court instructed the jury on all elements of plaintiff's excessive force claims, plaintiff's assertion that the jury "was denied an opportunity to understand the law as it relates to Plaintiff's case" is without merit. Docket No. 975 at 7.

In addition, the Court did not err in rejecting plaintiff's proposed Instruction No. 5. That instruction summarized plaintiff's claims against defendants and suffered from many of the same flaws as the instruction tendered at the final jury instruction conference. Court's Instruction No. 11 adequately informed the jury of the basis for plaintiff's claims. *See* Docket No. 956 at 14. Plaintiff has failed to show that a new trial is warranted based on alleged errors in the jury instructions.

### C. Misrepresentation of Evidence

Plaintiff argues that defense counsel repeatedly misrepresented the evidence in opening and closing arguments, thereby "compell[ing] a wrongful verdict." Docket No. 967 at 8. "A contention that improper argument or other trial misconduct was so serious that a new trial should have been granted is largely left to the discretion of the

trial court." *Beene*, 513 F. App'x at 758 (internal quotation marks omitted). "[A] new trial may be required only if the moving party shows that it was prejudiced by the attorney misconduct." *Id.* (internal quotation marks omitted). Here, plaintiff identifies two alleged misrepresentations that, he argues, were sufficiently prejudicial to warrant a new trial.

First, plaintiff contends that defense counsel Kennedy "lied in Opening that Mr. Watts was no where near Mr. Carbajal and, thus, could not have hit him, despite the evidence showing that Watts chased Mr. Carbajal with his car." Docket No. 967 at 8. Counsel's exact words during opening argument were that "Mr. Watts [was] going to testify that he never got close enough to Mr. Carbajal to have any contact with him." Contrary to plaintiff's assertions, this statement was not a mischaracterization of the evidence. Defendant Watts testified at trial that he "saw [plaintiff] coming towards [him] on [plaintiff's] bicycle" when plaintiff made a sudden right turn into the alley where he "almost hit a dumpster." Despite repeated questioning by plaintiff, defendant Watts maintained that he was never close enough to plaintiff to hit him with his car. Counsel's opening statement was therefore consistent with the evidence.

Plaintiff also argues that counsel for defendants Nixon, O'Neill, and Lucio improperly suggested that plaintiff was lying about his hobbies. Docket No. 967 at 8. During closing argument, counsel told the jury: "To say that [plaintiff] was not honest is a severe understatement. He jumped from falsehood to falsehood . . . . He started this case telling you he is an entrepreneur who enjoys jet skiing. When I pointed out that in reality he was convicted of 15 felonies and has been in jail for the past seven years, his

response is that those convictions are unconstitutional."  Counsel's statements are a

fair comment on the evidence.  In any event, plaintiff cannot show that this single

comment by defense counsel constitutes a sufficient basis for a new trial, *see*

*Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1131 (10th Cir. 2009) ("[A] stray

improper remark in closing is no basis for upsetting a trial and requiring the parties and

district court to redo their ordeal."), especially considering the Court's repeated

instruction to the jury that the parties' closing arguments were not evidence.  *See id.*

(noting that an instruction "reminding the jury that counsels' arguments are not evidence

. . . can help mitigate an improper closing argument").

### D.  Testimony of Chris Marez

Plaintiff argues that the Court violated his due process rights under the

Fourteenth Amendment by not allowing him to present testimony from Chris Marez to

impeach defendant Dixon's "false statement that he did not break open the [d]oor to

[plaintiff's] home" in April 2009.  Docket No. 967 at 10.  The Court disagrees.

The parties submitted their joint proposed final pretrial order on May 11, 2016.

Docket No. 818.  While plaintiff listed several witnesses, he did not provide identifying

information about each witness or a description of each witness's testimony.  *See id.*

On May 18, 2016, the magistrate judge ordered plaintiff to file an amendment to the

pretrial order stating the testimony he expected to elicit from each witness and providing

contact information for each witness.  Docket No. 822.  Plaintiff filed his amendment on

August 4, 2016.  Docket No. 853.  That amendment – which did not list Mr. Marez as a

witness – was incorporated by reference into the final pretrial order and deemed to

supersede plaintiff's previous witness list.  *See* Docket No. 873 at 4.  On December 14, 2016, plaintiff filed a trial witness list identifying Mr. Marez as a "may call" witness. Docket No. 885 at 4.  On December 20, 2016, defendants moved to exclude Mr. Marez's testimony as a sanction under Fed. R. Civ. P. 37(c)(1) based on plaintiff's failure to adequately disclose Mr. Marez as a possible trial witness during discovery or in the final pretrial order.  *See* Docket No. 896 at 3-6.  On February 8, 2017, the Court denied defendants' motion without prejudice.  *See* Docket No. 919 at 3.  The Court found that there was sufficient time before trial for defendants to cure any prejudice caused by plaintiff's late disclosure.  Docket No. 919 at 3.  However, the Court ordered plaintiff to "provide to defendants Mr. Maurez's contact information in accordance with Rule 26(a) and detail Mr. Maurez's expected testimony" by March 10, 2017 if plaintiff intended to call Mr. Marez either in his case-in-chief or as a rebuttal witness.  Docket No. 919 at 3.

Trial began on July 10, 2017.  Docket No. 946.  That morning, defense counsel informed the Court that plaintiff had not provided contact information for Mr. Marez as directed in the Court's February 8, 2017 order.  Plaintiff responded that, despite his best efforts, he had been unable to locate Mr. Marez or procure his contact information.  The Court agreed to read Mr. Marez's name to the jury as part of the list of witnesses expected to testify, but deferred ruling on the admissibility of Mr. Marez's testimony.

After the close of defendants' case on July 18, 2017, plaintiff notified the Court that he intended to call Mr. Marez as a rebuttal witness.  Defendants objected, arguing that the testimony should be excluded because plaintiff had failed to comply with the

16

Court's February 8, 2017 order and the testimony would be unfairly prejudicial, given defendants' inability to prepare.

The Court excluded Mr. Marez's testimony. The Court reasoned that three factors – plaintiff's failure to comply with the Court's February 8, 2017 order, plaintiff's failure to provide a plausible explanation for his inability to locate Mr. Marez sooner, and the extraordinary prejudice that would result from the admission of Mr. Marez's testimony – outweighed any probative value. The Court also agreed with defendants that Mr. Marez's testimony was not true rebuttal or impeachment testimony, but was more appropriate for plaintiff's case-in-chief.

In his motion for a new trial, plaintiff contends that "[t]he facts before the Court make it clear that Chris Marez's testimony was purely impeaching evidence, and was highly relevant to the case and testimony of Defendant Dixon." Docket No. 967 at 10. The import of plaintiff's argument is that the Court erred in excluding Mr. Marez's testimony because it was not subject to the disclosure requirements of Fed. R. Civ. P. 26. *See* Fed. R. Civ. P. 26(a)(1)(A) (requiring parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, *unless the use would be solely for impeachment*" (emphasis added)); Fed. R. Civ. P. 26(a)(3) (requiring parties to disclose "information about the evidence that [they] may present at trial *other than solely for impeachment*" (emphasis added)).

Plaintiff's argument fails for two reasons. First, the record supports the Court's finding that plaintiff did not intend to use Mr. Marez's testimony solely for impeachment.

"Impeachment evidence . . . is that which is offered to discredit a witness . . . [or] reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony." *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 204 (5th Cir. 2016). Substantive evidence, by comparison, "is that which is offered to establish the truth of a matter to be determined by the trier of fact." *Id.* According to plaintiff's statements at trial, Mr. Marez planned to testify that: (1) he "saw numerous officers outside of [plaintiff's] residence" on the night of April 29, 2009; (2) he remembered plaintiff saying that evening that he was going to take a shower; (3) "there was no damage to the door" before Mr. Marez left the house on April 29, 2009; (4) the "house was turned upside down"; and (5) "the door was entirely open" when Mr. Marez returned to the residence the next day. Plaintiff argues that this testimony was intended to show that defendant Dixon "was being deceptive about his entry" into plaintiff's residence. Docket No. 967 at 10. However, the testimony also had substantive value because it would have corroborated plaintiff's story that defendant Dixon broke into plaintiff's home without a warrant or probable cause and forcibly assaulted him. *See* Docket No. 783 at 34-35 (summarizing plaintiff's allegations regarding the April 29, 2009 incident). In other words, the testimony would have helped plaintiff to "establish the truth of a matter to be determined by the trier of fact," *Olivarez*, 844 F.3d at 204, namely, that defendant Dixon used excessive force against plaintiff on April 29, 2009. Mr. Marez's testimony was therefore subject to the disclosure requirements of Rule 26. *See Aerotech Res., Inc. v. Dodson Aviation, Inc.*, 91 F. App'x 37, 45 (10th Cir. 2004) (unpublished) (holding that the district court did not abuse its discretion in excluding evidence that "was offered for more than just impeachment purposes" because of

defendants' failure to disclose); *Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001) (noting that, if "the evidence was really more than mere impeachment evidence, then the witnesses should have been disclosed"); *Klonoski v. Mahlab*, 156 F.3d 255, 270 (1st Cir. 1998) (holding that letters "were at least in part substantive" and thus did not "fall within the exception to the discovery rules for evidence introduced 'solely for impeachment purposes'"), *superseded by rule change on other grounds*, *In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008).

Second, regardless of the character of Mr. Marez's testimony, the Court ordered plaintiff to disclose Mr. Marez's contact information by March 10, 2017 if plaintiff wished to call Mr. Marez either in his case-in-chief or as a rebuttal witness. Plaintiff failed to comply with this order. The Court appropriately weighed this fact in excluding Mr. Marez's testimony. *See* Fed. R. Civ. P. 26(a)(3) advisory committee's note to 1993 amendment (noting that, although Rule 26(a)(3) "does not require disclosure of evidence to be used solely for impeachment purposes[,] . . . disclosure of such evidence – as well as other items relating to conduct of trial – may be required by local rule or a pretrial order").

Under Fed. R. Civ. P. 37(c)(1), a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or . . . harmless." In determining whether a party's failure to disclose was substantially justified or harmless, courts consider four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would

disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  While the Court did not specifically address these factors in its oral ruling, each weighed in favor of exclusion.  *See Searles*, 251 F.3d at 877 n.5 (holding that district court did not err in failing to explicitly address four-factor test where "[t]he issue . . . arose in the midst of trial").  Plaintiff sought to call Mr. Marez as a witness on the last day of trial. Given plaintiff's consistent representations that Mr. Marez could not be found, this was a complete surprise to both defendants and the Court, leaving defendants with no opportunity to prepare a response to the testimony.  Plaintiff makes no argument to undermine the Court's conclusion that admission of Mr. Marez's testimony at such a late stage of the litigation would have been unduly prejudicial to defendants.

The fourth *Woodworker's Supply* factor also weighed in favor of exclusion. When asked at trial why he had been unable to locate Mr. Marez sooner, plaintiff explained that he had misspelled Mr. Marez's name as "Maurez" and therefore focused his efforts on finding the wrong person.  Plaintiff stated that he was finally able to locate Mr. Marez as a matter of happenstance.  At that point, however, the case had been pending for over seven years.  Plaintiff did not provide any plausible explanation for why the steps he took to locate Mr. Marez, even as a matter of chance, could not have been taken earlier in the litigation with the same result.  Given the convenient timing of Mr. Marez's discovery at the start of plaintiff's rebuttal case, the record supports an inference that plaintiff intentionally withheld Mr. Marez's location in order to conduct a "trial by ambush."  Accordingly, the Court did not err in excluding Mr. Marez's testimony.

### E.  Testimony of Stephen Swan

Plaintiff argues that defendants' introduction of expert testimony by Stephen Swan, the physician assistant who treated plaintiff in the emergency room after his arrest on August 28, 2010, violated plaintiff's due process rights because defendants did not disclose Mr. Swan as an expert witness or provide a summary of his opinion testimony.  Docket No. 967 at 13.

At trial, plaintiff requested that the Court limit Mr. Swan's testimony "to information that he has that isn't expert knowledge" because defendants had failed to disclose Mr. Swan as an expert witness.  The Court held that, because plaintiff had endorsed Mr. Swan as an expert in emergency care, *see* Docket No. 853 at 14 (stating that Mr. Swan "has expert knowledge concerning emergency medical treatment and will testify if call [sic] concerning Mr. Carbajal's treatment and relevant matters"), defendants were entitled to call him as an expert witness so long as his testimony did not go beyond the scope of plaintiff's endorsement.

The Court's ruling is amply supported by case law.  In one of the leading cases addressing the issue, the United States District Court for the Northern District of Iowa concluded that, "once an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties."  *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 245 (N.D. Iowa 1996).  In determining whether to allow the plaintiff to depose or call at trial an expert witness designated by the defendant, the court applied a "discretionary" standard, "guided by a balancing of probative value against prejudice under Fed. R. Evid. 403," that took into account the following factors: (1) "the interests Rule 26 was

designed to protect"; (2) "the peculiar prejudice that could arise if the jury is informed that an expert presented by one party was hired, then dropped, by the other party"; (3) "the court's interest in the proper resolution of issues"; and (4) "the interests of the party seeking the testimony in presenting" the testimony to the jury. *Id.* at 246. Courts in this Circuit have considered similar factors in allowing a party to call an opposing party's designated expert at trial, even after that designation has been withdrawn. *See, e.g.*, *Brigham Young Univ. v. Pfizer, Inc.*, 2012 WL 1029304, at *4-5 (D. Utah Mar. 26, 2012) (applying balancing test from *House* to hold that defendants were entitled to call plaintiff's previously-designated expert witness at trial); *Guinn v. CRST Van Expedited, Inc.*, 2011 WL 2414393, at *2-4 (W.D. Okla. June 10, 2011) (citing *House* and holding that the relevant factors supported allowing the defendant to call the plaintiff's designated expert at trial); *see also Giles v. The Inflatable Store, Inc.*, No. 07-cv-00401-PAB-KLM, 2009 WL 801729, at *3 (D. Colo. Mar. 24, 2009) (noting that Rule 26 does not bear on the question of whether an expert, "properly disclosed [by one party] but subsequently withdrawn," may be called by the opposing party to testify at trial).

Here, the *House* factors weighed in favor of allowing defendants to call Mr. Swan as an expert witness. Because plaintiff designated Mr. Swan as a testifying expert in both the final pretrial order, *see* Docket No. 853 at 14, and in plaintiff's trial witness list, *see* Docket No. 885 at 4, defendants' request to call Mr. Swan as an expert witness did not implicate the "free consultation" privilege that Fed. R. Civ. P. 26 is designed to protect. *See House*, 168 F.R.D. at 245-46; *see also Giles*, 2009 WL 801729, at *3. Moreover, the testimony of Mr. Swan, who treated plaintiff after the August 28, 2010

incident, was highly probative on the issue of plaintiff's injuries.  Its presentation

therefore furthered "the court's interest in the proper resolution of issues."  *House*, 168

F.R.D. at 246.  Regarding prejudice, defense counsel represented at trial that he "fully

expected Mr. Carbajal to call [Mr. Swan] as a witness."  Accordingly, denying

defendants the opportunity to call Mr. Swan after plaintiff changed course and decided

not to do so himself would have been highly prejudicial to the defense.  *See Guinn*,

2011 WL 2414393, at *3 (fact that defendant decided not to retain own expert in

reliance on plaintiff's expert designation weighed in favor of allowing defendant to call

expert as a witness at trial, even after plaintiff withdrew her designation).  In contrast,

the Court finds unpersuasive plaintiff's argument that he was prejudiced by Mr. Swan's

testimony.  Plaintiff claims that defendants "elicited surprise testimony that the

lacerations and injuries suffered by Mr. Carbajal were from glass and not blunt trauma

or a gun," Docket No. 967 at 13; however, this testimony fell squarely within the scope

of plaintiff's expert designation.  *See* Docket No. 853 at 14; *see also House*, 168 F.R.D.

at 247 (noting that, "once [expert] designations are made, the party will have to live with

the consequence that the opposing party will likely be given the opportunity to depose

the expert or even to call the expert at trial on their own behalf").  Finally, because

plaintiff never retained Mr. Swan as an expert witness, there was no risk of the "peculiar

prejudice that could arise if the jury is informed that an expert presented by one party

was hired, then dropped, by the other party."  *House*, 168 F.R.D. at 246.  In summary,

the Court properly weighed the relevant factors and determined that it was appropriate

to allow defendants to call Mr. Swan as a witness.

**F.  Evidence of Drug Use**

Plaintiff contends that the Court violated his due process rights by allowing defendants to present evidence of his drug use.  Docket No. 975 at 7.

In ruling on the admissibility of Mr. Swan's testimony regarding plaintiff's urinalysis results, the Court concluded that evidence of plaintiff's drug use on August 28, 2010 was relevant to his ability to recall the events of that evening.  The Court noted that the reliability of plaintiff's memory was properly in issue, given that the jury had already heard testimony indicating that plaintiff was confused about the events of August 28, 2010.

Plaintiff does not challenge the Court's determination that evidence of drug use may be admitted for purposes of impeachment.  *See United States v. Dixon*, 38 F. App'x 543, 548 (10th Cir. 2002) (unpublished) ("Evidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events.").  Plaintiff argues, however, that "no foundation was ever established" for the drug evidence presented by defendants.  Docket No. 975 at 8.  Plaintiff makes two principal contentions on this point: first, he asserts that there was no evidence presented "of who tested th[e] sample that registered positive for cocaine, or how this test could [have been] linked to [plaintiff]"; second, he argues that there was no evidence establishing that the cocaine was ever in his possession.  *Id.*

While defense counsel questioned plaintiff on cross-examination about cocaine found in his shirt, the primary evidence regarding plaintiff's drug use was Mr. Swan's

testimony that plaintiff tested positive for drugs at the hospital.[11]  At trial, plaintiff

objected to the admission of the test results based on lack of foundation and reliability.

Plaintiff asserted that Mr. Swan lacked personal knowledge with respect to the

urinalysis because he had not performed the test himself and was not aware of whether

the results had ever been "verified."  The Court initially sustained plaintiff's objection.

After defense counsel elicited testimony that it "would be customary for a physician's

assistant operating in the world of emergency medicine to" both "order tests of [that]

nature" and rely on the "results of those tests in rendering [his] treatment and

diagnosis," the Court granted defendants' request to admit the test results for the

limited purposes of showing the effect of those results on Mr. Swan's diagnosis and

treatment.

While plaintiff argues that the drug evidence lacked foundation, *see* Docket No.

975 at 8, Fed. R. Evid. 703 permits the introduction of otherwise inadmissible evidence

so long as "experts in the particular field would reasonably rely on those kinds of facts

or data" and the probative value of the evidence "in helping the jury evaluate the

[expert's] opinion substantially outweighs [its] prejudicial effect."  Here, the laboratory

test results were central to Mr. Swan's primary diagnosis of "cocaine abuse," which, in

---

[11]Contrary to plaintiff's assertion that "[i]t was improper to admit prejudicial
testimony of drugs in a shirt," Docket No. 975 at 8, plaintiff was the only witness to
testify about the cocaine allegedly found in his pocket.  Detective Black testified only
that he never planted cocaine in plaintiff's shirt.  This testimony was a direct response
to plaintiff's claim that the police were trying to "frame" him or "manufacture a basis" to
add charges.  To the extent that certain questioning by defense counsel indicated that
drugs had been found on plaintiff's person after his arrest, the jury was instructed at
both the beginning and the end of trial that statements and arguments, as opposed to
sworn testimony, were not evidence.  The jury is presumed to have followed the Court's
instructions.  *Lay v. Royal*, 860 F.3d 1307, 1318 (10th Cir. 2017).

turn, was directly relevant to plaintiff's ability to recall the events of August 28, 2010. Accordingly, the probative value of the test results substantially outweighed any prejudicial effect. Moreover, the Court appropriately instructed the jury that it could not consider the test results for their truth, but only for their effect on Mr. Swan. *See United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir. 1997) ("When inadmissible evidence used by an expert is admitted to illustrate and explain the expert's opinion, . . . it is necessary for the court to instruct the jury that the otherwise inadmissible evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence." (internal quotation marks omitted)); Fed. R. Evid. 703 advisory committee's note to 2000 amendment ("If the otherwise inadmissible information is admitted under this balancing test, the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes."). There was thus no error in the Court's admission of the test results.

### G.  Evidence of Plaintiff's Prior Lawsuits

Plaintiff argues that defense counsel improperly introduced evidence regarding plaintiff's prior lawsuits in order to characterize plaintiff as a "chronic litigator." Docket No. 975 at 10.

Evidence of prior lawsuits is admissible if it bears directly on an essential element of a party's claim. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1227 (10th Cir. 2000) (noting that evidence that "bore directly on an essential element" of several of the claims was offered for a "permissible purpose[]"). At trial, the Court ruled that evidence regarding plaintiff's prior claims was relevant to the issue of causation,

namely, whether the actions of defendants, and not those of third parties, caused the injuries for which plaintiff was seeking to recover. In prior litigation, plaintiff had asserted that people other than defendants had ruined his life. Because plaintiff was making the same claim against defendants, the Court correctly determined that the jury was entitled to consider whether any portion of plaintiff's damages were attributable to non-parties.

Even if the Court erred in allowing evidence of plaintiff's prior lawsuits, plaintiff cannot show that the error was prejudicial. Plaintiff himself elicited testimony regarding his various civil lawsuits in an effort to show that defendants had a motive for retaliating against him. Accordingly, plaintiff cannot demonstrate that defendants' introduction of similar evidence had any effect on the outcome of the trial.

### H.  Jury Interference

Plaintiff asserts that the Denver Police Department intentionally engaged in efforts to "confront the majority of jurors to make them late for Court during its deliberations" and to "intimidate [them] into not ruling against the Denver Police Department Defendants." Docket No. 967 at 12. Specifically, he claims that "jurors reported to [the court clerk] and others" on the last day of trial "that the Denver Police had the entire North area of Denver blocked off and had intentional contact with the jurors in an effort to influence them to rule against Mr. Carbajal." *Id.* at 12. Plaintiff has provided no evidence to support these allegations, and the Court is not aware of any reports by jurors regarding police interference. Even assuming plaintiff's allegations are true, his conclusion that attempts by the police to interfere with the jury's deliberations would have influenced the jury in defendants', as opposed to plaintiff's, favor is pure

speculation.

## I.  Handcuffing

Plaintiff contends that a new trial is warranted because "the U.S. Marshalls [sic] paraded [him] before the jury while he was confined in an effort to prejudice the jury against [him]."  Docket No. 967 at 15.  Defendants rightly note in their response that plaintiff has provided "no information regarding when this occurred, under what circumstances, and whether any of the jurors actually observed that he was in handcuffs at any point."  Docket No. 977 at 13.

As a general matter, plaintiff was not required to wear restraints while in the courtroom.  The Court is aware of only one instance in which the jury may have seen plaintiff in handcuffs: on the first day of trial, plaintiff informed the Court that he was "removed from the holding cell . . . in front of the jury," to which the Court responded that the Marshals should wait to move plaintiff until all of the jurors were out of the courtroom.  The Court perceives no error in this single, isolated incident.  *See Jones v. Moore*, 2007 WL 2746854, at *4 (S.D. Ill. Sept. 20, 2007) (finding "no manifest error" in prison guards' alleged attempt to handcuff the plaintiff in the presence of the jury, where any such attempt would have been contrary to the court's "standard procedure to have the jury removed from the courtroom before handcuffs [were] reapplied"); *cf. United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) ("In itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial.").  Moreover, plaintiff cannot demonstrate that the incident substantially affected his rights, especially given the fact that the jurors were made aware during the trial that

defendant was serving a prison sentence.  *See Sides v. Cherry*, 609 F.3d 576, 584-85 (3d Cir. 2010) (reasoning that the "limited instances where [plaintiff's] shackles may have been exposed to the jury [were] dissimilar to the more prejudicial circumstances of the cases on which he relie[d]"); *Moore v. Zeppa*, 2010 WL 3001387, at *4 (N.D. Cal. July 29, 2010) (reasoning that, "[e]ven assuming . . . the jurors . . . may have noticed [plaintiff's leg] shackles, plaintiff ha[d] failed to show how he was prejudiced thereby, as the jurors were aware from the evidence presented that plaintiff was in state prison at the time of trial"), *aff'd sub nom*, *Moore v. Richmond Police Dep't*, 497 F. App'x 702 (9th Cir. 2012) (unpublished); *Jones*, 2007 WL 2746854, at *4 (finding that any prejudice caused by prison guards' attempt to handcuff plaintiff in the presence of the jury was mitigated by (1) the "very nature of the case," which "made it clear that plaintiff was an inmate in a maximum security prison," and (2) "[t]he fact that the Court used its discretion to permit plaintiff to be uncuffed during trial").

### J.  Weight of the Evidence

Plaintiff contends that the jury's verdict in favor of defendants Watts and O'Neill was against the weight of the evidence.  Docket No. 967 at 14.  Because plaintiff does not present any developed argument regarding the evidence pertinent to defendant Watts, the Court will limit its analysis to whether the evidence supported the jury's verdict in favor of defendant O'Neill.  "In deciding a new trial motion based on insufficiency of the evidence, a district court must analyze whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence."  *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (internal quotation

marks omitted).  In making this determination, the Court must consider "the evidence in the light most favorable to the prevailing party, bearing in mind that the jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."  *Snyder v. City of Moab*, 354 F.3d 1179, 1188 (10th Cir. 2003).

The Court finds that there was ample evidence to support the jury's verdict in favor of defendant O'Neill.  Plaintiff contends that the evidence against defendant O'Neill was overwhelming because: (1) defendant O'Neill admitted that he was the officer who arrested plaintiff at the time plaintiff was allegedly attacked; (2) an independent private citizen testified that she saw a citizen being beaten on the ground where plaintiff was arrested; (3) photographs of plaintiff's injuries are consistent with him being attacked; and (4) defendant O'Neill's testimony was not credible.  Docket No. 967 at 14-15.  However, none of these points are conclusive of defendant's liability.  As to the first, there is no dispute that defendant O'Neill was the arresting officer; however, he maintained throughout his testimony that he did not use excessive force against plaintiff while taking him into custody.  The testimony of Kathy Jones, an independent observer, is not necessarily inconsistent.   She testified that she saw an undetermined number of men beating someone on the ground outside of her apartment, but she stated that the men were not in uniform or wearing bullet proof vests.  This was in contrast to defendant O'Neill's testimony that he was wearing a tactical vest with the word "POLICE" written on both sides at the time of plaintiff's arrest.  *See* Exhibit A72.  Even if Ms. Jones' testimony supported plaintiff's version of events, the jury had ample

reason to give it little weight. Not only was her testimony vague, but it was also inconsistent with her 911 call at the time of the alleged incident, which did not include any report of a beating.

Nor are the photographs of plaintiff's injuries dispositive of whether defendant used excessive force. Plaintiff stated at trial that the gash on his face was the result of being hit with a pistol. However, these statements were contradicted by Mr. Swan's testimony that plaintiff's forehead lacerations were not consistent with blunt force trauma. Defendants presented further evidence from which the jury could have found that plaintiff sustained his injuries breaking into Ms. Holguin's apartment shortly before his arrest.

Plaintiff suggests that the jury could not have credited defendant O'Neill's testimony because it "reeked of perjury." Docket No. 967 at 14. However, the "jury has the exclusive function of appraising credibility," *Snyder*, 354 F.3d at 1188, and its "findings on sharply conflicting evidence are conclusively binding on appeal." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983). Here, the jury was entitled to credit the testimony of defendant O'Neill over the testimony of plaintiff. Given this fact, as well as the additional evidence presented at trial, the Court cannot say that the jury's verdict was "clearly, decidedly or overwhelmingly against the weight of the evidence." *Elm Ridge Exploration, LLC*, 721 F.3d at 1216.

### K.  Cumulative Error

Finally, plaintiff suggests that the cumulative effect of the Court's errors deprived him of a fair trial. Docket No. 975 at 10. However, cumulative error analysis applies

only "where there are two or more actual errors." *Greig v. Botros*, 525 F. App'x 781, 795 (10th Cir. 2013) (unpublished) (quoting *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). Because plaintiff has identified only one potential error – the admission of evidence regarding his prior lawsuits – cumulative error does not apply.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for New Trial Under Fed. R. Civ. P. 59 [Docket No. 967] is **DENIED**. It is further

**ORDERED** that plaintiff's Motion for a Progression Order [Docket No. 1001] is **DENIED** as moot.

DATED January 9, 2019.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge